UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00003-BJB-CHL

**JOHN H. SCHNATTER ,**                                                                                                  **Plaintiff,**

**v.**

**247 GROUP, LLC, et al.,**                                                                                              **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to compel further discovery responses filed by Defendant 247 Group, LLC and Defendant Wasserman Media Group, LLC (collectively "Defendants"). (DN 58.) Plaintiff John H. Schnatter ("Plaintiff") filed a response (DN 67), to which Defendants filed a reply (DN 74). Therefore, the motion is ripe for review.

**I.      BACKGROUND**

Pursuant to the Court's scheduling order, a telephonic status conference was scheduled for November 18, 2020. (DN 29.) During the status conference, the Parties informed the Court of several disputes regarding the sufficiency of Plaintiff's discovery disclosures. (DN 55, at PageID # 525.) After hearing description of the issues and counsel's previous efforts to resolve the disputes, the Court granted leave for Defendants to proceed to motion practice. (*Id.*) On December 16, 2020, Defendants filed their motion to compel. (DN 58.) The motion seeks further responses to Plaintiff's Rule 26(a) initial disclosure and Interrogatories 4, 6, 10, and 12. (*Id.*) Following the withdrawal of several members of Plaintiff's legal team and the appearance on his behalf of additional counsel, the Parties agreed to extend the deadline for Plaintiff to respond to the motion to compel by twelve days. (DN 61-66.) On January 14, Plaintiff served his third amended initial disclosures and third supplemental answer to interrogatory 12. (DN 67-2.) The following day, on

January 15, 2021 Plaintiff filed his response to Defendants' motion to compel. (DN 67.) In his response, Plaintiff cites to his updated discovery responses arguing that the responses are not deficient. (DN 67, at PageID # 692-711.) On February 1, 2021, Defendants filed their reply. (DN 74.) In the reply, Defendants argue that Plaintiff's most recent discovery responses are still deficient, and that even if the Court finds the responses to be complete, they would still be entitled to cost because the failure to tender complete responses was only remedied after Defendants filed their motion. (DN 74, at PageID # 745-59.)

## II.     LEGAL STANDARD

This Court maintains discretion over the scope of discovery. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.1981)). Generally speaking, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . ." Fed. R. Civ. P. 26(b)(1). Discovery responses therefore must be "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). Objections to interrogatories "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Answers to requests for admission must admit the request, "specifically deny" the request, "detail why the answering party cannot truthfully admit or deny," or object on "stated" grounds. Fed. R. Civ. P. 36(a)(4)–(5). Upon a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## III.    DISCUSSION

Below the Court addresses each of the discovery requests at issue.

### a.  Rule 26(a) Disclosures and Interrogatory 12

Defendants seeks further Rule 26(a) disclosures, stating more completely "'a computation of each category of damages claimed' and 'the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered.'" (DN 58, at PageID # 540) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Defendants also seek further responses to interrogatory 12, which similarly asks Plaintiff to "[i]dentify with specificity all damages, including the nature, amount, and method of calculation, you claim to have suffered as a result of claims and allegations set forth in the Complaint." (DN 58-1, at PageID # 580.) The Court addresses the two requests together because they concern the same information, and in fact, Plaintiff's most recent responses to interrogatory 12 and the third amended Rule 26(a) disclosure concerning damages are identical. (*Compare* DN 67-1, at PageID # 668-72, *with* DN 67-2, at PageID # 676-81.) Moreover, a parties' disclosure obligations for initial disclosures and interrogatories are the same. Fed. R. Civ. P. advisory committee's note to 1993 amendment (Rule 26 "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.").

The Sixth Circuit "requires robust damage-related production." *Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-CV-366-DLB-REW, 2015 WL 10551946, at *1 (E.D. Ky. Nov. 30, 2015), report and recommendation adopted sub nom. *Acuity Brands, Inc. v. Bickley*, No. CV 13-366-DLB-REW, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016). This rule obliges a party claiming damages "to disclose 'the best information then available to it concerning that claim, however limited and potentially changing it may be.'" *Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *1 (W.D. Ky. Aug. 20, 2007). The documentation and evidence required by Rule 26 must be sufficient to allow the opposing party to "independently analyze" the

claim. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010).

