UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*(ELECTRONICALLY FILED)*

| | |
|---|---|
| JOHN H. SCHNATTER, | ) |
| | ) |
|     Plaintiff, | ) Case No.: 3:20-CV-00003-BJB-CHL |
| | ) |
| v. | ) JUDGE BENJAMIN BEATON |
| | ) MAGISTRATE JUDGE COLIN H. LINDSAY |
| 247 GROUP, LLC, d/b/a LAUNDRY SERVICE and WASSERMAN MEDIA GROUP, LLC | ) ) ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF JOHN SCHNATTER'S BRIEF IN COMPLIANCE WITH COURT'S ORDER REGARDING SUBPOENA TO FREEH, SPORKIN & SULLIVAN, LLP**

Plaintiff John H. Schnatter, ("Schnatter") by counsel, in compliance with Judge Lindsay's Order (DN 92) requesting briefing on compliance with Defendants' 247 Group, LLC d/b/a Laundry Service ("Laundry Service") and Wasserman Media Group, LLC's (collectively "Defendants") Subpoena (the "Subpoena") of Freeh, Sporkin & Sullivan, LLP ("FSS"), states as follows:

**INTRODUCTION**

Defendants served the Subpoena on FSS, a law firm retained by Schnatter to provide legal and consulting services to Schnatter in anticipation of this litigation and other litigation arising from the same general factual background as this action. Schnatter joins in FSS' objection to the disclosure of nearly all of the documents sought in the Subpoena. As an initial matter, discovery should not be permitted of a lawyer and consultant for a party who is not being called as a witness in the action and has no factual information that is not either publicly available or can be obtained through depositions or interviews of the same persons by Defendants' own lawyers or consultants. To require that Schnatter's retained lawyer, who is not being called as a witness in this action,

hand over his file including his drafts, notes, and other work product generated in his services does not comport with proper discovery under the Federal Rules.

Relatedly, Schnatter objects to most of the items requested in the Subpoena because the Subpoena is nothing more than an effort to invade the thought processes and strategy of Schnatter's retained counsel who were providing legal advice and other services in anticipation of litigation arising from Defendants' misconduct and the aftermath thereof. The Subpoena in essence seeks to obtain not only attorney client communications between FSS and its client, Schnatter, and co-counsel but also the work product, including FSS' intra-office notes, case file memos, recorded mental impressions or other attorney opinion work product resulting therefrom developed by FSS in providing services to Schnatter in anticipation of litigation.

As stated above, all of the information sought by the Subpoena (other than FSS's confidential communications with Schnatter and his agents as well as FSS's processes and opinions) is either publicly available or can be obtained through normal discovery means (such as deposing the identified individuals) in this action. The Subpoena constitutes an unwarranted intrusion into Schnatter's retained counsel's review of the various matters. The information sought is classic attorney client privileged and/or work product protected information. Defendants cannot show any need much rather substantial need for the information from FSS. Contrary to Defendants' position, neither the publication of the Report, the giving of an interview discussing the Report, nor the identification of Mr. Freeh in Schnatter's Initial Disclosures waived such protections.

## **FACTUAL BACKGROUND**

As the Court is well aware, the present case arises from the disclosure of a confidential meeting/discussion involving Schnatter, representatives of Papa John's Inc. ("Papa John's") and representatives of Defendants. On May 22, 2018, Laundry Service asked Schnatter to participate in a teleconference from his office in Jeffersontown, Kentucky. *(Tendered Amended Complaint,

2

DN 50, ¶ 5). Laundry Services used the call, ostensibly concerning new marketing initiatives, to ask Schnatter questions regarding his views on race. (*Id.*) Throughout the conversation, Schnatter spoke out against the insidious effects of racism in society and relayed some of his own experiences from growing up in Indiana. (*Id.*) At the end of the call, Schnatter criticized a well-known public figure for regularly using the "N-word" and stated that he himself had "never used that word." (*Id.* ¶6) He was thus both criticizing the use of the epithet and making clear that it was something he himself had never used. (*Id.*)

This action arises from the disclosure of information of this meeting to Forbes Magazine who in turn published confidential details of the meeting on July 11, 2018 stating that Schnatter had used the "N-word" during the meeting. (*Id.* ¶¶ 8-10; *see also* Forbes Article filed herewith as ***Exhibit 1***). Aggravating the misconduct, rather than providing the true context of what Schnatter actually said, Defendants provided information out of context, suggesting Schnatter had used a racial slur against African Americans. (DN 50 ¶8).

