UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00003-BJB-CHL

JOHN H. SCHNATTER, **Plaintiff,**

v.

247 GROUP, LLC , et al., **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to compel production of documents and to determine the sufficiency of a discovery response filed by Defendants 247 Group, LLC and Wasserman Media Group, LLC (collectively "Defendants"). (DN 106.) Plaintiff John H. Schnatter ("Schnatter") filed a combined response in opposition and motion for a protective order. (DN 115.) Defendants then filed a combined reply in support of their motion and response in opposition to Schnatter's motion for a protective order (DN 122),[1] and Schnatter then filed a reply in support of his motion for protective order (DN 126). These motions are now ripe for review.[2]

---

[1] Defendants request oral argument with their combined reply and response. (DN 156-1, at PageID # 2714.) The Parties have thoroughly briefed the relevant facts and law, and the Court is familiar with the case and the issues presented. Accordingly, the Court is equipped to rule on the motions without further argument from counsel and therefore will not hold oral argument.

[2] Schnatter redacted two footnotes in the body of his response as well as portions of two exhibits filed in support of his response. (DN 115, at PageID # 1317, 1338–41, 1347–49.) The same day, Schnatter filed a motion for leave to seal these excerpts and filed under seal unredacted versions of the documents. (DN 116; DN 117.) On August 13, 2021, Defendants filed their combined reply in support of their motion and response in opposition to Schnatter's motion for a protective order. (DN 122.) Because the combined reply and response references the information Schnatter sought to redact, Defendants filed the reply provisionally under seal to allow the Court to determine the merits of Plaintiff's motion to seal. (*See* DN 121.) Pursuant to the Court's October 15, 2021 order (DN 149), the unredacted versions of the Parties' briefs filed at DN 117 and DN 122 are permanently sealed, and publicly available redacted versions are filed at DN 115 and DN 156-1. References to the briefs in this order cite to the publicly available versions.

**I.      BACKGROUND**

Schnatter is the founder of Papa John's International ("Papa John's") and served as its CEO and Chairman until 2018. (DN 1-1, at PageID # 12, 17.) On May 22, 2018, Schnatter participated in a call with Defendant 247 Group, LLC, which provided marketing services to Papa John's. (*Id.*, at PageID # 16.) During the call, Schnatter made controversial comments about racial issues and uttered a racial slur. (*Id.*) Unbeknownst to Schnatter, that call was recorded, and the audio was subsequently disclosed to *Forbes Magazine*. (*Id.*, at PageID # 16–17.) On July 11, 2018, *Forbes* published details about the call, and Schnatter resigned as Chairman of Papa John's the same day, terminating his Chairman Agreement. (*Id.*, at PageID # 17.) On July 13, 2018, the University of Louisville ("UofL") announced that it would rename its football stadium, then Papa John's Cardinal Stadium, to end its affiliation with the business; Schnatter's naming rights contract with UofL was formally terminated on October 24, 2019. (DN 106-1, at PageID # 1273.) On July 15, 2018, his Founder's Agreement with Papa John's was also terminated. (*Id.*, at PageID # 1265.) On July 19, 2018, *Forbes* published an article based on an investigation of Schnatter's conduct including interviews with thirty-seven employees titled "The Inside Story Of Papa John's Toxic Culture." (*Id.*, at PageID # 1186–96.) The article reported allegations "rang[ing] from spying on his workers to sexually inappropriate conduct, which has resulted in at least two confidential settlements." (*Id.*, at PageID # 1197.) Schnatter filed suit against Defendants in state court on December 5, 2019, and the case was removed to this Court on January 2, 2020. (DN 1; DN 1-1.) Schnatter's claims arise from the disclosure of the May 22, 2018 phone call to *Forbes*. (DN 1-1.) Schnatter alleges that the disclosure interfered with his contracts with Papa John's and UofL. (DN 106-1, at PageID # 1264–73.)

