# EXHIBIT 55

## FILED UNREDACTED PER DN 184

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT

July 10, 2018

247 Group, LLC, dba Laundry Service
55 Water Street, 5th Floor
Brooklyn, NY 11201

Attn: Michael R. Pickles, Esq.

RE: Mutual Termination Letter

Dear Michael:

This letter (the "Mutual Termination Letter") contains the terms under which Papa John's Marketing Fund, Inc. and Papa John's International, Inc. and its subsidiaries and affiliates (collectively, "Papa John's"), Wasserman Media Group, LLC ("Wasserman"), and 247 Group, LLC d/b/a Laundry Service ("Laundry Service") (each, a "Party" and collectively, the "Parties") have agreed to mutually terminate the Master Services Agreement between Papa John's Marketing Fund, Inc. and Laundry Service dated January 1, 2018 (the "Agreement") and all related Statements of Work thereunder, including but not limited to Statement of Work No. 1 dated January 1, 2018, and further including any unexecuted Statements of Work or any Statements of Work upon which the Parties never reached a formal agreement.

In exchange for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

Papa John's shall pay Laundry Service the sum of (i) Two Million Three Hundred Thousand dollars ($2,300,000.00), and (ii) the full amounts set forth on the invoices identified on Exhibit 1 by wire or ACH transfer of immediately available funds to the bank account of Laundry Service on file with Papa John's no later than 5:00 PM PT on July 17, 2018. The Parties agree that these sums include all remaining fees and expenses incurred prior to execution of this Mutual Termination Letter.

1.    The Agreement and all related Statements of Work were terminated effective as of July 2, 2018 (the "Effective Date").

2.    Each of Papa John's, Wasserman's, and Laundry Service's officers, directors or members of a Management Committee, as applicable, shall not disparage or defame (a) the other Parties or their respective subsidiaries and affiliates, or their respective officers, directors, employees and owners, (b) the relationship between the Papa John's and any future advertising agency or sponsored brand, or the other Parties' performance under the Agreement in any media or other communications with third parties. No Party shall make any public statement about this Mutual Termination Letter or the termination of the Parties' business relationship without the express approval of the other Parties as to the substance, form, and timing of the statement, such approval not to be unreasonably withheld or delayed. Notwithstanding any of the foregoing, nothing shall prevent a Party from making truthful statements, which such Party is legally required to make according to the advice of its legal counsel.

Furthermore, in response to public comments made by John Schnatter on July 13, 2018, Papa John's hereby consents to Wasserman and Laundry Service making a public response substantially in the form of the following: "We contacted Papa John's immediately following our investigation into the statements made by Mr. Schnatter on the conference call in late May to voice our concerns and to discuss ending the engagement. We promptly reached a mutual agreement to separate."

603127128.1

Stein
Deposition Exhibit
40
Laura J. Kogut, RMR, CRR, CRC
05/07/2021

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT

Simultaneously, Papa John's shall cause its public relations representative to release the following statement: "We mutually agreed to part ways with our creative agency of record, Laundry Service. We appreciate the professionalism and commitment their team demonstrated throughout the engagement, and we wish them continued success in their future endeavors."

3.      In accordance with Paragraph 11.d.i. ("Effect of Termination"), certain provisions of the Agreement survive the termination of the Agreement.  For avoidance of doubt, the confidentiality provisions in Paragraph 4 of the Agreement survive termination, and all Parties shall abide by those terms with respect to Confidential Information (as defined in Paragraph 4 of the Agreement) obtained during the term of the Agreement, including without limitation Wasserman which hereby agrees to be bound by such Paragraph 4 and other surviving terms of the Agreement as though it were a party to such Agreement. The Parties further agree that the terms and existence of this Mutual Termination Letter are Confidential Information subject to the surviving confidentiality obligations in Paragraph 4 of the Agreement.

4.      Each of the Parties hereby acknowledges and agrees that except as set forth in the proviso below, the Parties' respective obligations under the Agreement have been performed and are deemed satisfied as of the Effective Date and each Party does and shall be deemed to have forever released and discharged the other Party and its respective subsidiaries and affiliates, owners, officers, directors, management committee members and employees (collectively, the "Indemnified Parties") from any and all past or present losses, claims, debts, liabilities, demands, obligations, promises, acts, omissions, agreements, costs, expenses, damages, injuries, suits, actions and causes of action, of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, arising from or related to the Agreement or any related Statement of Work or either Party's obligations under the Agreement or any related Statement of Work, that each such Party has or had or may claim to have or have had against any of the Indemnified Parties. *However*, the foregoing shall not, for clarity, relieve (i) any Party of its obligations under this Mutual Termination Letter, or (ii) any Party of its obligations under the Agreement which survive the termination thereof pursuant to Paragraph 3 above.

