UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-3-BJB-CHL

**JOHN SCHNATTER,**                                                                       **Plaintiff,**

v.

**247 GROUP, LLC, et al.,**                                                   **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to quash (DN 202) filed by Non-Party Papa John's International, Inc. ("Papa John's"). Defendants 247 Group, LLC d/b/a Laundry Service ("Laundry Service") and Wasserman Media Group, LLC ("Wasserman Media") (collectively "Defendants") and Plaintiff John Schnatter ("Schnatter") filed responses (DNs 203 and 204), and the Company and Defendants filed replies (DNs 209 and 213). On September 3, 2022, Papa John's also filed a letter that this Court construed as a motion to supplement (DN 220) the motion to quash to which Defendants and Schnatter filed briefs in opposition (DNs 225 and 227). Therefore, this matter is ripe for review.

For the reasons set forth below, Non-Party Papa John's motion to quash (DN 202) is **DENIED**.

**I.    BACKGROUND**

Schnatter is the founder of Papa John's and served as its CEO and Chairman until 2018. (DN 1-1 at 12, 17.). On May 22, 2018, Schnatter participated in a call (the "May 22 Call") with Papa John's and Defendants, which at that time provided marketing services to Papa John's pursuant to a Master Services Agreement ("MSA") between Papa John's and Defendants. (*Id.* at 16; *See* DN 202-2.) Schnatter alleges that part of the scope of Services under the MSA was to help

Schnatter with his image. (DN 134 at 1627.) Additionally, Schnatter alleges that Defendants were subject to a Non-Disclosure Agreement ("NDA") executed before the May 22 Call that provided Defendants would not "convey, divulge, make available or communicate such information to any third party or assist other is in using, copying, duplicating, posting or disclosing any of the foregoing." (*Id.* at 1628; *see* DN 202-2 at 4103-06). During the May 22 Call, Schnatter made controversial comments regarding racial issues and uttered a racial slur. (DN 1-1 at 16.) Unbeknownst to Schnatter, the May 22 Call was recorded and subsequently disclosed to *Forbes Magazine*. (*Id.* at 16-17.) On July 11, 2018, *Forbes* published details about Schnatter's remarks on the call and, on the same day, Papa John's Chairman Agreement with Schnatter was terminated. (DN 111 at 1301-02; DN 187-1 at P3405.) Following these events, the Licensing Agreement concerning Papa John's use of Schnatter's name and likeness was also formally terminated on September 11, 2019. (DN 111 at 1302; DN 151-1 at 2617; DN 169-2 at 2834.) Defendants and Papa John's also terminated their contractual relationship shortly after the May 22 Call. (DN 119 at 1419.)

Schnatter filed suit against Defendants in state court on December 5, 2019, and the case was removed to this Court on January 2, 2020. (DN 1; DN 1-1.) Schnatter alleged claims for breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference, and prima facie tort. (DN 111 at 1302-06.) On September 21, 2022, this Court granted dismissed Schnatter's claims against Defendants except for Count III for breach of the NDA. (DN 219.)

Between October and November 2021, counsel for Defendants and counsel for Papa John's discussed Defendants' need to depose additional and former current Papa John's employees, officers, and directors. (DN 202-1 at 4186.) Counsel for Papa John's proposed that Defendants consider utilizing a Rule 30(b)(6) deposition from Papa John's to streamline discovery and address

Papa John's concerns about the number of potential depositions being contemplated. (*Id.*) Defendants agreed to use a Rule 30(b)(6) deposition to substantially reduce the number of depositions Defendants contemplated of Papa John's employees. (*Id.*) On December 7, 2021, Defendants provided Papa John's with a draft list of topics for a Rule 30(b)(6) deposition. (DN 202-2 at 3986.) From December 2021 to January 2022, Defendants and Papa John's negotiated Rule 30(b)(6) deposition topics. (*Id.*; DN 203-1 at 4187.) On January 27, 2022, Defendants and Papa John's reached an agreement regarding the topic list and Papa John's accepted service of the Defendants' Rule 30(b)(6) deposition subpoena ("Defendants' Subpoena"). (*Id.*)

