UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:20-CV-00003-BJB-CHL

JOHN H. SCHNATTER,                                                    Plaintiff,

v.

 247 GROUP, LLC, et al.,                                           Defendants.

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court is the Motion to Compel filed by Defendants 247 Group, LLC ("Laundry Service") and Wasserman Media Group, LLC ("Wasserman").  (DNs 259, 260.)  Plaintiff John H. Schnatter filed a response (DN 262, 264), to which Defendants filed a reply (DN 266, 267).  Also before the Court are various motions to seal Defendants' Motion, the response and reply, Defendants' Motion for Summary Judgment, the response, and the reply.  (DNs 245, 253, 258, 263, 265.)  The motions are ripe for review.

 For the reasons stated below, Defendants' Motion to Compel is **GRANTED**; Defendants' and Schnatter's motions to seal are **DENIED**.

I.      **BACKGROUND**

 Schnatter is the founder of Papa John's International ("Papa John's") and served as its CEO and Chairman until 2018.  (DN 1-1 at PageID # 12, 17.)  On May 22, 2018, Schnatter participated in a call with Laundry Service, which provided marketing services to Papa John's. (*Id.* at 16.)  During the call, Schnatter made controversial comments about racial issues and uttered a racial slur.  (*Id.*)  Unbeknownst to Schnatter, that call was recorded, and the audio was subsequently disclosed to *Forbes* magazine.  (*Id.* at 16-17.)  On July 11, 2018, *Forbes* published details about the call, and Schnatter resigned as Chairman of Papa John's the same day.  (*Id.* at

17.)  On July 13, 2018, the University of Louisville ("UofL") announced that it would rename its football stadium, then Papa John's Cardinal Stadium, to end its affiliation with the business; Schnatter's naming rights contract with UofL was formally terminated on October 24, 2019.  (DN 106-1 at 1273.)  On July 15, 2018, his Founder's Agreement with Papa John's was also terminated.  (*Id.* at 1265.)  Schnatter filed suit against Defendants in state court on December 5, 2019, and the case was removed to this Court on January 2, 2020.  (DN 1; DN 1-1.)  Schnatter's claims arise from the Defendants' alleged disclosure to *Forbes*.  (DN 1-1.)

Defendants deposed various Papa John's executives.  Steve Ritchie, the former CEO of Papa John's, testified that he suspected Schnatter of abusing alcohol no later than at the beginning of 2017.  (DN 247-5 at 5588.)  Ritchie testified that Schnatter's alcohol use had impacted his work performance and described instances where Schnatter came to work intoxicated, performed work functions such as business calls while intoxicated, attempted to conceal his intoxication at work, and experienced changes in temperament indicative of alcohol abuse.  (*Id.* at 5588-89, 5591-92, 5594-95.)  Ritchie also testified that he approved an intervention by then-Board member Wayne Kent Taylor to rescue Schnatter and bring Schnatter to a rehabilitation center in Pennsylvania.  (*Id.* at 5593-94.)  According to Ritchie, Schnatter received treatment for alcohol abuse at a hospital and a rehabilitation center in Pennsylvania but did not complete his treatment.  (*Id.* at 5596-97.)  Papa John's marketing executives were informed of Schnatter's treatment and tasked with monitoring media coverage regarding Schnatter's admission to a treatment facility.  (DN 259 at 7981; *see* DN 247-6 at 5759-61, 6317-21.)

On June 29, 2021, Defendants served Schnatter with requests for production and for admissions relating to Schnatter's alleged substance use and substance use treatment while

Chairman and/or CEO of Papa John's.  (*See* DNs 259-3, 259-4.)  Defendants' Request for

Production Nos. 53-58, 61 and 64 sought the production of:

> (53) All Documents and Communications, including text messages, with Wayne Kent Taylor related to Your use of, abuse of, and/or addiction to alcohol.

> (54) All Documents and Communications, including text messages, with Wayne Kent Taylor related to Your attendance at an in-patient, out-patient, rehabilitation center, and/or medical clinic for the treatment of Your abuse of and/or addiction to alcohol.

> (55) All Documents and Communications related to an alcohol intervention organized for You by any Person, including Wayne Kent Taylor, that took place in Naples, Florida.

> (56) All Documents, including invoices, related to Your attendance at a hospital, in-patient, outpatient, rehabilitation center, clinic, and/or other type of medical facility in or near Wernersville, Pennsylvania.

> (57) All Documents related to Your treatment in the Intensive Care Unit of a hospital, in-patient, out-patient, rehabilitation center, clinic, and/or other type of medical facility in or near Wernersville, Pennsylvania.

> (58) All Documents and Communications related to any time that you attended and/or called into a meeting of the Papa John's Board of Directors while intoxicated with alcohol.

> (61) Documents sufficient to show any medical treatment You received for abuse of and/or addiction to alcohol, prescription drugs, and/or illicit drugs from 2010 to the present.

> (64) All Documents and Communications with Papa John's relating to any disciplinary action, formal or informal, against You related to Your use, misuse, and/or abuse of alcohol, prescription drugs and/or illicit drugs from 2010 to the present.

(DN 259-3 at 8017-18.)  Schnatter served his objections to the foregoing on July 14, 2021.  (*See*

DNs 259-5, 259-6.)  On March 16, 2023, Schnatter testified on the topics of substance use and

substance use treatment.  (*See* DN 246-3 at 5013-19.)  Schnatter testified that he had not abused

alcohol during his tenure as CEO of Papa John's, which spanned approximately thirty years.  (*Id.*

at 5014.)  Schnatter denied that he received treatment for alcohol abuse in Pennsylvania, although

he discussed having visited a facility in Pennsylvania during the relevant period to seek treatment for Taylor.  (*Id.* at 5014-17.)  Schnatter testified that he did not recall discussing alcohol with board members or alcohol being an issue with work.  (*Id.* at 5018.)