Plaintiff has provided a five page summary of his damages, listing the following categories: (1) "Stock Option Grants under the Founder's Agreement and Chairman's Agreement"; (2) "Reimbursable Expenses under the Founder's Agreement and Chairman's Agreement"; (3) "Lost Opportunity Cost as Endorser"; and (4) "Punitive Damages." (DN 67-1, at PageID # 668-72.) Plaintiff's summary lists the amount he was paid for stock option grants and expense reimbursements under its agreements with Papa John's over the three years prior to the termination of those agreements, states that Plaintiff seeks expectation damages for the amount he would have been pain if the agreements were not terminated, and states that he will retain an expert witness to calculate the amount of these damages. (*Id.*, at PageID # 668-71.) Plaintiff summary also estimates his value as a celebrity endorser as of 2018 as between $1 million and $3 million per year, states that but for Defendants' conduct he would have retained his value as an endorser, and states that he will retain an expert witness to calculate the value of his lost opportunities as an endorser. (*Id.*, at PageID # 671-72.) Finally, Plaintiff's summary states that he is entitled to punitive damages under counts II, IV, and V of his amended complaint, and that he need not state the amount sought because "[t]he imposition of punitive damages is uniquely the province of the jury." (*Id.*, at PageID # 672.)

Defendants' arguments about the sufficiency of Plaintiff's damages summary boiled down to two issues: (1) whether Plaintiff is required to provide a valuation in dollars of the amount owed for each category of damages claimed; and (2) whether Plaintiff must link the claimed damages to each cause of action plead.

The Court begins with the question of Plaintiff's valuation of his damages. Defendants argue that Plaintiff's damages summary is deficient because, although it provides "past discretionary amounts that he allegedly received from Papa John's pursuant to the Founder's Agreement and Chairman's Agreement between 2015 and 2018, it provides no information about how much damage he has since incurred or should be entitled to as a result of any of Defendants' alleged conduct." (DN 74, at PageID # 749.) Defendants also argue that Plaintiff didn't sufficiently disclose his damages for lost opportunities as a celebrity endorser because Plaintiff's response does not identify any specific endorser agreement or opportunity that Plaintiff has lost, the amount of damages Plaintiff seeks to recover, or the method he will use to compute that amount. (*Id.*, at PageID # 752-53.) In response, Plaintiff restates the information provided in his damages summary regarding past compensation under his agreements with Papa John's and argues that this response is complete because it includes "all the information he has about his damages." (DN 67, at PageID # 644-46.) Plaintiff further states he will supplement his disclosures as to lost compensation under his agreements with Papa John's "upon the discovery of any new information." (*Id.*, at PageID # 646.) Regarding lost opportunities as a celebrity endorser, Plaintiff argues that he is not required to provide a more specific valuation because "the precise valuation of lost opportunities requires expert testimony, usually from someone with expertise in both marketing and economics." (*Id.*, at PageID # 706-07.)

The Court finds that Plaintiff's initial damages disclosures and interrogatory responses are *currently* sufficient under Rule 26. "By providing the general categories of claimed damages, in addition to the disclosure that such computation will rely upon the consultation of experts, Plaintiff[] ha[s] provided sufficient information to allow Defendants to 'independently analyze' their damages claim at this time." *Roane Cty., Tennesse v. Jacobs Eng'g Grp., Inc.*, No. 3:19-CV-

5

206-TAV-HBG, 2020 WL 5262250, at *2 (E.D. Tenn. Sept. 3, 2020) (quoting *Bessemer*, 596 F.3d at 370). The Court notes that over two months remain before the fact discovery deadline, during which Plaintiff is under a continuing duty to supplement his damages disclosures and discovery responses. (DN 79.) To the extent that Plaintiff becomes aware of more specific information regarding the computation of his damages, including documents on which his expert witnesses will rely, Plaintiff is required to timely disclose it. The Court finds that Defendants will not be prejudiced by Plaintiff's reliance on expert witnesses to calculate his damages. Indeed, Defendants will have two months between Plaintiff's expert disclosure deadline and the expert discovery deadline to assess the expert witnesses' damages calculation. (*Id.*)