This publication resulted in, *inter alia,* the termination of Schnatter's Founder's and Chairman Agreements with Papa John's as well as significant harm to his value as a celebrity endorser. (Fifth Amended Initial Disclosure, filed herewith as ***Exhibit 2***, p.24). After pursuing litigation with Papa John's in late 2018 and early 2019, Schnatter turned toward pursuit of Laundry Service to clear his name and remedy the improper breach of confidentiality by Defendants.

Schnatter hired the law firms of Glaser Weil Howard Avchen & Shapiro, LLP and Hughes Hubbard & Reed, LLP to determine the proper litigation means for redressing Defendants' wrongdoing and the creation of the false impression that he was a racist. At the same time, Schnatter had retained Glaser Weil as part of his legal team to represent him in defending a class action in the Southern District of New York captioned *Danker v. Papa Johns, International, Inc. et. al.,* 18 CV 07927-KMW (S.D.N.Y.) relating to the aftermath of the disclosure of the confidential meeting and subsequent Forbes article.

On or about May 31, 2019, at the recommendation of Glaser Weil, Schnatter retained former FBI Director and Judge for the Southern District of New York, Louis Freeh and FSS, to provide legal advice and to review and investigate the matters for the purpose of developing legal strategy for the then existing litigation and potential future litigation arising from the disclosure of the confidential meeting and its aftermath. As relevant to the present dispute, FSS actively participated with litigation counsel in developing legal strategy with respect to the litigation matters. FSS further proceeded to do an extensive investigation consisting of gathering information from publicly available sources; information obtained from his client (Schnatter) and Schnatter's agents; and third parties who have known Schnatter for several years.

Although not initially contemplated to lead to a public document, the investigation aspect of FSS' services resulted in the issuance of a Final Report titled "Final Report Review of John Schnatter Statements and Media Response" released on December 7, 2020 (the "Report") (*Exhibit 3* hereto). This Report (p. 3) noted that it included a review of:

1) the Transcript from Papa John's Earnings Call on Q3 2017 Results of November 1, 2017 (which are publicly available);

2) Transcript of a phone conference between Laundry Service and Mr. Schnatter (Defendants have the recording); and

3) Articles and social media in response to the above two statements (publicly available).

The Report then provided a summary of Mr. Freeh's findings with regard to Schnatter's past conduct based on his interview of Schnatter and others familiar with Schnatter during the past forty years. (*Id.* pp. 9-12). This part of the Report summarized and noted particular statements from various individuals regarding Schnatter's interactions with them over the years. The Report further contained the conclusion that "Schnatter treats everyone with respect, regardless of race, color or ethnic heritage." (*Id.* p. 12). The Report further concluded that Schnatter did not intend or harbor any racial bias or prejudice against anyone when making the statement in the May 22,

4

2018 meeting when such statement is heard in the context made. (*Id.* p. 13). The Report finally concluded that the distorted way some media characterized and misstated Schnatter's prior remarks "makes it clear that Schnatter has been unfairly treated, with his good reputation for treating everyone without prejudice unjustly challenged." (*Id.*).