On June 9, 2020, Defendants served their first set of requests for production, which included Request 18, for: "All Documents and Communications relating to any nondisclosure agreement between Plaintiff and any Person stemming from any incident or alleged incident of harassment, racial insensitivity, or other inappropriate behavior." (DN 106-1, at PageID # 1214.) On July 9, 2020, Schnatter served his responses, objecting to Request 18 based on relevance, proportionality, and privilege. (DN 106-1, at PageID # 1222.) Additionally, Schnatter asserted that, "in review of his files to date, he has not found any documents or communications within his possession, custody, or control responsive to this request." (*Id.*) On July 20, 2020, Defendants contacted Schnatter and noticed deficiencies in his response to Request 18. (*Id.*, at PageID # 1181.) During several meet and confer communications between August and November 2020 regarding Schnatter's objection to Request 18, Schnatter again indicated that he did not possess any documents or communications responsive to Request 18 but suggested that responsive documents were in the possession of Papa John's. (*Id.*, at PageID # 1181.) Defendants conferred with Papa John's regarding Request 18, and on January 11, 2021, Papa John's indicated that it did not possess responsive documents. (*Id.*, at PageID # 1181–82.)

On January 22, 2021, Defendants served their second set of requests for production, which included Request 42 for: "All Documents and Communications relating to any settlement agreements and/or nondisclosure agreements between You and any Person stemming from any allegations against You for incidents or alleged incidents of racial, gender, or sexual harassment or insensitivity, or any other behavior, at any point in time." (DN 106-1, at PageID # 1234.) The same day, Defendants served their first set of requests for admission, which included Request 13, for Schnatter to: "Admit that between 2005 and 2018 You settled at least two disputes arising out allegations of sexual harassment by You against others." (DN 106-1, at PageID # 1250.) On

3

February 23, 2021, Schnatter served his responses, objecting to Request 42 and Request 13 on relevance and proportionality grounds. (DN 106-1, at PageID # 1240, 1260.) The Parties met and conferred in April and May 2021 regarding Schnatter's objections, and on May 24, 2021 the Court conducted a telephonic status conference to discuss the dispute. (DN 92.) After hearing the Parties' positions, the Court ordered the Parties to continue working together to resolve the dispute and granted leave for the Parties to proceed to motion practice to the extent that they were unable to do so. (*Id.*, at PageID # 862–63.)

## II. LEGAL STANDARD

This Court maintains discretion over the scope of discovery. *S.S. v. E. Ky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally speaking, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Discovery responses therefore must be "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). Objections to interrogatories "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Answers to requests for admission must admit the request, "specifically deny" the request, "detail why the answering party cannot truthfully admit or deny," or object on "stated" grounds. Fed. R. Civ. P. 36(a)(4)-(5). Upon a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking the protective order bears the burden

of showing that good cause exists for the order. *Peterson v. Outback Steakhouse*, 2016 WL 5235609, *1, 2016 U.S. Dist. LEXIS 129596, *3 (E.D. Mich. Sept. 22, 2016) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)).

### III. DISCUSSION

#### a. Possession of Responsive Documents

A threshold issue with respect to Request 18 and Request 42 is whether Schnatter possesses responsive documents. In his response to Defendants' motion to compel, he "again confirms that he has no responsive documents in his possession, custody, or control as to either Request No. 18 or Request No. 42." (DN 115, at PageID # 1322 n.2.) Schnatter cites a May 19, 2021 meet and confer letter to Defendants in which Schnatter asserted that "there are no responsive documents relating to allegations relating to racial discrimination, racial harassment or racial insensitivity." (DN 115-3, at PageID # 1355.) In the letter, Schnatter continued:

> Beyond that, the request for settlement agreements or non-disclosure documents for conduct unrelated to racially related words or conduct is far afield and appears calculated only to annoy, harass and potentially embarrass Plaintiff while also violating the confidentiality and privacy interests of any persons that might be involved if there are such agreements. Defendants cannot provide any colorable basis for why records relating to unproven allegations and agreements, if there are any, entered into between parties under the expectation of confidentiality are relevant in any manner to any claims or defenses in this matter,. [sic] Moreover, any such documents, if they existed, would certainly not be proportional to the claims in this matter. Therefore, Plaintiff stands on his objections to this Request.