5.      The Parties and each of them do hereby agree that this Mutual Termination Letter shall apply to all unknown or unanticipated results of the transactions and occurrences described herein, as well as those known and anticipated, and upon advice of counsel, each Party does hereby knowingly waive any and all rights and protections under California Civil Code Section 1542, which section has been duly explained and read as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6.      Papa John's shall indemnify and hold harmless Laundry Service, Wasserman and their respective Indemnified Parties for the full value and to the full extent of any liability any such Indemnified Party incurs relating to a claim by a current or former employee, officer or director arising out of or related to services performed under the Agreement or any Statement of Work, and will indemnify Wasserman, Laundry Service and their respective Indemnified Parties for all reasonable attorneys' fees and costs incurred defending the claim.  No limitations of damages or liability of any kind shall apply to this indemnity obligation.

7.      The interpretation and enforcement of this Mutual Termination Letter will be governed by the terms set forth in Paragraphs 5.a. ("No Special Relationship"), 14.a. ("Notices"), and 14.f. ("Governing Law").  In the event of any inconsistency between this Mutual Termination Letter and surviving provisions of the Agreement, the provisions of this Mutual Termination Letter shall take precedence.

603127128.1

PJ00003121

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**DRAFT**

8.    Any unresolved dispute, claim or controversy arising out of or relating to this Mutual Termination Letter or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in New York, NY before one arbitrator.  The arbitration shall be conducted pursuant to the JAMS Comprehensive Arbitration Rules and Procedures.  Judgment on the award of the arbitrator may be entered in any court having jurisdiction.  If an arbitration action is pending on any claims between the parties, any claim which could be brought as a counterclaim must be brought in such pending action, if at all.  The fact of such arbitration proceedings, the proceedings, and the award are deemed to be Confidential Information.

9.    Papa John's, Wasserman, and Laundry Service each respectively represents and warrants that: (i) it has executed this Mutual Termination Letter freely, fully intending to be bound by the terms and provisions contained in this Mutual Termination Letter; (ii) it has full power and authority to execute, deliver and perform this Mutual Termination Letter; (iii) the person signing this Mutual Termination Letter on behalf of each respective party has properly been authorized and empowered to enter into this Mutual Termination Letter by and on its behalf; and (iv) this Mutual Termination Letter is a legal, valid and binding obligation of each respective Party and is enforceable against it in accordance with the terms contained in this Mutual Termination Letter.

Please indicate your acceptance of these terms by returning to me a countersigned copy of this letter.

Sincerely,


Papa John's Marketing Fund, Inc.
and Papa John's International, Inc.

AGREED AND ACCEPTED BY:
247 Group, LLC d/b/a Laundry Service


_____

_____

Steve Ritchie



Wasserman Media Group, LLC


_____

603127128.1

PJ00003122

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**DRAFT**

## EXHIBIT 1

### Invoices

| | | |
|---|---|---|
| 185760LS | Equity TVC Start-Up Costs (Production Estimate date 4/26/18) | $20,000.00 |
| 185675LS | Value Construct Licensed Footage Voiceover (Production Estimate date 4/23/18) - Talent usage fees & Production | $11,000.00 |
| 187089LS | 2018 Papa John's Founder Research (Estimate date 3/10/18) Focus Suites ($31,812.16) Travel & Expenses for PJ Mongell & Jurgen Lippert ($4,164.53) Facebook Media ($999.99) + Agency Fee 5% | $38,825.51 |
| 187280LS | 7.77 Broadcast, Digital and Radio (Production Estimate date 5/29/18) | $101,500.00 |
| 187281LS | 2L1T Endframe Change + Reship (Production Estimate date 5/29/18) | $9,800.00 |
| 187349LS | Agency Transition - File Transfer (Production Estimate date 6/20/18) | $6,400.00 |
| 187421LS | VC Russia Talent Rights (Production Estimate date 6/5/18) | $5,280.00 |
| 188217LS | Founder Research- Creative A/B test edit to 2M2T | $8,000.00 |
| 188304LS | 2L1T Social Updates (Production Estimate dated 6/28/2018) | $2,800.00 |
| 188305LS | MLB Double Play (Production Estimate dated 6/18/2018) | $19,500.00 |
| 188306LS | Garlic Sauce Activiation (Production Estimate dated 6/29/2018) | $188,500.00 |
| 188307LS | 2L1T Trafficking and Versioning Costs (Production Estimate dated 6/29/2018) | $10,600.00 |
| 188378LS | Sandwiches - Audio Re-Record (Production Estimate dated 06/05/2018) | $2,800.00 |
| 188468LS | Travel and Expenses for meetings and presentations | $90,000.00 |
| 188469LS | Q2 Talent and Storage Fees | $60,000.00 |

603127128.1