From January 2022 to April 2022, Defendants and Papa John's were in frequent contact regarding the scheduling of the Rule 30(b)(6) deposition. During this time, Papa John's indicated it was working to locate and prepare a Rule 30(b)(6) witness accordingly. (*Id.* at 4188-89; DN 202-1 at 3978.) On March 3, 2022, Papa John's received a cross-notice from Schnatter for a Rule 30(b)(6) deposition. (DN 202-2 at 4108.) The cross-notice contained a deposition topics list that differed from Defendants' Subpoena. (*Id.*) On April 19, 2022, Papa John's requested Defendants withdraw the Subpoena, signaling that it would no longer cooperate in providing a Rule 30(b)(6) witness to Defendants. (*Id.* at 4114-15.)

In light of Papa John's refusal to cooperate further, Defendants requested the depositions of five individual fact witnesses that are current or former Papa John's employees: Caroline Oyler, Olivia Kirtley, Madeline Chadwick, Peter Collins, and Victoria Russell. (*Id.* at 3987.) Papa John's offered to produce two of the five, Caroline Oyler (General Counsel) and Olivia Kirtley (a sitting member of Papa John's Board of Director), and Defendants declined this proposal. (*Id.*) At the time, the Parties planned to depose Steve Ritchie (Papa John's former CEO) and were seeking to depose Sonya Medina (Papa John's then-member of the Board of Directors). (*Id.* at 4114.)

3

Additionally, Defendants had already deposed Steve Ritchie once before, Brandon Rhoten (Papa John's former Global Chief Marketing Officer) and Katie Wollrich (Papa John's former Vice President of Marketing & Advertising). (*Id.*) Papa John's expressed to Defendants in a letter dated April 19, 2022 that, in consideration of the depositions already completed or pending and the documents already provided, forcing Papa John's to "designate and educate yet another witness [was] wasteful." (*Id.* at 4115.) Papa John's filed a motion to quash Defendants' Subpoena on June 10, 2022.

## II.   ANALYSIS

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Rule 45 of the Federal Rules of Civil Procedure allows parties, *inter alia*, to command a nonparty to appear at a certain time and place to testify or produce documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Under Rule 45, the court must, upon timely motion, quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). "The party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Whether a subpoena imposes an "undue burden" depends on the facts of the case including the need for the documents or their relevance. *Kessler v. Palstar, Inc.*, 2011 Wl 4036689, *1 (S.D.Ohio 2011) (citing *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999)). In making this determination, the court must weigh the relevance of the requested material against the burden of producing the material. *E.E.O. C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir.1994). Non-party status is a significant factor to be weighed in the undue analysis burden. *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 09–50630, 2009 WL 2351769, at *1 (E.D.Mich. July 28, 2009).

Additionally, Rule 45(d)(3)(A) requires that a motion to quash a subpoena must be "timely" filed. Fed. R. Civ. P. 45(d)(3)(A). A motion made prior to the return date on the subpoena is timely. *Maysey v. Henkel Corp.,* 2018 WL 314859, at *2 (W.D. Ky. Jan. 5, 2018) (quoting *FTC v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012)). "However, in unusual circumstances and for good cause shown, failure to make a timely objection to a subpoena… will not bar consideration of the objection. *Trudeau,* WL 5463829, at *3 (quoting *Halawani v. Wolfenbarger*, 2008 WL 5188813, at *4 (E.D.Mich.Dec.10.2008)). In determining whether "unusual circumstances" or "good cause" exist, a court must examine whether: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for [affected person] and counsel for subpoenaing

party were in contact concerning the [affected person's] compliance prior to the time the [affected person] challenged legal basis for the subpoena." (*Id.*) (quoting *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y 1996)). If the producing party fails to show unusual circumstances and good cause, failure to timely object constitutes waiver. *Wolfenbarger*, 2008 WL 5188813, at *5.