In response to Schnatter's testimony, Defendants served Schnatter with Requests for Production 71 and 72 on March 24, 2023, seeking the production of:

> (71) All Documents and Communications related to Your attendance at a hospital, in-patient, outpatient, rehabilitation center, clinic, and/or other type of medical facility related to your use of, abuse of, and/or addiction to alcohol or any other drug. Such Documents and Communications should include, but are not limited to, invoices, medical records, and travel and lodging documentation (such as tickets, plane manifests, or reservations).
>
> (72)  All Documents and Communications related to Your claim during Your deposition that You took Kent Taylor to a hospital, in-patient, outpatient, rehabilitation center, clinic, and/or other type of medical facility for alcohol and/or substance abuse treatment in Pennsylvania but You did not enter or receive treatment for alcohol and/or substance abuse Yourself.  *See* March 16, 2023 Deposition Rough Transcript of John Schnatter 123:3-128:7. Such Documents and Communications should include, but are not limited to invoices, medical records, and travel and lodging documentation (such as tickets, plane, manifests or reservations).

 (*See* DN 259-7.)  On April 17, 2023, Defendants served Schnatter with a notice of intent to subpoena Caron Treatment Center in Wernersville, Pennsylvania ("Caron") to determine whether Schnatter accompanied Taylor to Caron as a guest as claimed.  (*See* DN 259-8.)  On April 18, 2023, after the subpoena was served on Caron, Caron faxed a letter in response to Defendants with a consent form attached for Schnatter's execution.  (DN 246-3 at 5427-28.)

The next day on April 19, 2023, Defendants deposed Schnatter again about his alleged alcohol abuse and treatment.  (*See* DN 246-3.)  Schnatter testified that he had not received rehabilitation or treatment at Caron.  (*Id.* at 5425-27.)  During the deposition, counsel for Defendants presented Schnatter with Caron's "subpoena response letter," marked as Exhibit 754, and requested that Schnatter execute the form.  (DN 246-3 at 5427.)  Schnatter refused to provide

his consent and responded with objections on April 28, 2023.  (DN 259 at 7985; *see also* DN 259-7.)

Schnatter's objections to Request for Production Nos. 53-58, 61, 64, 71, and 72 are identical and stated as follows:

> Objection. This Request is solely designed to harass, oppress, and intimidate Plaintiff, as well as cause unreasonable annoyance, embarrassment, and burden to Plaintiff. Further, this request is not reasonably calculated to lead to the discovery of any nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case.

(DN 259-5 at 8030-34.)

On May 4, 2023, Defendants sent Schnatter a letter detailing deficiencies in his response to Defendants' requests for production and admissions.  (*See* DN 259-11.)  On May 11, 2023, the Parties met and conferred but were unable to reach a resolution.  (DN 259 at 7985.)  On May 19, 2023, the Court ordered briefing on the matter and Defendants subsequently filed the instant Motion.  (*See* DN 250.)

## II.    LEGAL STANDARD

### a.  Relevance and Scope of Discovery

Fed. R. Civ. P. 26(b) governs the scope of discovery.  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Discovery responses therefore must be "complete and correct."  Fed. R. Civ. P. 26(g)(1)(A).  Answers to requests for admission must admit the request, "specifically deny" the request, "detail why the answering party

cannot truthfully admit or deny," or object on "stated" grounds. Fed. R. Civ. P. 36(a)(4)-(5). Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(6).  Upon a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

When an objection to relevance is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action.  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). Otherwise, a party resisting discovery bears "the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007).  *See also Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014).  However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

"If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

### b.  Protection of Substance Use Treatment Records

42 U.S.C. § 290dd-2(a) provides,

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

42 U.S.C. § 290dd-2(a).  The Sixth Circuit has explained that the confidentiality of such records was essential to Congress's attempts to "coordinate federal drug abuse prevention efforts" and that confidentiality was necessary to prevent "individuals in need of drug abuse treatment [from] be[ing] dissuaded from seeking help." *Ellison v. Cocke Cnty.*, 63 F.3d 467, 470-71 (6th Cir. 1995) (citing H.R. Rep. No. 92-775 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2045, 2045 and H.R. Conf. Rep. No. 92–920 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2062, 2072).  Section 290dd-2(f) establishes penalties for violations of the confidentiality and other requirements of the statute.  42 U.S.C. § 290dd-2(f).

Disclosure of substance use treatment records may only be made under specified conditions such as where the patient has consented to the disclosure pursuant to 42 U.S.C. § 290dd-2(b)(1) or where "authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor" pursuant to 42 U.S.C. § 290dd-2(b)(2)(C).  42 U.S.C. § 290dd-2(b)(1)-(2).  The statute provides that in determining whether good cause exists, "the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services."  42 U.S.C. § 290dd-2(b)(2)(C).

Pursuant to the grant of authority in 42 U.S.C. § 290dd-2(g), the Secretary of the Department of Health and Human Services has prescribed regulations implementing the statutory disclosure provisions.  42. C.F.R. §§ 2.1-2.67 (2020).  In any proceeding where an order seeking disclosure for noncriminal purposes is sought, the party seeking the records must file an application and provide notice to both the patient and the record holder.  42 C.F.R. § 2.64(a)-(b).  The patient

and the record holder must be given "[a]n opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order." *Id.* at § 2.64(b)(2). Generally, any hearing on the application, "must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record." *Id.* at § 2.64(c). The court may review the records sought in the application as part reviewing any application for disclosure. *Id.*

Prior to issuing an order for disclosure, the court must determine whether the good cause requirement in 42 U.S.C. § 290dd-2(b)(2)(C) is satisfied. As set forth in the applicable regulations:

> (d) Criteria for entry of order. An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
>
> > (1)    Other ways of obtaining the information are not available or would not be effective; and
> >
> > (2)    The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d). Additionally, the regulations impose additional criteria that must be satisfied before a court may order disclosure of the patient's "confidential communications" made to program staff:

> (a) A court order under the regulations in this part may authorize disclosure of confidential communications made by a patient to a part 2 program in the course of diagnosis, treatment, or referral for treatment only if:
>
> > (1)    The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;
> >
> > (2)    The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including

homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

(3)     The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63(a). Thus, if the records sought by the applicant contain confidential communications, an applicant must both show good cause for disclosure of the overall records pursuant to 42 U.S.C. § 290dd-2(b)(2)(C) and 42 C.F.R. § 2.64(d), as well as make the showing required by 42 C.F.R. § 2.63(a).