The Court now turns to the question of the connection between Plaintiff's claimed damages and plead causes of action. Defendants argue that Plaintiff's damages summary is deficient because it does not connect each category of damages to each of the causes of action in Plaintiff's amended complaint. For example, Defendants say that Plaintiff "fails to identify how past amounts of costs that were reimbursed to him for his role as CEO and Chairman of Papa John's have anything to do with any of the claims in this lawsuit." (DN 74, at PageID # 751.) Regarding Plaintiff's damages for lost opportunities as a celebrity endorser, Defendants argue that "Plaintiff fail[s] to tether this speculative theory to any claim." (*Id.*, at PageID # 752.) Finally, Defendants say that Plaintiff damages summary does not "identif[y] a single theory or amount of damages related to his breach of contract claims." (*Id.*, at PageID # 546.) Although, Plaintiff contests some of these statements, Plaintiff's response does not explicitly address the underlying issue.

Plaintiff's summary lists four categories of damages, which include expectation damages, consequential damages, and punitive damages—forms of relief available for the causes of action

6

asserted in Plaintiff's amended complaint. Under Rule 26, "[P]laintiff need not provide a breakdown of damages allegedly resulting from each tortious act, statutory violation, etc." Rutter Group, Fed. Civ. Proc. Before Trial § 11:281.12 (2021). Additionally, Defendants' interrogatory 12 does not request such a specific breakdown, and instead requests specific details about the damages arising generally from "claims and allegations set forth in the Complaint." (DN 58-1, at PageID # 580.) Absent a more specific discovery request, Plaintiff has satisfied his disclosure obligations with respect to his categories of damages.

### b. Interrogatory 4

Interrogatory 4 requests that Plaintiff "describe in detail any instance in which Defendants interfered with your prospective economic relations." (DN 58-1, at PageID # 578.) Plaintiff's answer states:

> Plaintiff maintains all previously stated objections to this Interrogatory. Without waiving those objections and subject to them, Plaintiff states that Defendants' actions created a false public belief that he had used a racial slur against African Americans when he had not. This false public belief prevented Plaintiff from pursuing economic opportunities both with the company he founded and with other commercial entities. These economic opportunities included, but were not limited to, the continuation of Plaintiff's Licensing Agreement and Founder Agreement with Papa John's. Plaintiff also received other forms of compensation and perquisites from Papa John's, as described in his previous answer to Interrogatory No. 12.
>
> Plaintiff reasonably expected these economic relations with Papa John's to continue into the future. Defendants' actions interfered with those economic relations, leading to the termination of the Licensing Agreement and Founder Agreement and to the loss of the other forms of compensation and perquisites as described in his previous answer to Interrogatory No. 12.

(DN 58-1, at PageID # 605.)

Defendants argues that Plaintiff's response is insufficient because it "merely repeats the information already found in his Complaint without providing any of the specific details requested by the interrogatory." (DN 58, at PageID # 548.) Defendants further objects to Plaintiff's use of the phrase "included, but [] not limited to" because it "suggests that there are economic opportunities other than those two he has identified but then refuses to provide information related thereto." (*Id.*) Defendants argues that if Plaintiff is alleging that Defendants interfered with relationships beyond the licensing and founder agreements with Papa John's, he must identify those relationships, and if not, Plaintiff must "confirm that there are no others beyond the two contacts with Papa John's he has identified here." (*Id.*)

In response, Plaintiff restates the information he has provided and "acknowledge[s] his continuing duty to supplement his Interrogatory Responses to the extent that he obtains additional information." (DN 67, at PageID # 647-48.) Plaintiff argues that his response satisfies his disclosure obligations because he "has provided detailed information in response to the Interrogatory by providing the instances of interference." (*Id.*, at PageID # 648.) In reply, Defendants reiterate that Plaintiff's response "does not identify the universe of opportunities with which Defendants supposedly interfered . . . [and] Defendants are thus left to guess what other economic relationships could be in dispute." (DN 74, at PageID # 754.) Additionally, given that this case was filed in January 2020 and that Defendants served their discovery request in June 2020, Defendants argue that Plaintiff has had "more than enough time . . . to identify with specificity exactly what economic relations with which he contends Defendants interfered." (*Id.*, at PageID # 755.)