The Report did not contain any of the underlying data or communications relied upon in creating the Report. The Report did not attach or include any underlying drafts, notes or other source material. Rather, the Report merely summarized and analyzed the information obtained and synthesized into the Report. Moreover, all of the third parties interviewed and identified in the Report are available for Defendants to contact and/or depose in this action. Thereafter, Mr. Freeh did an interview discussing his findings and conclusions which can be found at https://papajohnschnatter.report. Similar to the Report, this interview disclosed no non-public documents or any specifics contents of any communication.

In the meantime, Schnatter filed the present litigation on December 5, 2019 against Defendants. In his Third Amended Initial Disclosures served January 14, 2021, Schnatter identified Mr. Freeh as a person likely to have discoverable information that Schnatter may use to support his claims. This Disclosure provided:

> Mr. Freeh has expertise in background investigations and was the FBI Director from 1993-2001. Mr. Freeh conducted a thorough evaluation of the statements and personal and professional behavior of Mr. Schnatter for any evidence of racial bias or prejudice.

Shortly thereafter, counsel decided that it would not call Mr. Freeh as either a fact or expert witness or introduce his Report in this action. Thus, within a month of this Third Amended Initial Disclosure, Schnatter's counsel informed Defendants' counsel that Mr. Freeh would not be used as a witness in this action. By email dated February 12, 2021 (***Exhibit 4***), Schnatter's counsel confirmed to Defendants' counsel that:

5

> [w]e can also confirm that we will not be calling Louis Freeh, either live or by affidavit, and will not seek to introduce his report at any hearing or the trial in this matter.

By email dated March 3, 2021, counsel again informed Defendants' counsel that "we do not intend to use Mr. Freeh's report at trial, or call Mr. Freeh as a witness." (*See **Exhibit 5***). Notably, none of the documents requested by the Subpoena will be presented as evidence in this action and Mr. Freeh will not be called as a witness.

Nonetheless, Defendants served a Subpoena on FSS dated March 12, 2021 seeking essentially all of FSS' file relating to the Report including all of FSS' interview notes, drafts, and other evidence of FSS' thought processes in developing the Report. Specifically, the Subpoena requested:

**REQUEST NO. 1:** All Documents and Communications that relate to the Freeh Report, including but not limited to, all drafts, all interview notes, and all Documents or Communications reviewed or relied upon in drafting the Freeh Report.

**REQUEST NO. 2:** The Curriculum Vitae and/or resume of Louis Freeh.[1]

**REQUEST NO. 3:** All Documents related to and Communications with Plaintiff.

**REQUEST NO. 4:** All Documents and Communications with Aaron Thompson.

**REQUEST NO. 5:** All Documents and Communications with Plaintiff's PR Team.

**REQUEST NO. 6:** All Documents and Communications that relate to the May 22 Conference Call.

**REQUEST NO. 7:** All Documents and Communications that relate to the Forbes Articles.

**REQUEST NO. 8:** All Documents and Communications with Timotheus Polder.

**REQUEST NO. 9:** All Documents and Communications with Simon Smith.

**REQUEST NO. 10:** All Documents and Communications with Dr. Kevin Cosby.

**REQUEST NO. 11:** All Documents and Communications with Dr. Sam Tolbert.

---

[1] Schnatter does not object to production of the Final Report or Mr. Freeh's Curriculum Vitae; though the relevance of the Report and the CV of a person who will not be a witness in the action is not readily apparent.

6

**REQUEST NO. 12:** Produce All Documents and Communications related to the Action.

**REQUEST NO. 13:** All Documents and Communications that relate to the website, https://papajohnschnatter.report/, including the video interview of Louis Freeh available thereon.