(*Id.*) (footnote omitted).

In their reply brief, Defendants urge the Court not to "credit Plaintiff's carefully crafted statement suggesting the Requested Discovery is somehow moot because there are no responsive documents." (DN 156-1, at PageID # 2719.) Defendants dispute Schnatter's claim, noting

5

Schnatter's "public testimony in litigation against Papa John's, where . . . he admitted in open court that he had 'nondisclosure agreements' with at least two women but denied knowing whether those agreements constituted 'settlements.'" (*Id.*, at PageID # 2720.)

To an ordinary reader, Schnatter's briefs creates an impression that he is being evasive. At different points, Schnatter asserts that there are no responsive documents relating to racial misconduct, that there are no responsive documents of any category of misconduct in his possession, and that Papa John's possesses no settlement agreements "relating to gender discrimination or other misconduct." (DN 115, at PageID # 1323–24; DN 126, at PageID # 1525.) Then, in arguing the merits of his objections, Schnatter alleges with specificity that "if Mr. Schnatter possessed any responsive documents," they would be irrelevant, and disclosure would be unduly burdensome. (*Id.*, at PageID # 1327.) For example, to the extent that Defendants' seek settlement agreements for sexual harassment that took place between 1999 and 2005, Schnatter asserts that "[i]f there were any such Agreements, they would only reflect allegations made (apparently in the distant past) totally unrelated to the issues raised in this action . . . ." (*Id.*, at PageID # 1328.) Additionally, despite the settlement agreements being totally hypothetical from Schnatter's position, he claims that disclosure "comes with a significant burden to the confidentiality of settlement agreements and the privacy interests of the parties involved." (*Id.*, at PageID # 1331.) While there is nothing inherently suspicious about arguing in the alternative, if Schnatter possesses no material responsive to Request 18 and Request 42, one wonders why he needs a protective order relieving him from the obligation to respond to such inquiries.

"The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have." *In re Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003). However, "[s]uch an assertion is insufficient to warrant a motion to

compel." *Averill v. Gleaner Life Ins. Soc.*, 626 F. Supp. 2d 756, 766 (N.D. Ohio 2009). *See Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008) (finding that based on party's "representation to the court that documents responsive to this request either do not exist or have already been produced to plaintiffs, the motion to compel with respect to this request is denied").

This situation was recently addressed by the Western District of New York, where the plaintiff moved to compel defendants' production of documents that a third party was obligated to keep and maintain. *Osucha v. Alden State Bank*, No. 17-CV-1026 (LJV), 2020 WL 3055790, at *3 (W.D.N.Y. June 9, 2020). The court noted that the defendants had not denied that the documents ever existed, and that defendants' counsel had credibly asserted that she had produced everything her clients had given her. *Id.* Under these circumstances, the court opined: "That lead defense counsel has produced everything given to her, and that the material in the bullet points remains unaccounted for, can be true at the same time, and therein lies the difficulty." *Id.* Acknowledging that it was "having some trouble crafting a remedy," the court opted for "[a]n incremental approach" wherein it required the defendants to submit a sworn affidavit or declaration that stated their position for each piece of undisclosed information as to whether it ever existed, what they believe happened to it, what steps were taken to locate it, and how they would go about locating it if they "absolutely needed" to. *Id.*

The Court finds that a similar approach is appropriate here. To the extent that the Court finds that Defendants are entitled to further responses to Request 18 and Request 42 and Schnatter maintains that he possesses no responsive documents, Schnatter will be required to substantiate this claim through an affidavit as set forth below.