Rule 30 of the Federal Rules of Civil Procedure governs the depositions of corporate representatives. Specifically, Rule 30(b)(6) reads as follows:

> (6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

The testimony of a Rule 30(b)(6) is different from that of a "mere corporate employee" because it represents the knowledge of the corporation, not the individual. *White v. Wal-Mart Stores E., L.P.*, 2018 WL 5083891, at *5 (W.D. Ky. Oct. 18, 2018) (citing *Schall v. Suzuki Motor of Am., Inc.*, 2017 WL 4050319, at *5 (W.D. Ky. Sep. 13, 2017). The Rule 30(b)(6) witness "does not give his own personal opinions but instead presents the corporation's position on the topic." (*Id.*) When a corporation is served with a notice of a Rule 30(b)(6) deposition, it is obligated to produce a witness or witnesses knowledgeable about the subject or subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation. (*Id.*) A Rule 30(b)(6) witness "must be educated and gain the

requested knowledge to the extent that it is reasonably available to the corporation" and, as such, "has a duty to reasonably obtain information from corporate documents, current or prior corporate employees, or any other sources reasonably available to the corporation." (*Id.*) Because Rule 30(b)(6) witnesses testify to corporate knowledge as opposed to personal knowledge, their testimony "bind[s] the entity that they are representing." *Penman v. Correct Care Solutions, LLC*, 2021 WL 3134255, at *3. According to the Advisory Committee Notes to Rule 30(b)(6), the rule was meant to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it" and to reduce the number of depositions "by a party uncertain of who in the organization has knowledge."

    a. **Timeliness**

The Court will first address with the threshold issue of timeliness. A motion to quash a subpoena generally must be made prior to the return date on the subpoena. *Maysey*, 2018 WL 314859 at *2. Defendants' Subpoena reflects a compliance date of February 23, 2022. (*Id.* at 4042.) Both Defendants and Papa John's confirm that the February 23, 2022 date was a "placeholder" until they could mutually agree on a more convenient date. (DN 203-1 at 4188-90; DN 209 at 4259.) A replacement for the "placeholder" date was never determined. (*Id.*) On April 19, 2022, fifty-five days after the Subpoena's compliance date, Papa John's communicated its objections to Defendants' Subpoena and repeated its concerns that the Subpoena was "unnecessary, duplicative and unduly burdensome" in light of Papa John's prior document production and the depositions of Mr. Rhoten, Mr. Ritchie, Ms. Wollrich, and Ms. Medina. (DN 202-2 at 4115.) Papa John's filed its motion to quash on June 10, 2022.

7

Here, Papa John's motion is unquestionably untimely. *Maysey*, 2018 WL 314859, at *1–2 (motion untimely when filed thirty-six days after subpoena compliance date); *Halawani*, 2008 WL 5188813, at *5 (written objection untimely when dated one day after the compliance date). Papa John's asserts that Subpoena's "placeholder" February 23, 2022 date should not be considered for timely compliance, though it does not offer a date that the Court should consider. (DN 209 at 4259-60.) Further, Papa John's asserts that any untimeliness on its part is excused by unusual circumstances and good faith. (*Id.*) The Court disagrees.