Where disclosure is ordered, the court must "impose appropriate safeguards against unauthorized disclosure." 42 U.S.C. § 290dd-2(b)(2)(C). Specifically, the court must:

(1)     Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order;

(2)     Limit disclosure to those persons whose need for information is the basis for the order; and

(3)     Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered.

42 C.F.R. § 2.64(e).

## III.    DISCUSSION

Defendants have narrowed their discovery request for the purposes of this Motion to "communications and records that would verify Schnatter's alcohol abuse issues and treatment during the relevant time period, including the period Ritchie testified about at his deposition, *i.e.*, early 2017 to July 2018." (DN 259 at 7986.) Defendants note that Schnatter's production of responsive documents should include records maintained by Caron. (*Id.*) In the reply, Defendants propose that Schnatter produce:

1. Documents and communications sufficient to show Schnatter was abusing alcohol—during a crucial time period in this case—in a manner that impaired his work performance and created reputational and marketing risks for Schnatter and [Papa John's].

2. Documents and communications sufficient to show Schnatter was abusing alcohol so severely that Ritchie approved an intervention by then-Board member Kent Taylor to rescue Schnatter and bring Schnatter to a rehabilitation center in Pennsylvania.

(DN 266 at 8312.)  The Court will address the categories of requests separately as to relevance and the applicability of the abovementioned regulations.  The first category mirrors Requests for Production Nos. 53, 55, 58, and 64, and Request for Admissions No. 20, in that they pertain Schnatter's alleged alcohol abuse.  Because the remaining discovery—Request for Production Nos. 54, 56, 57 and 61 and Request for Admissions No. 19—expressly reference substance use treatment or providers of substance use treatment, the Court will address them separately below.

And as will be set forth more fully below, the Court will grant to the motion to compel because Schnatter cannot rely on both the shield of protection for substance abuse treatment protection records and the sword of insisting that he never received such treatment in the first place.

### a. Documents and Communications Sufficient to Show Alcohol Abuse

Defendants argue that the first category of production is relevant to (1) their defense of Schnatter's claim for reputational damages, (2) their defense of Schnatter's claim for damages based on his expected "lifetime" earnings from Papa John's, (3) the critical events in this case, and (4) the veracity of Schnatter's testimony.  (DN 259 at 7989-91.)  First, Defendants argue that Schnatter's alleged alcohol abuse and related misconduct "impact[ed] both his reputation and the Papa John's brand." (DN 266 at 8318.)  Defendants assert that Schnatter's misconduct "implicates assessments about his marketability," and that information about his reputation, including public

relations risks caused by his misconduct, bears directly on "whether any reputational damages are even feasible." (*Id.* at 8310.)   Second, Defendants argues that the requested information "bears directly on whether Schnatter's expectation of 'lifetime' earnings from Papa John's is reasonable, or whether his [alleged] alcohol abuse would have negatively impacted his expected future earnings[.]" (DN 259 at 7990.)   Third, Defendants assert that the discovery is relevant to whether Schnatter's misconduct motivated Papa John's "insiders" to share damaging information about Schnatter to *Forbes*, which challenges the claim that Defendants were the cause of Schnatter's harm.  (DN 266 at 8319.)   Defendants note that they are entitled to develop facts showing that Papa John's employees leaked the damaging information to *Forbes* because "they were tired of dealing with his problems." (*Id.* at 8311.)   Lastly, Defendants argue that the requested discovery is necessary to weigh the credibility of Schnatter's testimony against the credibility of fact witnesses who testified in direct conflict on the subject of Schnatter's alleged alcohol abuse and misconduct.

In response, Schnatter argues that Defendants failed to establish that "suspicions" of Schnatter's alleged alcohol abuse were "even a contributing factor to, let alone the cause of, the determination to terminate [Schnatter's] agreements with Papa John's."  (DN 264 at 8275.) Schnatter asserts that the factual record does not support Defendants' contentions as "not a single witness has testified that the termination of [Schnatter]'s agreements were [sic] the result of anything but the *Forbes* article." (*Id.* at 8270.)   Schnatter points to the testimony of Papa John's corporate representative, who stated that there were no discussions to terminate Schnatter's agreements and relationships with Papa John's until the publishing of the *Forbes* article, as well as to the deposition testimony of Steve Ritchie and Sonya Medina supporting the same.  (*Id.* at 8270-71, 8275.)   Schnatter asserts that his reelection to the Board by shareholders and as Chairman

by the Board members four months before the *Forbes* article supports that the article, not Schnatter's alcohol use, resulted in his termination.  (*Id.* at 8271; *see also* DNs 246-1, 252-7 and 264-1.)  Schnatter further asserts that because Schnatter's alleged alcohol abuse was not known to the community, Defendants cannot establish that "the alleged records themselves would actually be relevant to mitigate or counter [Schnatter]'s decisions."  (*Id.* at 8277.)  Schnatter describes the discovery requests as "attempts at character assassination" and as being the product of Defendants "[seek]ing to harass and embarrass Schnatter, by exploiting innuendo and uncorroborated, anecdotal claims, further attempting to cause harm to him as their clients did in leaking a false narrative to the press."  (*Id.* at 8271.)