It's clear that Defendants' motion seeks an itemized list of all economic agreements and opportunities that Plaintiff will argue were harmed by Defendant. However, it cannot be fairly

8

said that what Defendants seek is what they asked for in Interrogatory 4. The subject of the interrogatory is not "any prospective economic relations" or "any interference", but rather, "any instance in which Defendants interfered." Because the sentence is centered on occurrences of an act by Defendants, a sufficient response requires a list of Defendants' actions but not a list of the consequences of those actions. Here, Plaintiff's response describes the actions by Defendants that he alleges interfered with his economic relations. Whether he describes those actions sufficiently so as to constitute a complete response to the interrogatory, the Court will not currently decide because Defendants have not raised that issue. Therefore, the Court will deny Defendants' motion to compel further responses to Interrogatory 4.

### c. Interrogatory 6

Interrogatory 6 requests that Plaintiff describe every economic relationship with which Plaintiff alleges that Defendants interfered, "including when the proposed relationship or transaction arose and when you determined it had been lost, and the value of the prospective relationship or transaction, including the amount any counter-party offered to pay in connection with the transaction." (DN 58-1, at PageID # 578.) Plaintiff's answer incorporates his prior objection to the request "as an improper and premature contention interrogatory" and subject to that objection, refers Defendants to his prior responses to interrogatories 4 and 12. (*Id.*, at PageID # 606.)

Defendants argue that Plaintiff cannot rely solely on his responses to interrogatories 4 and 12 in answering interrogatory 6 because interrogatory 6 seeks the precise timing and value of Plaintiff's alleged lost economic relationships, information not requested by the other interrogatories and not provided by Plaintiff's respective answers. (DN 58, at PageID # 548-49.) In response, Plaintiff argues that his answer is complete because his responses to interrogatories 4

9

and 12 provide the information "currently known by [Plaintiff] about the nature of the relationship or transaction contemplated." (DN 67, at PageID # 648.) In reply, Defendants reiterate that Plaintiff's answers do not provide the timing or value of Plaintiff's alleged lost economic relationships and that Plaintiff's delay in providing this information has frustrated Defendant's ability to determine what is at issue in this case. (DN 74, at PageID # 756.)

Defendants' request targets information relevant to Plaintiff's tortious interference claim. (DN 58-1, at PageID # 605.) Kentucky law "recognize[s] that contractual relations or prospective contractual relations are protected from improper interference." *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988). Tortious interference with prospective business relationship has six elements: "(1) the existence of a valid business relationship or its expectancy; (2) the defendant's knowledge thereof; (3) an intentional act of interference; (4) an improper motive; (5) causation; and (6) special damages." *Prime Contracting, Inc. v. Wal-Mart Stores, Inc.*, No. CIV.A. 06-383-JBC, 2008 WL 2859014, at *7 (E.D. Ky. July 22, 2008) (citations omitted). The prospective relationship cannot be speculative or hypothetical; a plaintiffs success on this cause of action "rests upon whether there is any evidence that Defendants either caused a third party not to enter into a contractual relationship or that they caused someone to discontinue an existing relationship." *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1081 (W.D. Ky. 1995). Courts applying Kentucky law consistently apply a "but for" causation test, requiring a claimant to show that the prospective business relationship would have succeeded absent the defendant's tortious conduct. *Ventas, Inc. v. HCP, Inc.*, No. 3:07-CV-238-H, 2009 WL 2912779, at *3 (W.D. Ky. Sept. 8, 2009), aff'd, 647 F.3d 291 (6th Cir. 2011); *Gray v. Central Bank & Trust Co.*, 562 S.W.2d 656 (Ky.Ct.App.1978); *Prime Contracting, Inc. v. Wal-Mart Stores, Inc.*, No. CIV.A. 06-383-JBC, 2008 WL 2859014, at *7 (E.D. Ky. July 22, 2008)