## ARGUMENT

### I. THE REQUESTED ITEMS ARE NOT DISCOVERABLE UNDER FED. R. CIV. P. 26(b)(1)

The first inquiry is whether the requested materials are discoverable under Fed. R. Civ. P. Rule 26(b)(1). *Jacobs v. Floorco Ent., LLC,* 2020 WL 1290607, *4 (W.D. Ky. 2020) (court ordinarily decides whether documents are relevant as that term is defined in Rule 26(b)(1) prior to determining whether the attorney-client privilege or the work product doctrine protects the materials from disclosure.) Rule 26(b)(1) provides

> **Fed. R. Civ. P. Rule 26(b)(1) *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In addition to assessing whether the documents at issue are "relevant" to any party's claim or defenses, the Court must further determine that the requested documents are proportional to the needs of the case including the parties' relative access to relevant information and the importance of the discovery in resolving the issues. *Babcock Power, Inc. v. Kapsalis*, 2016 WL 4944245 at *5 (W.D. Ky. 2016) (Rule 26 was recently amended to include a proportionality provision.).

As to the documents requested in the Subpoena, this balancing demonstrates that the requested documents are not relevant and proportional. Neither Mr. Freeh nor anyone else at FSS is being called as a witness in this action. His investigation and the findings and conclusions of his investigation will not be presented to the trier in this action. Further under Rule 26(b)(1),

7

Defendants can present no justification as to why any of the information sought is important to resolving the issues in this action relating to Defendants' misconduct (not addressed at all in the Report); the Forbes article (publicly available to all) or the damages caused to Schnatter as a result thereof (not addressed in the Report).

Moreover, to the extent there was any non-privileged "factual" information that might have been obtained by FSS in providing its services, Defendants have the same access to such information as FSS did. Defendants have access to (and likely have possession of) the documents identified as reviewed in the Report. *See supra.* pp.4-5. As to interviews, Defendants have the same ability to contact and interview the witnesses identified in the Report as FSS did. Indeed, Defendants have served subpoenas for records on at least two of these witnesses—Mr. Smith and Dr. Cosby. To the extent Defendants seek their testimony, Defendants can take their deposition.

Using Schnatter's retained attorney and consultant to shortcut Defendants' investigation and guide them as to strategy calls in the prosecution of their defense against Schnatter is unwarranted under Rule 26(b)(1). Defendants cannot demonstrate that discovery of these materials is proportionate to the needs of this case. There simply is no justification under Rule 26(b)(1) for compelling a party's attorney and consultant to turn over his files and materials when such person is not being called as a witness.

This is analogous to a non-testifying expert who the rules generally protect from discovery under Fed. R. Civ. P. 26(b)(4)(D). The purpose of protecting non-testifying experts from discovery is threefold. "The rule is intended to 1) 'promote fairness by precluding a party from using an opponent's expert to build his own case;' 2) 'prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation;' and 3) protect an 'important interest in allowing counsel to obtain the expert advice they need ... without fear that every consultation with an expert may yield grist for the adversary's mill.'" *Ferrell v. Liberty Mut. Grp., Inc.*, 2014 WL 3587255, at *3 (E.D. Ky. 2014) (internal citation omitted).. All of these

8

rationales apply with equal force to Defendants' Subpoena's efforts to benefit from the efforts expended and costs incurred by Schnatter in retaining FSS.

The discovery requested in the Subpoena is not proportionate to the needs of the case. Accordingly, Defendants' efforts to bootstrap on Schnatter's retained attorney and consultant's services should be rejected.

## II. SCHNATTER OBJECTS TO PRODUCTION OF INFORMATION PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE

The Subpoena contains several requests that impinge on the attorney client privilege. Requests 3, 4 and 5 seek "all documents and communications with" Schnatter, his agent Aaron Thompson, and Schnatter's retained PR team. These Requests all fall squarely within the attorney client privilege. Likewise, Requests 1, 6, 7, 12 and 13 if interpreted broadly to include communications with Schnatter or his agents in connection with the rendering of legal advice likewise seek documents that would be within the attorney client privilege. Schnatter asserts this privilege, which belongs to him as the client, as to all documents reflecting communications between the persons identified in KRE 503(b) for the purpose of facilitating professional legal services to Schnatter.