### b. Relevance

Defendants argue that the discovery at issue is "relevant to this case for two reasons: (1) such documents and information are relevant to the causation element of Plaintiff's tort claims, and (2) such documents and information are relevant to Plaintiff's assertion of reputational damages." (DN 106, at PageID # 1170) (footnote omitted). First, Defendants state that the discovery is relevant to their defense of Schantter's claim that Papa John's would not have terminated the licensing agreement and UofL would not have terminated the naming rights agreement but for Defendants' alleged conduct related to the leaked phone call recording. (*Id.*, at PageID # 1170–72.) Defendants argue that the discovery could show whether Schnatter's conduct unrelated to the phone call was "a factor in the decisions of Papa John's and [UofL] to terminate their various agreements with Plaintiff." (*Id.*, at PageID # 1171.) Second, Defendants state that the discovery is relevant their defense of Schnatter's claim for reputational damages resulting from Defendants' conduct. (*Id.*, at PageID # 1172–74.) Defendants note that reporting of sexual harassment by Schnatter was made public around the time that the leaked phone call was reported on and argue that "discovery into these allegations and resulting agreements in order to determine whether they were a separate, intervening cause of and/or mitigated the purported reputational harm Plaintiff claims he suffered." (*Id.*, at PageID # 1174.)

In response, Schnatter argues that all available evidence "demonstrates that the termination of Mr. Schnatter's relationships with Papa John's and with the [UofL] occurred as a direct result of the July 11, 2018 Forbes article stating that Mr. Schnatter had used the 'n' word in a meeting with Defendants in May 2018." (DN 115, at PageID # 1328.) Schnatter asserts that Defendants' suggestion that Papa John's or UofL was influenced by unrelated allegations of misconduct has no basis other than mere speculation. (*Id.*, at PageID # 1328–29; DN 126, at PageID # 1524–25.)

8

Schantter concedes that *public* reports of misconduct may be relevant to reputational damages but disputes that *nonpublic* agreements could affect his reputation in the community. (*Id.*, at PageID # 1329.) Schnatter also argues that agreements concerning allegations of misconduct that arose prior to the disclosure of the phone call recording "was already factored into his celebrity endorser value" as of 2018. (*Id.*)

In reply, Defendants assert that the requested discovery "cannot be written off as unrelated, ancient history, as Plaintiff attempts to do." (DN 156-1, at PageID # 2724.) Defendants note that Papa John's terminated the Founder's agreement four days before *Forbes* published an article about the culture of misconduct at Papa John's, including reports by employees of sexual misconduct resulting in settlement agreements. (*Id.*) Defendants suggest that forthcoming article must have been known to Papa John's given the number of employees interviewed for the story and argue that "it is entirely plausible that Papa John's was motivated to terminate the Founder's Agreement in large part to distance itself from Plaintiff given the rapidly mounting public evidence of his own misconduct." (*Id.*) Defendants further note that it is even more plausible that the reported allegations influenced Papa John's decision to terminate the licensing agreement more than a year after the article was published. (*Id.*) Defendants also dispute Schnatter's contention that only misconduct related to race is at issue, arguing that his claim for "reputational damages puts his *entire* reputation at issue." (*Id.*, at PageID # 2725) (emphasis in original). Defendants note that Rule 405(a) of the Federal Rules of Civil Procedure permits the introduction of specific prior bad acts in cross-examining character witnesses who Schnatter plans to call at trial. (*Id.*, at PageID # 2726.)

The Court finds that the information sought by Request 13, Request 18, and Request 42 is relevant for discovery purposes. Schnatter claims that Defendants are liable for reputational