First, the Court does not find that Papa John's acted sufficiently when it objected to Defendants' Subpoena after accepting service. Between December 2021 and January 2022, Papa John's and Defendants communicated frequently to narrow the scope of Defendants' Subpoena. (DN 203-1 at 4186-87.) At the time, Papa John's was already aware that the Parties to this action intended to depose Mr. Rhoten, Mr. Ritchie and Ms. Wollrich. (DN 203 at 4165.) In fact, Mr. Rhoten and Ms. Wollrich were deposed before the Subpoena's compliance date of February 23, 2022. (DN 209-1 at 4272-73.) Defendants and Papa John's exchanged drafts of the Subpoena's topics that Papa John's reviewed, commented on, or struck entirely. (DN 202-2 at 4032-40 and 4050-55.) Once the revisions were complete, Papa John's offered to accept service of Defendants' Subpoena and indicated that it "does not currently intend to seek a protective order or move to quash if [Defendants] serve[] a Rule 30(b)(6) topic list consistent with the most recent draft." (DN 202-1 at 4042.) Defendants served a compliant Subpoena and Papa John's accepted, thus Defendants appropriately concluded that the scope of Defendants' Subpoena was no longer at issue.

Remaining at issue was the "placeholder" compliance date. Papa John's requested additional time to identify a Rule 30(b)(6) designee prior to confirming a mutually convenient

8

deposition date. (DN 203-1 at 4187.) Defendants accommodated Papa John's request well past the initial February 23, 2022 deposition date and into April 2022. (*Id.* at 4188-89.) At no point during this time did Papa John's indicate that it was concerned with the scope of Defendants' Subpoena after accepting service. Papa John's contends its refusal to honor Defendants' Subpoena was justified by "intervening events" and circumstances it did not know at the time it accepted service. (DN 209 at 4260.) Papa John's asserts that Defendants' Subpoena and the accompanying negotiation efforts were essentially rendered forfeit when Papa John's became aware of Schnatter's cross-notice for a Rule 30(b)(6) deposition, Schnatter's plan to depose Ms. Medina, and Mr. Ritchie's agreement to testify fully. (*Id.*) This argument is meritless.

The Court does not find that Papa John's properly communicated its objections over the scope of the Subpoena to Defendants. Though Papa John's did initially communicate its concerns regarding the Subpoena's scope during negotiations, those concerns were rendered moot when Papa John's ultimately approved the Subpoena's contents and wrote to Defendants as such on January 27, 2022. Thus, Defendants appropriately relied on Papa John's acceptance of Defendants' Subpoena as conveying that Papa John's no longer took issue with the Subpoena's scope as being burdensome or duplicative. After Papa John's accepted the Subpoena, the only compliance issue discussed between Defendants and Papa John's was Papa John's difficulty in identifying a Rule 30(b)(6) designee, not the scope of the Subpoena.

Papa John's did not communicate any further objection to the Subpoena's scope until the April 19, 2022 letter. There, Papa John's objected to Defendants' Subpoena due to depositions it knew about or depositions and actions stemming from Schnatter's decision to serve a cross-notice. However, Schnatter's actions have no bearing on the issue of Papa John's compliance with Defendants' Subpoena and Papa John's fails to demonstrate how the two might be linked. Papa

9

John's argues that its agreement to accept service of Defendants' Subpoena "was not a representation … that it was waiving objections as to the scope of the notice." (*Id.*) But it failed to clarify as much in negotiating the scope of Defendant's Subpoena. Papa John's was afforded ample opportunity to take issue with the scope of Defendants' Subpoena *before* it accepted service and any subsequent objection must be seen as disingenuous absent any changes made without Papa John's knowledge or without intervening action *by Defendants*.

Papa John's subsequent offer to provide Defendants with two additional fact witnesses in lieu of a Rule 30(b)(6) witness did not address the core issue, *i.e.*, Papa John's unwillingness to renegotiate the scope of Defendants' Subpoena, arising largely from circumstances out of Defendants' control, and honor its agreement to provide a Rule 30(b)(6) witness.

Lastly, and as discussed more fully below, Papa John's has not demonstrated that Defendants' Subpoena is overbroad on its face or that it exceeds the bounds of fair discovery. Papa John's repeatedly refers to Schnatter's cross-notice to further its argument that Defendants' Subpoena is overbroad by way of being duplicative and/or cumulative and unduly burdensome. However, Schnatter's cross-notice has no bearing on whether *Defendants'* Subpoena is overbroad and Papa John's participation in negotiating the topics of Defendants' Subpoena negates its claim that the topics, which it approved, are now duplicative and/or cumulative or pose an undue burden.