    This Court has now twice ordered Schnatter to produce documents that shed light on Schnatter's reputation both before and after the publication of the *Forbes* article.  (*See* DNs 155, 161.)  "It is well-settled in Kentucky that where damages are sought for injuries to reputation, evidence of the plaintiff's bad reputation may be shown in mitigation of damages."  *Daugherty v. Kuhn's Big K Store*, 663 S.W.2d 748, 750 (Ky. Ct. App. 1983) (citing *Louisville & N.R. Co. v. Owens*, 164 Ky. 557, 175 S.W. 1039 (1915).  *See Eastland v. Caldwell*, 5 Ky. (2 Bibb) 21, at 24 (1810) ("In the estimation of damages, the jury must take into consideration the general character of the plaintiff and his standing in society . . . .") (emphasis in original).  The Court finds that the discovery is relevant to Schnatter's claims for damages.  The existence of the alleged alcohol use, the misconduct that stemmed from the alleged use, the extent and nature of the misconduct, which is inextricably linked to the degree of use, and the public knowledge of it all bear on Schnatter's reputation and thus on his relationship with Papa John's.  The Court is unpersuaded by the assertion that Schnatter's alleged alcohol abuse was not known to the community.  *See Louisville Times Co. v. Emrich*, 252 Ky. 210, 66 S.W.2d 73 (1934) (Reputation "is established by the testimony of those

who are familiar with and know the people among whom the one whose reputation is assailed associates.")  Schnatter's alleged alcohol abuse could not be unknown by those associating with him given the allegations of his frequent intoxication at the workplace.  Likewise, the Court is unpersuaded that the reputational harm did not extend to the greater community.  Schnatter's intoxication at a sporting event was not merely mentioned in the public sphere, it was the headline of a 2013 article by the Bleacher Report with the notable opening statement: "Go home, Papa John. You're drunk."  (DN 259-2 at 8009.)  Schnatter's downplay of this article is a mischaracterization of its substance.  While it does not diagnose him with a medical disorder, the subject of this article is undeniably the degree of Schnatter's public intoxication.  (*Id*.)  The cause for his intoxication—his celebration of the Louisville Cardinals—is merely context.  (*Id*.)

Schnatter also asserts that Defendants failed to establish that the perception of alcohol abuse reduces the value of celebrity endorsement, citing Brad Pitt and Robert Downey, Jr. among the celebrities whose value has not decreased despite allegations of substance use.  (DN 264 at 8278.)  Schnatter concedes, however, that a social stigma does exist because it is the same stigma he is hoping to avoid in this production.  Defendants need not establish such a link because there is nothing in the record to suggest that what is true for Pitt and Downey—prominent actors with worldwide reputations—is necessarily true for Schnatter.  The discovery is relevant to whether substance use reduced the value of *Schnatter's* celebrity endorsement as the face of Papa John's and whether it motivated *Papa John's* to separate with him due to perceived risk of reduction in value, not whether so-called "A-list" actors can earn endorsement income in light of allegations of alcohol or drug use.  The direct causal link between Schnatter's alleged misconduct and his termination may yet come to fruition as a result of this production as direct causal connections are often the outcome of the discovery process.

For reasons explained more fully below, the Court finds that the production is not protected from disclosure pursuant to 42 U.S.C. § 290dd-2. To the extent that Schnatter believes this production implicates "confidential communications" within the scope of 42 U.S.C. § 290dd-2, that is also addressed below. The requested discovery at issue in this section does not relate to substance use *treatment*; it is limited to the circumstances of Schnatter's alleged alcohol *use* and to the how, what, when, why and where of his related *misconduct* in the events leading up to the *Forbes* leak and the termination of his agreements with Papa John's. Schnatter argues that the documents being sought would not be admissible without evidence that the alleged alcohol abuse contributed to the termination of the Papa John's agreements. However, in doing so, he correctly acknowledges that the admissibility is not the standard for discovery in a motion to compel. (DN 264 at 8276.) The information need not be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). The admissibility of the as-yet unknown information is not currently before the Court.

### b. Records Pertaining to Substance Use Treatment

It is disputed whether 42 U.S.C. § 290dd–2 is applicable to the second category of production, comprising Requests for Production Nos. 54, 56, 61, 71 and 72 and Request for Admission No. 19. The information sought therein is afforded protection from disclosure under § 290dd–2 if the subject records contain or reference confidential communications made to a provider. Defendants maintain both that the production does not seek medical records, and that Schnatter should produce records from Caron, by all accounts a provider of substance use treatment. While this argument appears to be contradictory on its face, it is a contradiction that is necessitated by Schnatter's position.

In the communications that led to the filing of Defendants' Motion, Schnatter explained that his basis for refusing to produce responsive documents was that they were protected under §

290dd–2.  (*See* DN 259-10.)  This is the same argument he furthers in his response to Defendant's motion, noting that "even if the Court believes the evidence is relevant, relevance is not the standard" applicable here due to the protections afforded by § 290dd–2.  As a preliminary matter, "records" within the scope of § 290dd–2 are defined as "any information, whether recorded or not, created by, received, or acquired by a part 2 program *relating to a patient*[.]"  42 C.F.R. § 2.11 (emphasis added).  Patient means "any individual who has applied for or been given diagnosis, treatment, or referral *for treatment for a substance use disorder* at a part 2 program[.]"  *Id.*

Schnatter's motion does not purport to refute his prior sworn testimony that he did not receive substance use treatment, did not abuse alcohol, and was not admitted to Caron for rehabilitation in 2017 and 2018.  The Court can only take him at his word that each of his foregoing statements is true.  Claiming the protection of § 290dd–2 in the face of this sworn testimony constitutes a bad-faith abuse of the discovery process as § 290dd–2 protects patients who seek or receive substance use treatment.  *See Ellison,* 63 F.3d at 471 (explaining that the statute "emphasizes the importance of preserving the confidentiality of *patient* records in order to encourage individuals to seek treatment") (emphasis added).  Schnatter, if taken at his word, "should be able to confirm that no medical records exist." (DN 259 at 7998.)  Defendants note that the absence of such an objection "suggests that there are records concerning treatment Schnatter did in fact receive[.]"  (DN 259 at 7998.)  The Court agrees and thus "Schnatter's brief creates an impression that he is being evasive."  (DN 161 at 2770.)