10

The Court finds that Plaintiff's response is incomplete because it fails to state definitively every economic relationship with which it alleges Defendant interfered, when those relationships arose, or their respective value. The Court begins with the issue regarding identifying each specific relationship. First, Plaintiff's characterization of his business relationships with Papa John's conflicts with his subsequent disclosures. Plaintiff's response refers Defendants to its prior responses to interrogatories 4 and 12, which explicitly identify Plaintiff's licensing, chairman, and founder agreements with Papa John's as well as "other forms of compensation and perquisites from Papa John's," which he listed as reimbursements for payment of an administrative assistant and security expenses. (DN 58-1, at PageID # 593-94, 605.)  Through these responses, Plaintiff indicates that he expected these relationships with Papa John's to continue into the future.  (*Id.*) Plaintiff response refers Defendants to his responses to interrogatories 4 and 12 provided as of that time, but Plaintiff has since supplemented interrogatory 12, clarifying that the expense reimbursements were conferred pursuant to the founder and chairman agreements and not a separate contractual arrangement.  (DN 67-1; DN 67-2.)  Plaintiff did not update his response to interrogatory 6 to reflect the changes in his response to interrogatory 12.  Thus, Plaintiff's cross-referential response creates confusion as to what exactly is included in his answer.

Second, Plaintiff's prior responses to interrogatories 4 and 12 also identify "economic opportunities available to [Plaintiff] as a celebrity influencer and endorser." (DN 58-1, at PageID # 593.)  However, Plaintiff fails to say what those opportunities were.  It is impossible for Defendants to determine "whether there is any evidence that Defendants either caused a third party not to enter into a contractual relationship or that they caused someone to discontinue an existing relationship," *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1081 (W.D. Ky. 1995), without knowing the identity of the third party and the nature of the actual or potential relationship.

Finally, Plaintiff's responses state that the economic relationships with which Defendants interfered "included, but were not limited to" the relationships he identified. (DN 58-1, at PageID # 605.) As Defendants point out, this suggests that there are additional relationships that Plaintiff has not yet disclosed. Plaintiff's failure to identify each actual or potential relationship subject to his tortious interference claim is akin to claiming he was robbed without identifying what property he is missing. Defendants are wholly unable to establish a defense without this information.

Even among the specific economic relationships Plaintiff does identify, Plaintiff fails to provide their value and time period as requested. For example, while Plaintiff identifies the value of benefits he received under the founder and chairman agreements in the form of stock option grants and expense reimbursements each year from 2015 to 2018, he did not state how much he expected to receive in future years had these agreements not been terminated. (DN 58-1, at PageID # 593-94.) Additionally, Plaintiff's updated response to interrogatory 12 provides different valuations of some of these benefits than those provided in the earlier response to interrogatory 12 Plaintiff referred to in his response to interrogatory 6. (*See id.*; DN 67-1, at PageID # 668-71.) Again, Plaintiff's use of a cross-referential response creates confusion as to the scope of his answer under these circumstances. Finally, Plaintiff fails to provide the timing of his prospective relationships except that "they would have continued into the future." (58-1, at PageID # 605.) Thus, Defendants are forced to guess how long it expected its business relationships with Papa John's to last. This information is necessary for Defendant's to assess the extent of Plaintiff's claimed damages.

Based on the forgoing, the Court grant Defendants' motion to compel further responses to interrogatory 6.

### d. Interrogatory 10

Interrogatory 10 requests that Plaintiff "describe in detail any facts relating to your allegation that Defendants breached the Master Services Agreement and Mutual Termination Letter." (DN 58-1, at PageID # 579.) Plaintiff's answer states:

> Plaintiff maintains all previously stated objections to this Interrogatory. Without waiving those objections and subject to them, Plaintiff states that the Master Services Agreement contained certain nondisclosure and confidentiality provisions, which provisions expressly survived the termination of that agreement under the Termination Letter. By disclosing to *Forbes* excerpts of the May 22, 2018 call in or before July 2018, Defendants breached those nondisclosure and confidentiality provisions.
>
> Further, as part of their work under the Master Services Agreement, certain employees of Laundry Service, including its then-CEO Jason Stein, met with Plaintiff on or about May 14, 2018 and agreed to work with him to help correct the public's perception of him. Rather than work with Plaintiff to help him in this manner, Defendants worked actively against him in an effort to harm him, as described in the Amended Complaint and in response to various discovery requests from Defendants, including Interrogatory No. 8.

(DN 58-1, at PageID # 607.)