The application of the attorney-client privilege in this diversity action is governed by KRE 503(b). *Jacobs,* 2020 WL 1290607 at *3, KRE 503(b) provides:

> **KRE 503(b)** General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
>
> **(1)** Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> **(2)** Between the lawyer and a representative of the lawyer;
>
> **(3)** By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest therein;

9

>    **(4)** Between representatives of the client or between the client and a representative of the client; or
>
>    **(5)** Among lawyers and their representatives representing the same client.

Kentucky law also protects confidential communications made "for the purpose of facilitating the rendition of professional legal services" if those communications are between the individuals identified in the Rule. Ky. R. Evid. 503(b). *Jacobs,* 2020 WL 1290607 at *3. Such communications include communications between "representatives of the client" or "the client and a representative of the client." *Id.* In turn, a representative of the client is defined as either "[a] person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client" or "[a]ny employee or representative of the client who makes or receives a confidential communication: (i) [i]n the course and scope of his or her employment; (ii) [c]oncerning the subject matter of his or her employment; and (iii) [t]o effectuate legal representation for the client." Ky. R. Evid. 503(a)(2).

In this context, such privileged communications would include but not be limited to those between FSS and (1) Schnatter; (2) Aaron Thompson who is Schnatter's principal agent and contact who worked closely with FSS and the litigation counsel as an agent of Schnatter's to obtain professional legal services and advice; (3) Schnatter's other retained counsel including Glaser Weil and Hughes Hubbard and (4) the public relations firms retained by Schnatter and his counsel for the purpose of assisting in the rendering of legal advice. *See In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F.Supp.2d 321 (S.D.N.Y. 2003) (holding that communication with a public relations firm can fall under attorney-client privilege when hired by the lawyers to assist with case); *In re Behr Dayton Thermal Products, LLC*, 298 F.R.D. 369 (S.D. Ohio 2013) (holding that communication with a third-party expert to assist in the provision of legal advice is protected by attorney-client privilege).

Thus, to the extent that the Subpoena requests documents reflecting and/or constituting communications between FSS and these individuals, Schnatter files this brief to confirm that he asserts such privilege and does not consent to the release of such privileged information in the possession of his retained attorney and consultant.

### III. THE ITEMS REQUESTED BY THE SUBPOENA ARE PROTECTED BY THE WORK PRODUCT DOCTRINE

The work product doctrine is broader than the attorney-client privilege in that it protects a wider array of materials than just communications between client and attorney. Unlike attorney client privilege determinations, the assessment of claims of work product protection is a matter of federal law. *Jacobs,* 2020 WL 1290607 at *3.

The work product doctrine protects the adversarial trial process and is designed to prevent a potential adversary, as Defendants attempt through the Subpoena, from gaining an unfair advantage. *Randleman v. Fidelity Nat'l Title Ins. Co*., 251 F.R.D. 281, 284 (N.D. Ohio 2008). It reflects a strong public policy "against invading the privacy of an attorney's course of preparation." *Id. citing Hickman v. Taylor,* 329 U.S. 495, 512 (1947).

The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative...." *Jacobs,* 2020 WL 1290607 at *3. An attorney's work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways...." *Hickman*, 329 U.S. at 511. Work product is protected to ensure that a lawyer can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 510-11. With the exception of Request No. 2. all of the items requested in the Subpoena seek FSS' interviews, statements, memoranda,

11

correspondence, and mental impressions as well as FSS' assembly of information and sifting of relevant from irrelevant facts. The Subpoena's efforts to obtain this information must be denied.