9

damages. (DN 111, at PageID # 1307.) The Court has already ordered Schnatter to produce documents that shed light on Schnatter's reputation both before and after the publication of the *Forbes* article. (DN 155, at PageID # 2693.) The Court sees no reason why discovery should be limited to his reputation related to racial issues. "It is well settled in Kentucky that where damages are sought for injuries to reputation, evidence of the plaintiff's bad reputation may be shown in mitigation of damages." *Daugherty v. Kuhn's Big K Store*, 663 S.W.2d 748, 750 (Ky. Ct. App. 1983) (citing *Louisville & N.R. Co. v. Owens*, 164 Ky. 557, 175 S.W. 1039 (1915). *See Eastland v. Caldwell*, 5 Ky. (2 Bibb) 21, at 24 (1810) ("In the estimation of damages, the jury must take into consideration the *general* character of the plaintiff and his standing in society . . . .") (emphasis in original). And while evidence of Schnatter's alleged misconduct that is unrelated to the May 22, 2018 call may not be admissible in mitigation of damages, *Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758, 774 (Ky. 1990), the requested documents and communications "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). Nor is the Court convinced that only "information available in the public domain . . . may be potentially pertinent to an analysis of reputation loss." (DN 115, at PageID # 1329.) *See Louisville Times Co. v. Emrich*, 252 Ky. 210, 66 S.W.2d 73 (1934) (Reputation "is established by the testimony of those who are familiar with and know the people among whom the one whose reputation is assailed associates."). Moreover, the extent to which allegations of misconduct against Schnatter were known to individuals that were not directly involved has not been established. Based on the reporting in the July 19, 2018 *Forbes* article, the allegations could have been known to any number of the thirty-seven employees that were interviewed. Responses to Request 18 and Request 42 will reveal with whom these allegations were discussed and could bear on the degree to which the allegations influenced both

10

Schnatter's reputation and the decisions by Papa John's and UofL to terminate the relevant contracts.

### c. Proportionality

In assessing whether a discovery request is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Defendants argue that each of these factors weighs in favor of compelling production. (DN 106, at PageID # 1175.) In response, Schnatter argues that the discovery is not proportional because it "adds nothing to resolving the issues of the case and comes with a significant burden to the confidentiality of settlement agreements and the privacy interests of the parties involved." (DN 115, at PageID # 1331.) Schnatter also argues that the requests are overly broad because the have "no limitation with regard to time and scope." (DN 115, at PageID # 1327.) In reply, Defendants argue that Schnatter's argument is no more than a boilerplate objection and fails to address the factors set forth in Rule 26(b)(1). (DN 156-1, at PageID # 2726–27.)

The Court finds that the relevant considerations do not warrant limiting discovery as Schnatter requests. As set forth in Part III(b) *supra*, the discovery at issue is relevant to Schnatter's alleged damages, which are especially difficult to quantify in the context of future losses and reputational harm. Thus, the discovery is important to resolving the issue of damages. Schnatter seeks over $110 million in damages, including $67.5 million for reputational losses. (DN 106-1, at PageID # 1264–73.) This case has also garnered significant public interest, in large part due to

Schnatter's public campaign aimed at galvanizing the legitimacy of his claims against Defendants.[3] Thus, ensuring that Defendants are afforded a full opportunity to defend Schnatter's claims protects not just their interests in this litigation but also in their standing in the public eye. The Parties are all highly sophisticated and their resources are not meaningfully unequal. In light of Schnatter's resources, requiring routine document production and a response to a request for admission will not impose an unreasonable expense. The record in this case indicates that Defendants have been disadvantaged in their relative access to relevant information. While there is nothing in the record indicating that Defendants have not been fully responsive to discovery requests, Schnatter has continuously denied them access to crucial discovery at the heart of Schnatter's claims, resulting in multiple successful motions to compel. (*See* DN 89; DN 155.) Additionally, Defendants have also been hindered in their attempts to obtain third party discovery from Papa John's. Indeed, it took nearly a year of meeting with the court and conferring with Schnatter and Papa John's before Defendants received production of documents in compliance with a subpoena. (DN 137, at PageID # 2371.) Finally, the Court is not convinced that disclosure will impose any undue burden. The third party privacy interests in the confidentiality of settlement agreements that Schnatter cites are protected in the context of this litigation through Rule 5.2 and through the Sixth Circuit sealing standard. *See* Fed. R. Civ. P. 5.2; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Use of this information outside this litigation is further restricted by the Parties' confidentiality agreement. (*See* DN 49-1.) For the foregoing reasons, the Court finds that the requests are not disproportional to the needs of the case.