### b. Duplicate and/or Cumulative Discovery

Papa John's asserts that Defendants' subpoena for a Rule 30(b)(6) witness is duplicative and/or cumulative of Papa John's production of documents and the depositions of four current or former Papa John's representatives that have been taken. (DN 202-1 at 3980-81; DN 220 at 4359.) Specifically, Papa John's refers to the depositions of Mr. Ritchie, Mr. Rhoten, Ms. Wollrich, Ms. Medina and Schnatter. (*Id.*) Papa John's contends that the depositions contain all of the

10

information relevant to the topics requested in the Rule 30(b)(6) subpoena. (*Id.*) The Court disagrees and does not find that Defendants' Subpoena is unreasonably duplicative or cumulative such that the Court must limit the discovery it requests.

First, as Defendants properly contend, Papa John's argument ignores the purpose of a Rule 30(b)(6) deposition as outlined in Part II. Prior deposition testimony from individual fact witnesses does not ordinarily relieve a corporation from designating a Rule 30(b)(6) witness because of two key differences between them: Rule 30(b)(6) witnesses bind the entity they are representing and are responsible for providing all information known or reasonably available to the entity. *White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019). The four depositions illustrate that difference and the problem of 'bandying' that Rule 30(b)(6) seeks to avoid. The Court will again note that Schnatter gave notice of Ms. Medina's deposition, not Defendants, and Defendants are entitled to discovery as a separate matter unrelated to Schnatter's strategic decisions.

At the time Papa John's requested Defendants to withdraw their Rule 30(b)(6) subpoena on April 19, 2022, the second deposition of Mr. Ritchie had not been taken. (*See* DN 203-1; DN 209-1 at 4272-4273.) When Papa John's filed its motion to quash on June 10, 2022, Ms. Medina's depositions had also not been taken. (DN 202-1 at 3980.) Nevertheless, Papa John's asserted in its withdrawal letter and in its motion that the depositions would cover "all of the information" relevant to the topics in Defendant's Subpoena and repeated the same after the depositions took place. (*Id.*; DN 220 at 4359.) This was not the case. On reviewing portions of the deposition transcripts, the testimony when read together clearly demonstrates 'bandying'— when a corporation's agents are deposed in turn, but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.

11

For example, Papa John's states that there are "many topics" in Defendants' Subpoena relating to the May 22 Call that deponents cover and are knowledgeable about because they were either present on the call or participated in decisions and communications that took place after the call and subsequent news coverage. (DN 202-1 at 3980-81.) As Papa John's describes it, the May 22 Call is at the "heart of this Action." (*Id.*) The circumstances surrounding the May 22 Call remain highly relevant to Schnatter's remaining Breach of NDA claim against Defendants because the Parties are in dispute about whether employees of Defendants or Papa John's were responsible for the call being leaked to *Forbes* that caused Schnatter to suffer damages. (DN 203 at 4164.) Nevertheless, despite Papa John's reassurances, gaps in corporate knowledge persist throughout the depositions.

Ms. Medina, as a sitting Papa John's board member and due to the limitations of that role, could not speak to whether others at Papa John's were informed of May 22 Call prior to the publication of the *Forbes* article. (DN 227-1 at 4462-4464.) Papa John's predicted there would be no gaps in her knowledge, but it could not foresee as much unless it prepared and educated her on those topics. Similarly, discovery established that Mr. Rhoten was terminated in early May 2018 and thus lacked knowledge about the events surrounding the May 22 Call. (DN 203 at 4175.) Ms. Wollrich left Papa John's soon thereafter in July 2018. (*Id.*) Mr. Ritchie, Papa John's former CEO, recalled that he informed Papa John's employees Madeline Chadwick and Olivia Kirtley (who are among the five depositions Defendants seek in lieu of a Rule 30(b)(6) witness) about the call but did not know whether Chadwick or Kirtley discussed the May 22 Call with others at Papa John's. (DN 203-1 at 4223-4225.) Thus, it remains unclear to Defendants who at Papa John's was informed about the May 22 Call and what actions Papa John's took as an entity afterwards. It is clear, however, that the deponents lacked knowledge on relevant topics in Defendants' Subpoena