The applicability of § 290dd–2 to records is logically proceeded by establishing that the records are connected to a past, present, future or even prospective patient—a given in almost every supportive case that Schnatter cites.  For example, several of Schnatter's cited cases involve a party seeking disclosure of treatment records despite already being in possession of documentary

evidence confirming the opposing party's substance use treatment. *See Loc. 738, Int'l Bhd. of Teamsters v. Certified Grocers Midwest, Inc.,* 737 F. Supp. 1030, 1031 (N.D. Ill. 1990) (the defendant-employer was informed about and asked to participate in plaintiff's substance use treatment by treatment provider prior to litigation); *Guste v. Pep Boys-Manny, Moe & Jack, Inc*., No. CIV. A. 02-3355, 2003 WL 22384947, at *2 (E.D. La. Oct. 14, 2003) (plaintiff produced his physician's records that noted his attendance at a substance use treatment center); *Whyte v. Connecticut Mut. Life Ins. Co*., 818 F.2d 1005, 1008 (1st Cir. 1987) (beneficiary's admission of decedent's substance use treatment records in life insurance case did not constitute waiver because decedent did not admit his own records); *Soloff v. Lincoln Nat'l Life Ins. Co*., No. 209CV609FTM36DNF, 2010 WL 11506952, at *1 (M.D. Fla. Nov. 1, 2010) (beneficiary in life insurance case "opened the door" to decedent's substance use treatment records by citing to them in her motion). In nearly all of his remaining cited cases, the party opposing disclosure previously admitted to receiving substance use treatment or to suffering from substance use. *See United States v. Cresta*, 825 F.2d 538, 552 (1st Cir. 1987) (the court held that because the witness's "addiction to drugs and alcohol was fully disclosed by his own testimony… little else would have been gained from an examination of the records"); *Mosier v. Am. Home Patient, Inc.*, 170 F. Supp. 2d 1211, 1214 (N.D. Fla. 2001) (plaintiff admitted in deposition testimony that he abused alcohol and had sought treatment); *United States v. Smith*, 789 F.2d 196, 205 (3d Cir. 1986) (witnesses testified they had been alcoholics and attended a rehabilitation center); *United States v. Oberle*, 136 F.3d 1414, 1417 (10th Cir. 1998) (court ruled against disclosure because jury had been presented with facts of substance use and treatment such that the "basic information was [already] available"); *Bell v. State*, 385 So. 2d 78, 80 (Ala. Crim. App. 1980) (witness admitted to receiving treatment for alcohol abuse and was cross-examined on her medical records reflecting the same). In only

one case, *Smalls v. Fallon*, was there a party seeking disclosure of substance use treatment records without knowing first if the responding party suffered from substance use.  1995 WL 5847, at *14 (S.D.N.Y. Jan 5, 1995).  In *Smalls*, the plaintiff sought treatment records from his arresting officer to explain his "bizarre" and "unprofessional" behavior on the night of plaintiff's arrest.  *Id.*  The *Smalls* court found that treatment records were not relevant to the claims and ruled against disclosure.  *Id.*  As explained by another court, the *Smalls* plaintiff was "on a fishing expedition for evidence irrelevant to their legally required proofs."  *Id.*; *see also Fannon v. Johnston*, 88 F.Supp.2d 753, 759 n.5 (E.D. Mich. 2000).  The *Smalls* court still allowed the plaintiff to depose the officer as to his substance use during the relevant period for the purpose of credibility.  Here, Schnatter's alleged substance use is relevant not only to issues of credibility but also to the substantive defense of Schnatter's claim for reputational injury.

*Fannon v. Johnston* is on point; like Defendants, the *Fannon* plaintiff sought the production of drug rehabilitation records due to the "vast discrepancy in peoples' testimony" regarding the defendant's substance use.  *Fannon,* 88 F.Supp.2d at 758.  The *Fannon* court found that the defendant's substance use was relevant to the claims, to the defendant's "ability or willingness to testify truthfully and accurately as to [the events]," and "for the purposes of impeachment and credibility."  *Id.* (citing *United States v. Snowden,* 879 F.Supp. 1054, 1058 (D.Or. 1995.)  As discussed herein, the facts of Schnatter's substance use are "presently unsettled" and the discovery is relevant to his claims, defenses, and for the purposes of impeachment and credibility.  *Id.* at 759 (comparing *Oberle*, 136 F.3d at 1420 (no need for records release where other evidence already proved that individual was addicted at the time in question)).  Schnatter's alleged alcohol abuse was placed at issue and therefore discovery on those issues are not attempts to harass Schnatter given that it is critical to his reputation due to the self-acknowledged "social

stigma" attached to alcohol abuse. (DN 264 at 8281.) The information sought by Defendants is relevant in varying degrees to the defenses and "is probably essential to providing an accurate understanding to the trier of fact." *Id.* At the same time, Defendants "have virtually no other means available to explore the details surrounding [the substance use] other than by examination of [Schnatter's] records." *Hughes v. City of Louisville*, 2005 WL 8174380, at *6 (W.D. Ky. 2005). In fact, the "contemporaneously recorded information" that Defendants seek in Schnatter's possession "may be the most accurate source of information as to the nature and extent" of Schnatter's alleged alcohol abuse or the lack thereof. *Fanon*, 88 F.Supp.2d at 759 (quoting *Doe v. Marsh*, 899 F.Supp. 933, 935 (N.D.N.Y. 1995)). The only other proper mode of disclosure provided in the statute hinges on consent, which Schnatter has refused, and on the testimony or evidence that may have been in the possession of Taylor, who is now deceased. *See Wachel v. First Colony Life Ins. Co.*, 2005 WL 8170419, at *2 (N.D. Ind. Dec. 7, 2005) (finding first prong of good cause met where defendants could not get consent because patient-party was deceased and had exhausted other alternatives); *see also* 42 U.S.C. § 290dd-2(b)(1).