Defendants argue that Plaintiff's answer is deficient because the only factual basis provided to support Plaintiff's allegation that Defendants breached the Master Services Agreement and Mutual Termination Letter is Plaintiff's allegation that Defendants disclosed excerpts of the May 22, 2018 call to *Forbes*. (DN 58, at PageID # 549.) Defendants believe that this generalized statement fails to attribute any actionable conduct to Defendants and that "if [Plaintiff] has knowledge of who or when the May 22 call was allegedly leaked to *Forbes*, he must provide it . . . ." (*Id.*)

In response, Plaintiff argues that the request constitutes a contention interrogatory which are afforded "greater leeway in satisfying Rule 26(e)'s 'timely' supplementation requirement." (DN 67, at PageID # 649.) Plaintiff asserts providing "each and every" fact in support of his claim would be unduly burdensome and impracticable and that the information provided fulfills his disclosure obligations. (*Id.*, at PageID # 649-50.) In response, Defendants reiterate that "Plaintiff has not identified a single person who allegedly made any such disclosure." (DN 74, at PageID # 757.) Defendants argue that Plaintiff should be compelled to reveal this information because "[w]aiting until the end of fact discovery to learn the basis of any breach and who participated in it will unfairly deprive Defendants of access to discovery about such allegations." (*Id.*, at PageID # 758.)

Plaintiff's semantic argument that a request for "anything" can't require him to disclose literally *anything* completely ignores the fact that Defendants have identified specific information they seek, that is, the name of the person who purportedly leaked the call and the basic surrounding circumstances. Plaintiff does not deny that he is aware of further responsive information concerning the leaked phone call, and instead suggests that any responsive information beyond what he has provided can be disclosed at some unspecified future time presumably to be chosen by Plaintiff. (*See* DN 67, at PageID # 649-50.) To the extent that Plaintiff is aware of additional information responsive to interrogatory 10, he is required to disclose it. Therefore, the Court will grant Defendants' request to compel further responses to Interrogatory 10.

### e. Costs

Defendants request an award of costs under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. (DN 58, at PageID # 549-50.) Rule 37(a)(5)(A) requires district courts granting a

14

motion to compel discovery to order to responding party "to pay the movant's reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A).  This award of costs is mandatory unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Defendants argue that the mandatory award of costs should apply because "[Plaintiff], without justification, failed to properly respond to these written discovery requests, causing Defendants to have to file this motion." (DN 58, at PageID # 550.)  In response, Plainiff argues that even if Defendants' motion is granted, "the issues before the Court present complex legal questions, and [Plaintiff]'s position is substantially justified and not merely an attempt to prolong discovery."  (DN 74, at PageID # 711.)

In reply, Defendants note that they offered to provide more time to further supplement his responses, and he declined to do so, except to supplement his initial disclosures and response to interrogatory 12 after Defendants filed their motion.  (DN 74, at PageID # 759.)  Defendants also contest Plaintiff's assertion that that these discovery disputes are complex, arguing that they concern basic information currently in Plaintiff's possession.  (*Id.*)

Here, Defendants' motion will not be granted in its entirety, so the mandatory award of costs under Rule 37(a)(5)(A) does not apply.  Because Defendants' motion will be granted in part and denied in part, the Court is permitted, but not required, to grant an award of costs.  Fed. R. Civ. P. 37(a)(5)(C).  Here, the Court finds that an award of costs is not justified because Plaintiff has substantially complied with his disclosure obligations concerning the discovery at issue and

15

does not appear to have acted in bad faith in withholding the information he will be compelled to produce.

## IV.    CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. Defendants' motion to compel DN 58 is **GRANTED in part and DENIED in part**.

2. Defendants' motion to compel further responses to Plaintiff's initial disclosures is **DENIED**.

3. Defendants' motion to compel further responses to interrogatory 12 is **DENIED**.

4. Defendants' motion to compel further responses to interrogatory 4 is **DENIED**.

5. Defendants' motion to compel further responses to interrogatory 6 is **GRANTED**.

6. Defendant's motion to compel further responses to interrogatory 10 is **GRANTED**.

7. Defendants' motion for an award of costs is **DENIED**.

8. On or before **June 18, 2021**, Plaintiff shall supplement his responses to interrogatories 6 and 10 consistent with this order.

Colin H Lindsay, Magistrate Judge
United States District Court

May 18, 2021

cc:  Counsel of record