Fed. R. Civ. P. Rule 26(b)(3) provides:

**Fed. R. Civ. P. Rule 26(b)(3) *Trial Preparation: Materials*.**

**(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

> **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>
> **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Rule 26(b)(3) divides work product into two categories: "ordinary" work-product and "opinion" work-product. *Hines v. Safeco Ins. Co.,* 2020 WL 5237525 at *2 (W.D. Ky. 2020). Ordinary work-product is (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* "Opinion work-product" is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* The work-product doctrine provides ordinary work-product only a qualified protection against discovery while opinion work-product receives almost absolute protection from discovery. *Id.*

Courts may require the disclosure of materials that would otherwise meet the criteria for "ordinary" work product protection, only if the moving party can demonstrate: (1) substantial need of the materials, and (2) that a substantial equivalent cannot be obtained without undue

hardship. *Jacobs,* 2020 WL 1290607 at *3. However, courts are required under Rule 26(b)(3)(B) "to protect against disclosure of the mental impressions, conclusions, and opinions, or legal theories [referred to as 'core' or 'opinion' work product] of an attorney or other representative of a party concerning the litigation."

Here, Defendants cannot satisfy the test for discovering ordinary work product. "Substantial need consists of the relative importance of the information in the documents to the party's case and the ability to obtain that information by other means." *Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x. 467, 471 (6th Cir. 2001). As a general rule, inconvenience and expense do not constitute undue hardship. *Id.* To satisfy this test, Defendants must show that they have no other way of obtaining the "information" the requested discovery contains, not just that it has no other way of obtaining the notes and other requested discovery themselves. *See S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.,* 763 F.App'x 401, 406 (6th Cir. 2019).

In the present circumstances, Defendants cannot show substantial need because Defendants have equal access to the publicly available documents and witnesses interviewed by FSS. Mr. Freeh and FSS are not being called as witnesses and the Report is not being introduced as evidence. Thus, there is no substantial need for the information and the substantial equivalent of any factual information can be obtained through Defendants' own investigation. Indeed, Defendants can test the credibility of the noted interviewees and obtain any factual information through depositions. *See Randleman,* 251 F.R.D. at 286 (no substantial need for draft affidavits and other documents and communications relating to such affidavits where plaintiff could depose all affiants). All persons interviewed by FSS are capable of being deposed by Defendants to obtain the same information they seek. Defendants are not permitted under the work product doctrine to take advantage of Freeh's interviewing techniques, experience, his reactions, and his sifting of such information. Any "facts" contained in these interview notes and review of publicly available documents are obtainable by other means.

Where, as here, the witnesses are still available to Defendants, there is no substantial need for compelling Schnatter's retained lawyer and consultant to divulge his summaries or notes of such communications. *Hickman,* 329 U.S. at 511 (denying discovery of attorney's interview notes and holding that such discovery might be justified where witnesses no longer available). In rejecting requests akin to those in the Subpoena for a lawyer's interview notes, memos, and other materials concerning persons communicated with in anticipation of litigation, the Supreme Court, *id.* at 512-13 stated:

> [b]ut as to oral statements made by witnesses to (the lawyer), whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

Nearly all (but Request No. 2) of the Requests are for documents that reflect FSS' drafts, interview notes, memoranda, correspondence, mental impressions, and other work product generated by FSS during the course of preparing for and assisting Schnatter and his legal team in defending or prosecuting claims related to Defendants' misconduct at issue in this action. Because these Requests are prohibited under the work product doctrine, Defendants' pursuit of these documents should be denied.

### IV. THE ATTORNEY CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION WERE NOT WAIVED BY ISSUANCE OF THE REPORT OR INTERVIEW

Defendants have suggested during the communications leading to this briefing that FSS (and Schnatter) waived the attorney client privilege and work product protection accorded to the requested information because the Report was issued to the public and Mr. Freeh gave an interview

14

at papajohnschnatter.report concerning the Report. This argument, which could be applied to nearly any pleading or brief filed in a case, misses the mark. Several courts have recognized that a filing or publication of a document or report does not waive the protection accorded by the attorney client privilege to the communications upon which the report is based or the protection provided by the work product doctrine to the drafting and information gathering and sifting process.