---

[3] The Court's October 28, 2021 order highlighted several examples of Schnatter's media appearances related to this case. (DN 155, at PageID # 2709.) Since that time, Schnatter participated in a profile of him in which he discusses the case and even alleges that potentially relevant documents are being destroyed by Papa John's. DAVID LEONARD, *Papa John is Still Obsessed with Papa John's*, BLOOMBERG BUSINESSWEEK (November 3, 2021), https://www.bloomberg.com/news/features/2021-11-03/papa-john-s-founder-john-schnatter-eyes-pizza-chain-return-after-racial-slur.

### d. Privilege

The Court notes that Schnatter's response to Request 18 raised an objection of grounds of attorney-client privilege. However, Schnatter did not raise that claim in his brief, and therefore, the Court will not address it. Schnatter argues that "the Court should reject [Defendants'] efforts to obtain information about communications leading to any prior confidential settlement agreements as well as the agreements themselves." (DN 115, at PageID # 1325.) Schnatter cites to *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.2003) for the proposition that the Sixth Circuit has recognized the existence of a formal settlement privilege. (*Id.*) In response, Defendants argue that discovery of information related to confidential settlement agreements is not precluded for several reasons. (DN 156-1, at PageID # 2730–34.) First, Defendants note that *Goodyear* protects communications made in furtherance of discovery but does not preclude discovery of settlement agreements. (*Id.*, at PageID # 2730.) Defendants argue that settlement agreements themselves are not entitled to any special protection in discovery. (*Id.*, at PageID # 2730–31.) Defendants assert that any confidentiality provisions covering the agreements are not relevant to their discoverability and any privacy interests can be protected through a confidentiality agreement. (*Id.*, at PageID # 2732.) Finally, Defendants argue that Schnatter's privilege claim cannot excuse him from admitting or denying in response to Request 13, a request for admission. (*Id.*, at PageID # 2732–33.) In reply, Schnatter reiterates the public interest in maintaining the secrecy of settlement communications, and alternatively argues that even without any privileged status, the information at issue is not discoverable under the general relevance and proportional standard. (DN 126, at PageID # 1528–29.)

Under Rule 408, conduct or statement made in the course of settlement negotiations are "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a

disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408(a). However, "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FRE 408(b). In *Goodyear*, the issue presented was "whether communications made in furtherance of settlement negotiations are *discoverable* by litigants in another action." *Goodyear*, 332 F.3d at 979 (emphasis in original). The Sixth Circuit noted the "strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations . . . whether [] under the auspices of the court or informally between the parties." *Id.* at 980. The court concluded, "[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist, and that the district court did not abuse its discretion in refusing to allow discovery." *Id.* The ruling in *Goodyear* is actually "quite limited." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 U.S. Dist. LEXIS 47857, *10 (W.D. Ky. 2007). As Judge Russell recognized, lower court opinions issued subsequent to *Goodyear* "frequently use a misnomer when referring to [the] *Goodyear* decision and tend to refer to it as creating a 'federal settlement privilege,' which implies a far more expansive ruling than the *Goodyear* panel announced." *Id.* at *10–11. In *Westlake Vinyls*, this Court "clarif[ied] that it does not interpret *Goodyear*, or any other binding law as creating a 'settlement privilege' broader in scope than one *which shields from discovery* communications made, or documents created, for the specific purpose of furthering settlement negotiations." *Id.* at *13 (emphasis added).

The authorities Schnatter cites do not preclude discovery of all possible responses to Request 13, Request 18, and Request 42. The clearest example is Request 13, which does not seek any communications or documents, but merely requests that Schnatter admit or deny that he