and, by extension, Schnatter's claims against Defendants. At least two deponents, Mr. Ritchie and Ms. Wollrich, insisted that others at Papa John's were more knowledgeable than them about relevant information. (*Id.* at 4213-14, 4223-25.)

Further, the discovery Defendants seek cannot be obtained from another "more convenient, less burdensome or less expensive" source. Papa John's is uniquely situated with knowledge highly relevant to the issues in this case. The core facts of this case rest on the conduct of Papa John's former CEO and Chairman before his separation from Papa John's and services Defendants provided to Papa John's before, during and after the conduct at issue. As the deponent's testimony illustrates, a properly educated and prepared Rule 30(b)(6) witness is better positioned to provide the relevant information available to Papa John's as opposed to numerous fact witnesses – three of whom are former employees – that disclaim knowledge clearly known to Papa John's. Further, additional depositions are not likely to be more convenient, less burdensome, or less expensive as both Papa John's and Defendants acknowledge that the number of depositions taken may exceed two or more. A Rule 30(b)(6) witness would not be duplicative or cumulative of fact witnesses due to the difference in purpose of each deposition, the education and preparation that a Rule 30(b)(6) deposition entails, and that there are gaps in knowledge between the deponents to date that a Rule 30(b)(6) witness is more likely resolve.

c. **Undue Burden**

Papa John's argues that the burden of complying with the Rule 30(b)(6) deposition outweighs any benefit due Papa John's status as a nonparty, Papa John's difficulty in securing a Rule 30(b)(6) witness, and the "unreasonable" cost and time necessary to properly educate a Rule 30(b)(6) witness. (DN 202-1 at 3980-82.) Papa John's also asserts that Schnatter's strategic

13

decisions increased the burden on Papa John's that substantially outweighs its costs. (DN 209 at 4267.) The Court disagrees.

First, it was Papa John's that initially proposed a Rule 30(b)(6) deposition to Defendants as a means to streamline discovery and address its concerns about the number of potential depositions being contemplated. (DN 203-1 at 4186.) Defendants also expressed that they viewed the agreed-upon Rule 30(b)(6) witness as "the most efficient and least burdensome avenue available to secure the requested testimony." (*Id.* at 4202.) Papa John's willingness to then negotiate the scope of a Rule 30(b)(6) further demonstrates that Papa John's did not initially find that a Rule 30(b)(6) deposition, including the cost and time necessary to properly educating a Rule 30(b)(6) witness, was unduly burdensome. Any topic that Papa John's might have found burdensome or overbroad, it edited or struck to avoid that burden. Nevertheless, Papa John's asserts that a change in circumstances increased the burden on Papa John's such that the scales now weighed against a Rule 30(b)(6) witness. As the Court previously discussed, this change in circumstances as they relate to Schnatter's strategic decisions have no bearing on the analysis concerning Defendants' Subpoena. For example, Papa John's cannot reference Schnatter's cross-notice as "broaden[ing] all the subjects that [Papa John's] had tried to narrow with Defendants as being relevant in any way relevant to Defendant's Subpoena, which contains only the agreed-upon and narrowed topics approved by Papa John's.