On the separate issue of "confidential communications" that may be present in the responsive documents, Schnatter has opened the door to the admission of the confidential communications by his "one-sided testimony denying [alcohol] use at the time of [the events at issue in this action]." *Fanon*, 88 F. Supp. 2d at 763. By denying his abuse of alcohol at the time in question, "any information that would shed light upon the possible existence and extent of such [alcohol] use [during the relevant period] is more than merely relevant, but is absolutely critical, to the just outcome of the lawsuit." *Hughes*, 2005 WL 8174380, at *8. Like the defendants in *Hughes*, Defendants here "are not required to accept as true" Schnatter's claims that he did not receive treatment or did not abuse alcohol. *Id.* Similarly, the *Fannon* defendant offered testimony

18

that "attempted to create a 'character mosaic' that minimizes his involvement with the use of [alcohol], and presents himself as merely an occasional user rather than an individual whose behavior might have been influenced by a craving for it." *Fanon*, 88 F. Supp. 2d at 763.  Schnatter has done the same in testifying both that (1) Taylor raised to Schnatter his belief that Schnatter "need[ed] help" with alcohol and "was partying too much" and (2) that the two stayed at a facility that "wasn't a rehab facility" but was a "treatment center" where (3) Taylor was admitted for treatment, but Schnatter's stay was "kind of like a hotel."  (DN 246-3 at 5015-16, 5425-26.)   The burden created by § 2.63(a)(3) is "not an impossible one" such that "only at talismanic incantation by a testifying patient of the actual confidential communications could result in their release."  *Id.* Schnatter did, in fact, "offer" his testimony when he discussed alcohol abuse and treatment in his deposition "even if only in a general manner and even if only in response to a question from opposing counsel[.]"  *Id.* at 763.

Further, given Schnatter's claim that he was not a patient and did not receive treatment, "it cannot be said that the potential injury to [him] or [his] doctor-patient relationship outweighs the interests of all parties in their search for the truth and for a just result in this litigation."  *Hughes*, 2005 WL 8174380, at *6.   "Plaintiff has a duty, upon a proper discovery request, to inform Defendant of the existence of every episode of treatment for substance use, as well as to tell Defendant the truth about the problems he has had with substance use."  *Mosier,* F.Supp.2d at 1212. Testifying that there was no treatment rendered logically necessitates there can be no injury to a doctor-patient relationship or to a patient's records.   Further, Schnatter's privacy interest carries less weight given that his alleged alcohol abuse was known amongst his peers and has been the topic of public discourse.   Lastly, Schnatter's assertion that disclosure would present an injury to Caron as a treatment provider without prior notice of the production is meritless.   First, the

records are not being sought from Caron, but from Schnatter.  Schnatter received notice, and his response to the instant Motion was the exercise of his opportunity to respond.  Second, Defendants served Caron with a subpoena and received a letter in response from Caron on April 18, 2023 that included a consent form to be executed by Schnatter.  Caron's letter, according to counsel for Schnatter, appeared to detail Caron's objections to the production.  (DN 259-10 at 8074.)  Counsel expressed that he had "notified [Caron] of [Schnatter's] objections to the subpoena and the defects in [Defendants'] compliance with 42 CFR 164.512(e) and 42 CFR part 2." (*Id.*)  It cannot be said, then, that Caron was not notified of the production or that Caron was deprived of the opportunity to respond to an order that was never directed to it.  Caron did respond to Defendants and has had over year to take any additional action, such as quashing the subpoena, that it believed necessary to protect its interests. *See Doe v. St. Vincent Medical Group, Inc.*, 2019 WL 6125291 (finding that a subpoena served on a provider, a copy of which was attached to briefing on a motion to compel, satisfied the notice requirement).  Therefore, the Court finds that Defendants have met their burden to show good cause by establishing that the public interest in the records outweighs the harm posed against Schnatter, that the records cannot be obtained elsewhere, and that non-disclosure of confidential communications involving Caron was waived by Schnatter's voluntary testimony on the subject of his substance use and related visit to Caron and during the relevant time.

### c.  Award of Reasonable Expenses and Attorney's Fees

Defendants request an award of reasonable costs, including attorney's fees.  (DN 259 at 8001-02.)  Under Rule 37(a)(5)(A), if a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the

party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court "must not" order this payment if (1) the movant did not first attempt to obtain the disclosure in good faith without court action, (2) the opposing party's objection was "substantially justified," or (3) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Schnatter argues that his objections regarding the discovery of the substance use treatment records were substantially justified in that they are "well-founded and "litigated throughout the country." (DN 264 at 8292.)

The Sixth Circuit applies a four-factor test to review a decision to impose sanctions under Rule 37. *Doe v. Lexington–Fayette Urban Co. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005). The fourth factor concerns dismissal and is not relevant here. *See id.* The Court must determine (1) whether the discovery conduct and objections were due to willfulness, bad faith, or fault; (2) whether the moving party was prejudiced; and (3) whether the sanctioned party was on notice that its conduct could lead to sanctions. *Id.* Whether the moving party suffered prejudice is tied partly to whether the objections were substantially justified. *Osborn v. Griffin,* No. 2:11-CV-89-WOB-REW, 2014 WL 12647954, at *2 (E.D. Ky. July 7, 2014) (citing *Doe*, 407 F.3d at 766). Substantial justification "arises when there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe*, 407 F.3d at 766. "Courts look to the background of objections to discovery requests, not simply the outcomes, to determine if the resistance to discovery is substantially justified." *Kenney v. Strauss Troy Co., LPA,* No. CV 16-208-DLB-CJS, 2019 WL 13212433, at *4 (E.D. Ky. Oct. 31, 2019) (citing *Osborn*, 2014 WL 12647954, at *2). A substantial justification exists if the objecting party's "concern and position was reasonable for the most part, even if it was ultimately incorrect." *Id.; see also Ham v. Marshall Cty., Ky.*, No.