For example, in *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989,* 133 F.R.D. 515, 527 (N.D. Ill. 1990), the Court considered the plaintiff's request that General Electric and McDonnell Douglas produce fifty draft reports of their investigation, drafts of other material eventually sent to the National Transportation Safety Board, summaries of witness testimony, and demonstratives prepared for presentation to the NTSB. *Id.* Similar to the present dispute, the Court noted that the sole issue with respect to all of the drafts in *In re Air Crash* was "whether the fact that the final product became public eliminated a claim of work product immunity for underlying drafts." *Id.* The Court rejected the plaintiffs' argument of waiver. The Court concluded that the drafts do not lose work product protection merely "because the final document is made public." *Id.* In so doing, the Court noted that "any other result would make every attorney's draft briefs subject to discovery." *Id.*

The Court in *In re General Motors LLC Ignition Switch Litigation,* 80 F.Supp.3d 521, 532 (S. D. N.Y. 2015) similarly concluded that publication of a report after an investigation does not waive the attorney-client privilege with regards to communications reflected in the report or the work product involved in preparing the report. In particular, the Court addressed plaintiffs' request for documents relating to a law firm's interview of hundreds of GM employees including attorney notes taken during the interviews; summaries created after each interview; and formal attorney memoranda created after the interviews (collectively, the "Interview Materials") that in turn formed the basis of an investigative report into ignition switch problems that General Motors was

having.  *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 524 (S.D.N.Y. 2015).  The Court rejected plaintiffs' argument that publication of the report waived all privileges concerning the Interview Materials.  *Id.* at 532; *see also Randleman*, 251 F.R.D. at 286  (filing of the affidavits with the court did not waive the work product doctrine's protection of earlier drafts and related material).

The publication of the Report and Mr. Freeh's subsequent discussion thereof on the papajohnschnatter.report website, neither of which cited any specific communication or any references to specific documents (other than those publicly available), did not waive the attorney client and work product protections accorded to FSS' materials generated in anticipation of litigation set forth above. [2]

## V.   IDENTIFICATION OF LOUIS FREEH  IN THIRD AMENDED INITIAL DISCLOSURES DID NOT WAIVE APPLICABLE PROTECTIONS

Defendants have also suggested that waiver of the attorney client and work product privileges occurred because Mr. Freeh was identified on Schnatter's Third Amended Disclosures served January 14, 2021.  This argument misperceives the nature of Rule 26(a) and of the disclosure in this action.

Fed. R. Civ. P. Rule 26(a)(1) requires a party to provide to the other party the name of individuals it believes are likely to have discoverable information.  The initial disclosure requirement should be applied 'with common sense ... keeping in mind the salutary purposes that the rule is intended to accomplish.'"  *United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923 at *2 (C.D. Cal. 2015).  Importantly, "[t]he initial list is intended to be a preliminary

---

[2] A party makes neither an implied waiver nor a subject matter waiver of attorney client privilege—when a party discloses certain privileged information *outside* the context of litigation.  *Berkley Custom Ins. v. York Risk Srvs. Group, Inc.,* 2020 WL 5439636 at *4 (S.D. N.Y. 2020).  Indeed, even when an extrajudicial disclosure is deemed to constitute a waiver of the attorney client privilege, such waiver is limited to only to the communication or portion of communication disclosed and does not constitute a general waiver of all matters discussed as to the general subject matter.  *Id.*  The fact that "documents appear to be drafts of communications the final version of which might eventually be sent to other persons, and as distributed would not be privileged," provides "no basis ... for inferring that [the privilege holder] did not intend that the drafts—which reflect its confidential requests for legal advice and were not distributed—to be confidential."

identification, subject to supplementation or correction 'in a timely manner' pursuant to Rule 26(e) as facts develop."

Here, Schnatter included Mr. Freeh as an individual that it believed may have discoverable information on January 14, 2021. In these disclosures, Schnatter stated that "these disclosures are made without [Schnatter] waiving his right to object to any discovery request or proceeding relating to the subject matter of these disclosures on any grounds, including competency, privilege, relevancy, materiality, hearsay, undue burden or confidentiality." No documents requested by the Subpoena were identified or disclosed nor did the disclosure contain any content of any communications between Mr. Freeh and anyone. There is nothing in the Initial Disclosures that would constitute a waiver of any attorney client privilege or work product protections.