14

settled two harassment disputes between 2015 and 2018. Schnatter's response would not be covered by the settlement privilege recognized in *Goodyear* because it merely reveals the existence of a settlement relationship, and "the relationship itself is not privileged, but only the underlying communications." *Goodyear*, 332 F.3d at 982 (citations omitted). Similarly, Request 18 and Request 42 do not narrowly target communications made in furtherance of a settlement agreement, but rather they broadly seek "[a]ll Documents and Communications *relating to* any settlement agreements and/or nondisclosure agreements . . ." (DN 106-1, at PageID # 1214) (emphasis added). These requests cover communications and documents that could not possibly be protected by the settlement privilege such as those created *after* a settlement agreement was finalized and any document or communication that concerns such agreements but was not made "for the specific purpose of furthering settlement negotiations." *Westlake Vinyls*, at *13. Additionally, this Court has repeatedly found that "the settlement privilege does not extend to finalized settlement agreements." *Rogers v. Webstaurant Store, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 6728575, at *3 (W.D. Ky. Dec. 21, 2018) (citing *Westlake*, at *11). *See NOCO Co. v. Shenzhen Dika Na'er E-commerce Co.*, No. 1:17 CV 02282, 2019 WL 9093481, at *2 (N.D. Ohio Aug. 27, 2019) (collecting cases in which courts in the Sixth Circuit found that confidential settlement agreements were discoverable).

Because the Court has not been provided with a description of responsive withheld documents and communications, it cannot definitively determine whether they contain any privileged material.[4] The Court recently faced a similar conundrum in addressing Defendants'

---

[4] Although neither party explicitly raised the issue, it is possible that Schnatter has waived some or all privilege protection. The Sixth Circuit has not addressed waiver in the context of settlement privilege, but several district courts in the circuit have considered the issue. *In re Wendy's Co. Shareholder Derivative Action*, No. 1:16-CV-1153, 2021 WL 3268841, at *4 (S.D. Ohio July 30, 2021) (finding that the privilege is waived "where the parties have divulged the specific details of the underlying mediation and settlement communications,"); *Point/ARC of N. Kentucky, Inc. v. Philadelphia Indem. Ins. Co.*, No. CV 09-81-DLB-CJS, 2013 WL 12249700, at *3 (E.D. Ky. Mar. 29, 2013) (declining to impute plaintiff's waiver to its insurer "who had an adverse interest during settlement negotiations"); *Grupo*

15

motion to enforce a subpoena *duces tecum* served on a law firm that Schnatter had retained. (DN 155, at PageID # 2710–11.) Both Schnatter and the law firm objected to virtually all document requests on privilege grounds but did not provide sufficient information about the withheld documents for the Court to reach a final determination. (*Id.*) Rather than rejecting any privilege claim or ordering *in camera* review, the Court decided "a more favorable remedy is to permit [the law firm] to complete a privilege log that considers the guidance set forth in [the] order before complying with the subpoena." (*Id.*, at PageID # 2711.) The Court finds that a similar approach is appropriate here. Accordingly, the Court will grant in part and deny in part Defendants' motion to compel and order Schnatter to update his privilege log to consistent with the guidance of this order before responding to the requests at issue. In doing so, the Court takes this opportunity to remind the Parties of their obligation to catalogue claims of privilege.

When a party withholds information from discovery under a claim of privilege, Rule 26(b)(5) requires that the party: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The Advisory Committee notes to the rule explain that "[t]o withhold materials without [providing notice as described in Rule 26(b)(5)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."

---

*Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004), *aff'd on other grounds*, 195 F. App'x 491 (6th Cir. 2006) (finding that disclosing a settlement agreement does not waive privilege nor does placing damages at issue in litigation). Presumably, "[l]ike other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975). The Court encourages the Parties to consider the extent to which they may have relinquished their expectation of privacy in settlement communications when asserting the privilege.