Papa John's also indicates that the cost of preparing and educating a Rule 30(b)(6) witness, when added to the cost it has already incurred in this litigation, increases its burden enough to substantially outweigh any benefit of a Rule 30(b)(6). Interestingly, Papa John's was willing to offer two additional fact witnesses to Defendants as a compromise to not providing a Rule 30(b)(6) witness. (DN 202-2 at 3987.) Papa John's fails to show how a Rule 30(b)(6) would be

14

substantially more burdensome than the two fact witness depositions it did offer other than to point to the education of a Rule 30(b)(6) witness.

Next, Papa John's cites to the costs it will incur if forced to provide the five additional depositions Defendant seeks in lieu of a Rule 30(b)(6) witness. Rule 30(b)(6) is designed to prevent this exact issue and offers a path to reduce the number of depositions sought by a party such as Defendants that is uncertain of who in the organization has knowledge. This argument does not have merit as a single adequately prepared Rule 30(b)(6) would seemingly obviate Defendants' need for the additional depositions and it was Papa John's that opted not to provide that Rule 30(b)(6) witness. Lastly, the Federal Rules of Civil Procedure do not obligate Papa John's to designate a *willing* witness. Rule 30(b)(6) contemplates that "the name organization must then designate one or more officers, directors, or managing agents, *or* designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6) (emphasis added). Further, corporations have a "clear duty to make a good faith, conscientious effort to designate appropriate persons" and prepare them accordingly. *Pogue v. Northwestern Mutual Life Co.,* 2017 WL 3044763, at *8. Papa John's has offered witnesses in lieu of a Rule 30(b)(6) – Olivia Kirtley (a current Papa John's board member) and Caroline Oyler (Papa John's General Counsel) – that could serve as the corporate designee pursuant to Rule 30(b)(6), and so the Court is not persuaded that Papa John's is genuinely unable to designate such a witness.

Second, the Court when weighing the relevance of the Rule 30(b)(6) deposition against Papa John's burden of producing the Rule 30(b)(6) witness does not find that Papa John's status as a non-party substantially factors in outweighing the benefit of the discovery to Defendants. Papa John's is uniquely situated as it is a non-party to the civil action but a party to the agreements at issue in the action. While the equity of Papa John's bearing the burden of the actions of its

15

former executive may be fairly debatable, that does not alter the fact that the subpoena at issue was served by Defendants, not Schnatter.

Next, Papa John's asserts that this Court's dismissal of Schnatter's four out of five claims renders "well over half" of the 31 topics in Defendants' Subpoena as irrelevant. (DN 220 at 4359; *see* DNs 219 and 119.) However, Papa John's identifies only six "irrelevant topics" and fails to articulate a basis for its objections to the topics. (*Id.*) Moreover, Schnatter's remaining claim for Breach of NDA, Count III, survived Defendants' motion to dismiss. Under Count III, Schnatter is seeking damages from Defendants' alleged leak of confidential information to *Forbes* in violation of the NDA, including damages for Papa John's termination of its agreements with Schnatter as a result of the leak. (DN 225 at 4438-39.) Defendants' Rule 30(b)(6) deposition is thus highly relevant to Count III as Defendants must be able to obtain discovery concerning Papa John's *corporate* knowledge that Papa John's is uniquely situated to provide. As discussed in Parts II a. and II b., a Rule 30(b)(6) witness differs in purpose from a fact witness.

Accordingly, the Court does not find that the Papa John's has met its burden to show that it is unduly burdened by Defendants' Subpoena.

## III.  ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows that Non-Party Papa John's motion to quash (DN 202) is **DENIED**.[1]

*Colin H Lindsay, Magistrate Judge*
*United States District Court*

December 22, 2022

cc:  Counsel of record

---

[1] While Papa John's prompted this Court to consider directing any Rule 30(b)(6) deposition be on written questions and that Papa John's be entitled to attorneys' fees and expenses stemming from such a deposition, it did not advance any substantive argument for the Court's consideration. On the basis of this mere perfunctory request, the Court declines to devote any further analysis.  Additionally, Papa John's requests this Court to quash "any subpoena" but the Court is only aware of the Defendants' Subpoena as pending at this time.