5:11-cv-11, 2012 WL 4340655, at *1 (W.D. Ky. Sept. 21, 2022) (declining award expenses for preparing motion to compel where defendants' "initial refusal to disclose the requested information appear[ed] grounded in a good faith belief they were legally entitled to do so under the Federal Rules").

The Court finds that an award of expenses, including attorney's fees, are warranted due to Schnatter's unreasonable resistance to the discovery at issue. The *Doe* factors weigh in Defendants' favor. Defendants were prejudiced by Schnatter's evasive conduct and by his objections made in bad faith. Schnatter was not legally entitled to assert a privilege after precluding its application by his own sworn testimony. As set forth in Part III(b) *supra*, Schnatter's "well-founded" authority did not advance his position that parties who self-identify as not part of a class may somehow assert a privilege reserved exclusively for that class. (*See id.*) Therefore, the application of privilege was not in genuine dispute and Schnatter's opposition could not be considered as having raised an issue "about which reasonable people could differ." *Doe*, 407 F.3d at 766. Instead, the substance of his opposition suggests evasiveness and misconduct in discovery. Schnatter was obligated to either confirm the absence of treatment records in accordance with his testimony or admit to their existence in open contradiction to his testimony at the time he asserted privilege. If Schnatter was truthful and the facts of his testimony remain unchanged, then he was obligated at the very least to prevent Defendants from incurring costs battling what he knew to be a legal fiction. Due to Schnatter's misconduct, Defendants were forced to expend unnecessary time and money to secure his cooperation. *Meyer v. Bank of Am., N.A.*, No. 2:18-CV-218, 2019 WL 7820519, at *3 (S.D. Ohio Mar. 8, 2019). The Court notes further that this is the third time the Court will have compelled Schnatter to produce discovery. Therefore, Schnatter's instant

failure to substantially justify his position can only be interpreted as willful evasion of his discovery obligations.

In addition, the Court finds that Defendants' pursuit of this discovery was done in good faith. Defendants sought records from a defined period, limited to specific categories of related records and defined areas of relevant information. In the meet and confer process, Defendants did agree to narrow the scope of the discovery. Schnatter though maintained his opposition based on a clearly inapplicable privilege. On the other hand, Schnatter's conduct supports a finding that he acted in bad faith faith—even his own defense of his conduct is scarcely more than a few sentences. (*Id.* at 8291-92.) Finally, Schnatter's losses on two motions to compel previously and Defendants' express request for attorney's fees in the instant motion was sufficient warning that a failure to cooperate could lead to legal sanctions.[1] Therefore, Schnatter shall pay the reasonable costs and attorney's fees incurred by Defendants in prosecuting the instant motion, including the costs associated with correspondences and conferences with Schnatter on the discovery underlying the motion, and on briefing the motion.

### d. Motions to Seal

Defendants moved to provisionally seal the instant Motion to Compel, Defendant's reply to the Motion to Compel, and Defendants' Motion for Summary Judgment, including supporting

---

[1] Rule 37 requires the Court to award reasonable expenses, including attorney's fees, to the movant after providing Schnatter with an opportunity to be heard. Fed. R. Civ. P. 37(a)(5)(A). "[W]hen exercising . . . its authority to sanction under Rule 37, a district court need not give formal notice or hold a full evidentiary hearing." *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 377 (6th Cir. 2022) (citations omitted). "So long as a party is given notice by an opposing party and has the chance to brief the issue, no procedural due process violation occurs." *Id.* (citing *KCI*, 797 F. App'x at 1006–08.) Schnatter's response brief challenged the imposition of costs and attorney's fees, allowing him an opportunity to be heard and confirming his understanding of Rule 37. The Court will allow him an additional opportunity to challenge the reasonableness of the award.

memoranda and exhibits.  (DNs 245, 258 and 265.)  Defendants oppose sealing but filed the motions pursuant to the Parties' confidentiality agreement to allow Schnatter the opportunity to move for a permanently seal of the same.  Accordingly, Defendants filed redacted placeholder copies of the underlying filings for public access (DNs 247, 260, 267) and unredacted copies for the Court's determination of the motions to seal (DNs 246, 259, 266).  Schnatter filed responses to the provisional seals, moving for a permanent seal Defendants' proposed redactions.  (DNs 251, 268, 269.)  Schnatter also moved to provisionally seal his responses to Defendants' Motion to Compel and Motion for Summary Judgment to allow Defendants the opportunity to permanently seal the same.  (DNs 253, 263.)  Accordingly, like Defendants, Schnatter filed redacted placeholder copies of his responses for public access (DNs 252, 262) and sealed copies of the same (DNs 254, 264) pending the Court's review.  Defendants filed replies in opposition to Schnatter's permanent seals, also with redacted copies and unredacted copies filed provisionally under seal.  (DNs 256, 257, 274, 275.)  The Court will note that Defendants or non-parties did not move to seal any of the above filings.

It is well-established that a "strong presumption" exists in favor of keeping court records open to the public.  *See, e.g.*, *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176-79 (6th Cir. 1983).  The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).  To meet this burden, the party seeking a seal must show (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly-tailored.  *Id.*; *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.,* 834 F.3d 589, 593-

94 (6th Cir. 2016). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.' " *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Int'l., Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a Motion to Seal, the Court is required to make "specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd,* 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). " '[A] court's failure to set forth those reasons . . .' is itself sufficient grounds to vacate the seal." *Id.* (quoting *Shane Grp.*, 825 F.3d at 306).