Moreover, within weeks of this designation, Schnatter's counsel concluded that Mr. Freeh did not have any non-privileged information and would not be calling him as a witness. (*See supra.* p. 6). Schnatter's counsel immediately notified Defendants' counsel of this decision and confirmed on several occasions that Mr. Freeh would not be called as a witness and the Report would not be used in any manner in this action. (*Id.*) To further evidence this decision, Schnatter has amended his Rule 26 disclosures to remove Mr. Freeh from its list of potential individuals with discoverable information. (*See* Fifth Amended Initial Disclosures, ***Exhibit 2***). Accordingly, there is no need for Defendants to depose or obtain documents from FSS or Mr. Freeh, as there is no information he will provide that needs to be rebutted.

Mr. Freeh cannot provide any relevant information, as he has no facts which are not protected by the work product or attorney client privileges that are of any consequence to determining the issues and facts in this action. Where, as here, the lawyer from whom information is sought will not be a witness the identification of the lawyer on Initial Disclosures does not justify discovery from that lawyer. *See Hernandez v. Frazier*, 2011 WL 13136191 at *12 (W.D. Tex. 2011) (rejecting argument that because a lawyer had been listed in defendants' initial disclosures

17

he should be disqualified as counsel for defendants). In rejecting the motion to disqualify defendants' counsel, the court cited the defendants' assertions that the lawyer would not be used as a fact witness in the action; and that all the information of which the lawyer had knowledge was either: (1) publically available; (2) irrelevant; or (3) protected by the work-product or attorney-client privilege. *Id.*

The identification of Mr. Freeh as a person who may have discoverable information did not constitute a waiver of the attorney client and work product protections covering his file materials. As in *Hernandez,* Mr. Freeh will not be a witness in this action and all of the information he has is publically available, irrelevant and/or protected by the work-product and attorney client protections.

## **CONCLUSION**

For the foregoing reasons, Plaintiff, John H. Schnatter requests that Defendants' Subpoena to FSS be limited in scope to, at most, the production of the Report and Mr. Freeh's CV. A Proposed Order is filed with this Memorandum.

Respectfully submitted,

 */s/ Augustus S. Herbert*
Dennis D. Murrell
Elisabeth S. Gray
Augustus S. Herbert
**MIDDLETON REUTLINGER**
401 S. Fourth Street, Suite 2600
Louisville, Kentucky  40202
(502) 584-1135
dmurrell@middletonlaw.com
egray@middletonlaw.com
aherbert@middletonlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was e-filed on this the __14th__ day of June, 2021, via the Court's CM/ECF system, which will give electronic notice to counsel listed below who are registered to receive notifications:

Michael P. Abate
**KAPLAN JOHNSON ABATE & BIRD, LLP**
710 W. Main St., 4th Fl.
Louisville, KY  40202
mabate@kaplanjohnsonlaw.com

and

Bert H. Deixler (pro hac vice)
Patrick J. Somers (pro hac vice)
Nicole M. Cambeiro (pro hac vice)
**KENDALL BRILL & KELLY LLP**
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA  90067
bdeixler@kbkfirm.com
psomers@kbkfirm.com
ncambeiro@kbkfirm.com

*Counsel for Defendants 247 Group, LLC d/b/a Laundry Service and Wasserman Media Group, LLC*

Thomas McC. Souther
**Freeh Sporkin & Sullivan, LLP**
350 Fifth Avenue
Suite 6903
New York, NY  10118
(646) 558-6052
souther@freehsporkinsullivan.com
*Counsel for Freeh Sporkin & Sullivan, LLP*

　　　　　　　　　　　　　　　　　　　　　　 _/s/ Augustus S. Herbert_
　　　　　　　　　　　　　　　　　　　　　　 *Counsel for Plaintiff*