Under the standard set forth in Rule 26(b)(5), Schnatter's description of the material for which it claims privilege protection is facially deficient. *See West v. Lake State Railway Company*, 321 F.R.D. 566 (E.D. Mich. 2017). (Defendant employer's privilege log provided only the generalized statement that it reserved the right to withhold documents protected by the attorney-client privilege or as work product. It failed to disclose the existence of any withheld documents, much less to specify how the privilege claims applied.) As a result, the Court may deem Schnatter's claim waived, but it chooses not to penalize him due to the sensitive nature of the discovery at issue and because active discovery remains ongoing. The Parties are not to construe this order nor its October 28, 2021 order (DN 155) as excusing compliance with the procedures for asserting privilege set forth in the Federal Rules. *The Parties are advised that future privilege claims will be closely scrutinized and that privilege claims that do not comply with Rule 26(b)(5) will likely be summarily denied.*

### e. Attorney's Fees

Defendants request an award of attorney's fees. (DN 106, at PageID # 1176.) In support of their request, Defendants assert that they "have tried in good faith to work with Plaintiff and his counsel for several months, including a number of letters and at least two meet and confer telephone calls, to obtain the requested information." (*Id.*) Defendants argue that Schnatter's failure to adequately respond to their requests caused them to incur the costs of motion practice. (*Id.*) In response, Schnatter asserts that he "complied with his discovery obligations and his responses and objections were substantially justified." (DN 117, at PageID # 1385 n.6.) Under Rule 37(a)(5)(C), if a motion to compel "is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Factors that are relevant to whether an award of sanctions is warranted

include whether the party's "failure to sufficiently respond was willful or made in bad faith" and whether the party's failure to respond has prejudiced the party propounding the discovery. *Hollingsworth v. Daley*, No. 2:15-cv-36, 2016 WL 2354797, at *2 (E.D. Ky. Mar. 21, 2016), *report and recommendation adopted*, 2016 WL 1737956 (E.D. Ky. May 2, 2016) (citing *Spees v. James Marine, Inc.*, No. 5:08-cv-73, 2009 WL 981681, at *5 (W.D. Ky. Apr. 13, 2009)). Courts also look to the party's justification for its initial response to the discovery. *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 361 (W.D. Ky. 2011). If the party's initial response is reasonably justified an award of reasonable expenses is not appropriate. *Id.* An award of fees under Rule 37(a)(5)(C) has been held to be inappropriate where the parties prevailed on a motion to compel "in approximate equal degree." *Wright v. State Farm Fire and Cas. Co.*, No. 2:12-cv-409, 2013 WL 1945094, at *6 (S.D. Ohio May 9, 2013) (citing *National Hockey League v. Metropolitan Hockey Club*, 421 U.S. 639 (1976); *Regional Refuse Systems v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)).

The Court finds that the circumstances do not warrant a discretionary award of costs. The discovery requests at issue, as well as several of Defendants other requests, seek highly sensitive and personal information about Schnatter. It is understandable that Schnatter would endeavor to keep this information confidential, and Schnatter has presented a cognizable legal basis for precluding their discovery. Indeed, the Court's discussion in Part III(b) *supra* concluded that Defendants' requests could cover privileged communications. Although the Court is not unsympathetic toward the difficulties Defendants have faced in seeking discovery in this case, the Court finds no basis to conclude that Schnatter has acted in bad faith with respect to the discovery at issue. Therefore, Defendants' request for an award of attorney's fees will be denied.

### IV. ORDER

For the foregoing reasons, the Court will grant in part and deny in part Defendants motion to compel (DN 106) and deny as moot Schnatter's motion for a protective order (DN 115).

Accordingly,

IT IS HEREBY ORDERED as follows:

1. DN 106 is **GRANTED in part and DENIED in part**.

2. On or before **December 7, 2021**, Schnatter shall tender to Defendants a sworn affidavit that states:

    a. whether any documents and communications responsive to Request 18 and Request 42 exist or ever existed;

    b. what steps have been taken to locate said documents and communications; and

    c. how he would go about locating the documents and communications if he were so required.

3. On or before **December 7, 2021**, Schnatter shall respond to Request 13 consistent with this order.

4. On or before **December 7, 2021**, Schnatter shall tender to Defendants a log of all documents and communications responsive to Request 18 and Request 42 that are withheld on privilege grounds.

5. On or before **December 16, 2021**, Schnatter shall produce all nonprivileged documents and communications responsive to Request 18 and Request 42 consistent with this order.

6. DN 115 is **DENIED as moot**.

November 15, 2021

cc: Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court