Schnatter moves to permanently seal all mention of his alleged substance use in the abovementioned filings. The Court will note that Schnatter does not provide a "document-by-document" analysis of each seal, but instead incorporates by reference his supportive analysis that was offered elsewhere in the record. The references to Schnatter's alleged alcohol abuse across the filings are different in form but largely the same in substance in they pertain to the alleged abuse or to related misconduct and treatment stemming from it. The Court previously granted Schnatter's request to seal this information, finding that the balance of interests tilted in favor of sealing when weighed against the public's diminished interest in information not being offered on the merits of the underlying motion. The Court cautioned Schnatter that this would not ensure that the material would remain redacted if cited again in the future or refiled elsewhere in the record. If the redacted information were to become more important to this Court's future decisions, the interests supporting public access were subject to increase as well. *See Rudd Equip. Co., Inc.*, 834 F.3d at 594. Accordingly, the Court finds that the interests supporting access are increased where, as here, the information is offered on the merits. *See Shane*, 825 F.3d at 305 ("'Secrecy is fine at

the discovery stage, before the material enters the judicial record.' . . . 'At the adjudication stage, however, very different considerations apply.'")

In Defendants' Motion to Compel, Schnatter's alleged substance use is directly at issue and is the basis for this order. In both of Defendants' motions, the information is relevant to Defendants' claims and defenses and is not privileged. Schnatter, relying on *Scott*, asserted that documents filed in the adjudicative phase, including in support of a dispositive motion, may still be sealed "when those documents are not critical to the public's understanding of the court's basis for making its decision." *United States, ex rel. Scott, v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2020 WL 5549609, at *1 (W.D. Ky. Sep. 15, 2020)). *Scott* is distinguishable from the present case. The documents filed in support of a dispositive motion in *Scott* contained, among other things, "confidential information pertaining to [the party]'s *business operations* . . . [that is] not [generally] subject to public disclosure." *Id.* The information sealed in *Scott* thus fell within three recognized exceptions that are typically sufficient to overcome the public's presumption of access. *See Brown*, 710 F.2d at 1179 (finding that there are three recognized exceptions that are typically sufficient to overcome the presumption of public access: "certain privacy rights of participants or third parties, trade secrets[,] and national security.") The information Plaintiff seeks to seal does not fall within the three recognized exceptions, nor does it fall within the recognized protections for those seeking and participating in drug rehabilitation programs for reasons discussed above. *See, e.g.*, 42 U.S.C. § 290dd-2; *see also Ellison v. Cooke Cnty.*, 63 F.3d 467, 470-71 (6th Cir. 1995). The information, while potentially embarrassing, is not "irrelevant personal life details" as Schnatter purports. (DN 253 at 7649.) Defendants asserted, and the Court has agreed, that the information at issue "bears directly on the Parties' claims and defenses now before the Court." (*See* DNs 245, 258, 260, 274.) "Simply showing that the information would

harm the [proponent's] reputation is not sufficient to overcome" the presumption of access for the public to "a court's decisions and the information on which the court relied in making that decision." *Brown*, 710 F.2d at 1179; *Dahmer v. Western Kentucky University*, No. 1:18-CV-00124-DJH-LLK, 2020 WL 12813747, at *2 (W.D. Ky. Sept. 25, 2020) (citing *Shane Grp.* 825 F.3d at 305.) Therefore, Schnatter's motions to seal information related to his alleged substance use are denied. (DNs 253, 263.) Defendants' motions to provisionally seal the same are denied for the same reasons as a procedural matter. To the extent that Schnatter provisionally sealed his responses to Defendants' Motion for Summary Judgment and Defendants' Motion to Compel to allow Defendants and non-parties, such as Sonya Medina, Steve Ritchie, Papa John's International, Jordan Zimmerman, and Jeff Olson to move for a permanent seal, the information at issue will be unsealed as none of the parties filed a response or opposed unsealing. (*See* DN 253 at 7646-48, 7652; *see also* DN 263 at 8264, DN 274.)

## IV.    CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that

(1) Defendant's Motion to Compel (DN 260) is **GRANTED**.

> a. On or before **April 30, 2024**, Schnatter shall produce information and documents responsive to Defendants' Request for Production Nos. 53-58, 61, 64, 71 and 72 in Defendants' Fourth Set of Requests for Production (DN 593-3), to Requests for Production Nos. 71 and 72 in Defendants' Sixth Set of Requests for Production (DN 259-7), and answers responsive to Request for Admission Nos. 19 and 20 in Defendants' Third Set of Request for Admissions (DN 259-4). In the alternative, Defendants may submit to Schnatter a limited

request for production or admissions as discussed in Defendants' Motion on or before **April 5, 2024**, provided that the alternative does not request the production of information outside the scope contemplated by the initial requests.

b.  Schnatter shall pay the reasonable costs and attorney's fees incurred by Defendants in prosecuting the instant Motion to Compel, including the costs associated correspondences and conferences with Schnatter, including the May 4, 2023 deficiency letter, the May 11, 2023 status conference and related communications to the Court, and briefing the motion. Defendants' counsel shall submit billing records and corresponding declarations that evidence time spent on the instant motion within thirty days of this order. Schnatter may respond to the amount requested by Defendants within thirty days; the response may only address the reasonableness of the amount claimed by Defendants and the sufficiency of its itemization.

(2) Defendants' Motions to Seal (DNs 245, 258, 265) are **DENIED**.

a.  The Clerk shall permanently unseal DNs 246, 257, 259, 266 and 274.

(3) Schnatter's Motions to Seal (DNs 253, 263) are **GRANTED in part, DENIED in part**.

a.  The Clerk shall permanently unseal DNs 254 and 264.

Colin H Lindsay, Magistrate Judge
United States District Court

March 28, 2024

cc:  Counsel of record