# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

## *ELECTRONICALLY FILED*

| | |
|---|---|
| JOHN H. SCHNATTER, | Case No. 3:20-cv-00003-BJB-CHL |
| **Plaintiff,** | **JUDGE BENJAMIN J. BEATON** |
| v. | **MAGISTRATE JUDGE COLIN H. LINDSAY** |
| 247 GROUP, LLC d/b/a LAUNDRY SERVICE, and WASSERMAN MEDIA GROUP, LLC, | |
| **Defendants.** | |

## DEFENDANT 247 GROUP, LLC d/b/a LAUNDRY SERVICE'S POST-TRIAL BRIEF

KENDALL BRILL & KELLY LLP

Bert H. Deixler (*pro hac vice*)
 Email: bdeixler@kbkfirm.com
Patrick J. Somers (*pro hac vice*)
 Email: psomers@kbkfirm.com
David T. Freenock (*pro hac vice)*
 Email*:* dfreenock@kbkfirm.com
 10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

*Counsel for Defendant*

KAPLAN JOHNSON ABATE & BIRD LLP

Michael P. Abate
 Email: mabate@kaplanjohnsonlaw.com
710 West Main Street, 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282

*Counsel for Defendant*

# <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND AND SUMMARY OF ARGUMENT ......................................1

III.    LEGAL ARGUMENT..........................................................................................4

    A.    Schnatter Cannot Change the Terms of the Team Member NDA ..........4

        1.    Schnatter Did Not Allege Reformation or Mistake ...................4

        2.    Schnatter Cannot Amend His Pleadings to Add a Reformation Claim...................................................................................................6

        3.    Schnatter Did Not Prove Reformation or Mutual Mistake .........8

    B.    Schnatter Cannot Seek Reformation Under the Guise of Contract Interpretation..........................................................................................9

        1.    The Team Member NDA Does Not Bind Laundry Service ....................10

        2.    The NDA's Provisions Do Not Apply to Laundry Service .......................12

    C.    The Team Member NDA and the Arbitration Provision Are Not Supported by Valid Consideration .........................................................................13

    D.    Laundry Service Did Not Waive Its Right to Arbitration......................................15

IV.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al J. Schneider Co. v. Hartford Fire Ins. Co.*,
    2021 WL 5702433 (W.D. Ky. Dec. 1, 2021)..............................................................................6

*Boone v. Gonzalez*,
    550 S.W.2d 571 (Ky. App. 1977) ...........................................................................................5

*Brown v. Brown*,
    265 S.W.2d 484 (Ky. 1954) ...................................................................................................5

*Brown v. Union Cent. Life Ins. Co.*,
    44 S.W.2d 514 (1931) .........................................................................................................4, 5

*Cal. Union Ins. Co. v. Spade*,
    642 S.W.2d 582 (Ky. 1982).................................................................................................12

*Cnty. Ties of Am., Inc. v. NDT Care Servs., LLC*,
    2015 WL 520960 (W.D. Ky. Feb. 9, 2015) .........................................................................14

*Com., Dep't of Highways v. Schmehr*,
    388 S.W.2d 131 (Ky. 1965)................................................................................................13

*Crawford v. Mills*,
    2015 WL 5656244 (Ky. App. Sept. 25, 2015).......................................................................7

*Dulworth v. Hyman*,
    246 S.W.2d 993 (Ky. 1952)..............................................................................................5, 8

*Fineman v. McCullough*,
    2008 WL 612352 (Ky. App. Mar. 7, 2008) .........................................................................13

*First Commonwealth Bank of Prestonsburg v. West*,
    55 S.W.3d 829 (Ky. App. 2000) .........................................................................................12

*Friction Materials Co. v. Stinson*,
    833 S.W.2d 388 (Ky. App. 1992) .......................................................................................12

*Goodin v. Page*,
    29 S.W.2d 581 (Ky. 1930)..................................................................................................10

*Gray v. First Nat. Mortg. Co., of Evansville*,
    2003 WL 1343470 (Ky. App. Feb. 21, 2003).......................................................................9

*Hensley v. Gadd*,
    560 S.W.3d 516 (Ky. 2018) ...................................................................................11

*In re Hensley*,
    578 F. App'x ...........................................................................................................6

*Karrick v. Wells*,
    307 S.W.2d 929 (Ky. 1957) ...................................................................................9

*Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*,
    796 F.3d 576 (6th Cir. 2015) .................................................................................7

*Kentucky Lottery Corp. v. Casey*,
    862 S.W.2d 888 (Ky. 1993) .................................................................................12

*Lyles v. RDP Co.*,
    2016 WL 4083468 (W.D. Ky. Aug. 1, 2016), *aff'd*, 702 F. App'x 385 (6th Cir.
    2017) .....................................................................................................................6

*Martin v. Pack's Inc.*,
    358 S.W.3d 481 (Ky. App. 2011) ........................................................................14

*McMullin v. McMullin*,
    338 S.W.3d 315 (Ky. App. 2011) ........................................................................12

*Morris v. Gilliam*,
    281 S.W. 1026 (Ky. 1926) .................................................................................4, 5

*Nat Harrison Assoc., Inc. v. Louisville Gas & Elec. Co.*,
    512 F.2d 511 (6th Cir. 1975) .................................................................................5

*Nichols v. Zurich Am. Ins. Co.*,
    423 S.W.3d 698 (Ky. 2014) ..........................................................................6, 8, 9

*Norwich Union Indem. Co. v. H. Kobacker & Sons Co.*,
    31 F.2d 411 (6th Cir. 1929) ...................................................................................4

*O.P. Link v. Wright*,
    429 S.W.2d 842, 847 (Ky. 1958) ...................................................................11, 15

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
    937 F.3d 692 (6th Cir. 2019) ...............................................................................15

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) .................................................................................5

*Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*,
    2013 WL 2242648 (W.D. Ky. May 21, 2013) ....................................................10

*Ross Seed Co. v. Sturgis Implement & Hardware Co.*,
    181 S.W.2d 426 (Ky. 1944) ................................................................5

*Smith v. Crimson Ridge Dev., LLC*,
    410 S.W.3d 619 (Ky. App. 2013) .......................................................10

*Sparks v. Trustguard Ins. Co.*,
    389 S.W.3d 121 (Ky. App. 2012) .........................................................6

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*,
    540 S.W.3d 770 (Ky. 2017) ...............................................................12

*Swiss Oil Corp. v. Hupp*,
    22 S.W.2d 1029 (Ky. 1928) .................................................................7

*Tecossl, Inc. v. Avid Labs, LLC*,
    2024 WL 643222 (E.D. Ky. Feb. 15, 2024) ..........................................6

*Univ. of Ky. v. Regard*,
    670 S.W.3d 903 (Ky. 2023) ...............................................................11

*Welch v. Bd. of Ed. of Magoffin Cnty.*,
    247 S.W.2d 536 (Ky. 1952) ...............................................................12

*Whitlow v. Whitlow*,
    267 S.W.2d 739 (Ky. 1954) ...............................................................11

*Yellow Freight Sys., Inc. v. Martin*,
    954 F.2d 353 (6th Cir. 1992) ...............................................................7

**Statutes**

Ky. R. Civ. P. 9.02 ....................................................................................5

Ky. Rev. Stat. § 371.030 ...........................................................................13

**Rules**

Fed. R. Civ. P. 9 .......................................................................................5

Fed. R. Civ. P. 15 ...............................................................................3, 6, 7

Fed. R. Civ. P. 52 .....................................................................................3

**Treatises**

66 Am. Jur. 2d Reformation of Instruments § 100 ....................................5

76 C.J.S. Reformation of Instruments § 87 ...............................................8

27 Williston on Contracts § 70:100 (4th ed.)......................................................................9

## I.    __INTRODUCTION__

The trial established there is not an enforceable contract against Laundry Service.  Papa John's provided Laundry Service the wrong agreement to sign.  The clear terms and obligations of the Team Member NDA do not—and cannot—apply to Laundry Service.  But rather than allege mutual mistake and seek reformation of the contract, Schnatter proceeded in this litigation as if Papa John's intended to provide the wrong contract.  Schnatter asserts that the Team Member NDA is "ambiguous," and therefore the Court should interpret the contract to bind and apply to Laundry Service.  The problem for Schnatter is that the law and the evidence are against him.  The face of the contract shows it applies only to Papa John's employees, not vendors like Laundry Service. The Court is not permitted to change the terms to apply to Laundry Service.  A change in terms requires reformation, not interpretation.  Even were the contract ambiguous, the parol evidence shows that the terms of the contract mean what they say.  A "Team Member" is a Papa John's employee.  As a result, that agreement is not enforceable in this case based on Plaintiff's own pleading choices.  Judgment should be entered in favor of Laundry Service.

## II.   __BACKGROUND AND SUMMARY OF ARGUMENT__

The evidence introduced at trial established that there were multiple non-disclosure agreements concerning Schnatter, including one for Papa John's employees (the "Team Member NDA") and one for vendors (the "Vendor NDA").  DX-20; DX-21.  The Team Member and Vendor NDAs are different: they use different language, different terms, and impose different obligations and rights upon the parties to the agreement based on the roles of the respective parties. *Id.*  The Team Member NDA—by its plain terms—binds and applies only to Team Members, which the incorporated Papa John's Code of Ethics and Business Conduct ("Ethics Code") defines as "all officers, directors and employees of the Company, unless otherwise indicated."  DX-20, at

3; DX-34, at 3.  This definition is consistent with the rest of the Team Member NDA, which repeatedly uses the term "employment" and imposes obligations that only make sense for employees, such as an obligation to adhere to the Ethics Code.  DX-20.  Within its four corners, the Team Member NDA binds and applies only to Papa John's employees—not Laundry Service.

Because no term in the Team Member NDA creates an ambiguity as to whether Laundry Service is bound, at the outset of the trial, Laundry Service objected to the admission of parol evidence.  DN 371.  In asserting this objection before Plaintiff presented his case, Laundry Service explained the consequence and importance of the issue: "Kentucky law also says quite clearly you cannot use parol evidence to vary the meaning of a term in a contract [that is defined].  And the only circumstance when you can look outside [to] the parol evidence is when they are pleading a reformation claim based on mutual mistake.  But the plaintiff specifically disavowed reformation, did not pled it here, and they disavowed [it] in their opposition for a summary judgment motion.  They said they're not trying to change the terms of the contract.  So in our view, this was simply the wrong contract, and it cannot bind Laundry Service, because Laundry Service does not meet the definition of team member, that is a defined term, nor does it fit any of the other indicia in the contract as to the obligations, the supposed consideration, and just within the structure of the contract."  DN 373, at PageID#: 10056.[1]

Even were parol evidence admissible, that evidence confirms that Papa John's requested the wrong contract be signed.  John Matter, Papa John's corporate counsel, testified that the Team Member NDA is only used by Papa John's to bind individual employees; it is not the NDA the Company uses to bind vendors.  *E.g.*, *id.* at PageID#: 10140-10142, 10147.  That separate Vendor NDA binds and applies to vendors—and so indicates in the contract and signature block.

---

[1] Laundry Service raised the same argument in its omnibus motion.  DN 247, at PageID#: 5500.

Matter further testified that the term "Team Member" refers to Papa John's "employees," and Laundry Service was not a "Team Member;" it was a "vendor." *E.g., id.* at PageID#: 10130-10133, 10138. Similarly, Wollirch testified that the term "Team Member" is used to refer to "an employee of Papa John's," and Laundry Service "was not a Team Member." Nov. 15, 2021 Dep. Tr. of Katherine Wollrich ("Wollrich Tr.") at 104:18-105:8. She also testified that employees are asked to sign the Team Member NDA, and Wollrich, as an employee, signed the Team Member NDA. Feb. 15, 2022 Dep. Tr. of Katherine Wollrich ("Wollrich Tr. Vol. 2") at 44:17-45:02.

Schnatter failed to offer any proof that Laundry Service was a "Team Member" or that Papa John's (or Schnatter) intended for Laundry Service to execute the Team Member NDA rather than the Vendor NDA. Wollrich did not recall any conversations about the Team Member NDA or Vendor NDA and did not recall why she told Laundry Service to disregard the Vendor NDA and sign the Team Member NDA. Wollrich Tr. Vol. 2 at 48:10-49:13.

At the close of Schnatter's evidence, Laundry Service moved the Court under Fed. R. Civ. P. 52 for judgment in its favor because Schnatter failed to plead and prove a claim for reformation. To reform the Team Member NDA to conform to the alleged intent of the parties or the terms of the Vendor NDA, Schnatter was required to plead and prove a claim for reformation by clear and convincing evidence. He did neither.[2]

Finally, even if "Team Member" could encompass Laundry Service, the evidence showed that the purported consideration for the Team Member NDA is inadequate. Laundry Service did not receive continued "employment" or new access as a result of signing the Team Member NDA.

---

[2] *E.g.*, DN 375, at PageID#: 10249 (Counsel: "The only way to correct a contract, to change the language of a contract, based on a mutual mistake, is a formal claim for reformation, and I'm going to briefly explain why one was not brought here, and why we object formally under Rule 15 to treating this case as if there's been implicit litigation of a claim for reformation, which wasn't brought."); *see also id.* at PageID#: 10249-10260.

Rather, the terms of its engagement were defined by the pre-existing Master Services Agreement ("MSA"), which already provided Laundry Service compensation and access to confidential information regarding Papa John's and Schnatter. *E.g.*, DX-1; DX-3; DX 7-8; DX-13-14; DX-18; DX-22; DN 373, at PageID#: 10168-10170; DN 345, at PageID#: 9541; DX-29, at 16. And, as the March 26, 2018, email from Wollrich confirms, Papa John's intended for Laundry Service to sign the Vendor NDA at the same time as the MSA, meaning the consideration would have been the same for both agreements. DX-21. Laundry Service received nothing new months later when Papa John's provided the wrong contract. Nor was the arbitration provision sufficient consideration to support the contract as a whole; but even if it were, Schnatter indisputably failed to deliver the promised consideration by arbitrating his claims.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Schnatter Cannot Change the Terms of the Team Member NDA</u>

#### 1. <u>Schnatter Did Not Allege Reformation or Mistake</u>

Schnatter did not allege reformation or mutual mistake in his pleadings. Under well-settled Kentucky law, the failure to do so is fatal. *Brown v. Union Cent. Life Ins. Co.*, 44 S.W.2d 514, 517 (1931) ("Not only is it a fixed rule that, to alter, change, or vary an executed contract on the grounds of mutual mistake, the evidence must be clear and convincing or such as to establish a mistake and its mutuality beyond a reasonable controversy, but the facts constituting the mistake must be set forth in the pleading, setting up the mistake as a ground of relief."); *see also Morris v. Gilliam*, 281 S.W. 1026, 1027 (Ky. 1926); *Norwich Union Indem. Co. v. H. Kobacker & Sons Co.*, 31 F.2d 411, 414 (6th Cir. 1929). Courts have consistently refused to reform contracts where the

party did not plead a reformation claim.[3]

The advent of "notice" pleading in Kentucky did not abolish this rule. Kentucky codified the longstanding rule that mistake must not only be alleged in the pleadings but must be alleged with particularity. *See* Ky. R. Civ. P. 9.02; *see also Brown v. Brown*, 265 S.W.2d 484, 485 (Ky. 1954) (CR 9.02 "is but a restatement of the pleading requirement which this Court has consistently applied."). That rule "reflects a departure from 'notice' pleading" and requires fraud or mistake to "be pled with particularity." *Boone v. Gonzalez*, 550 S.W.2d 571, 574 (Ky. App. 1977).[4]

Thus, Kentucky's courts have continued to demand that, "[w]hen mistake is relied on as a ground for reformation, it must be charged distinctly and with precision." *Dulworth v. Hyman*, 246 S.W.2d 993, 995 (Ky. 1952) (quoting 66 Am. Jur. 2d Reformation of Instruments § 100). "The pleading must show the particular mistake, how it occurred, and that it existed at the time of the execution of the instrument in question." *Id.* Kentucky courts have consistently refused to reform contracts where the pleading does not specifically allege mutual mistake and seek reformation. *E.g.*, *Dulworth*, 246 S.W.2d at 995.

---

[3] *See, e.g.*, *Ross Seed Co. v. Sturgis Implement & Hardware Co.*, 181 S.W.2d 426, 429 (Ky. 1944) (refusing to reform contract; "In order to interpose a defense based upon an agreement not contained in the written contract, it was incumbent upon appellees to plead and prove a reformation of the contract; this was not attempted. The court, therefore, erred in permitting appellees to introduce evidence contradicting the contract as a defense to the suit."); *Brown*, 44 S.W.2d at 518 ("In the instant case, there was no allegation or intimation that either by fraud or mistake there was any part of the contract left out of the written memorial, nor was there any attempt to put any other terms into the writing on the ground that they had been omitted through fraud or by mistake."); *Morris*, 281 S.W. at 1027 (refusing to reform contract; "There was no such express averment contained in any of plaintiff's pleadings, and it is doubtful if such mutuality of the alleged mistake was necessarily inferable from the allegations as made.").

[4] The Sixth Circuit has held "[w]hether a state-law claim sounds in fraud [or mistake], and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). Ky. R. Civ. P. 9.02 is "materially identical" to Fed. R. Civ. P. 9(b). *Id.* at 248 n.2; *see also Nat Harrison Assoc., Inc. v. Louisville Gas & Elec. Co.*, 512 F.2d 511, 513 (6th Cir. 1975) (holding Kentucky substantive law applies to reformation in diversity actions).

For example, in *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121 (Ky. App. 2012), a party not named in an insurance contract sought coverage based on various public policy and insurance doctrines. Affirming the trial court's refusal to reform the contract, the Court of Appeals noted: "Aside from making a passing reference to 'reformation' in her response to [defendant's] motion for summary judgment, [plaintiff] never sought to invoke the circuit court's equitable power to reform the insurance policy; contract reformation requires proof of (1) mutual mistake or (2) mistake on the part of one party and fraud on the part of the other, and [plaintiff] did not allege fraud, mistake, or unfair dealing, or assert that evidence of those things existed." *Id.* at 123 (internal quotation marks and citations omitted)).[5] This explains why, even today, parties seeking reformation expressly include that claim or defense in their pleadings.[6]

Because Schnatter did not allege reformation or mutual mistake, the Court is not permitted to reform the Team Member NDA.

### 2. Schnatter Cannot Amend His Pleadings to Add a Reformation Claim

Under Fed. R. Civ. P. 15(b), there are only two circumstances in which a party may amend his pleading during or after trial. First, under Rule 15(b)(1), "[i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended." At trial, Laundry Service objected to the admission of parol evidence to alter or vary the meaning of any term in the NDA because Kentucky permits such evidence only where plaintiff

---

[5] The Sixth Circuit has recognized that reformation is distinct from breach of contract under Kentucky law and must be specifically pleaded within the relevant statute of limitations. *See In re Hensley*, 578 F. App'x at 531-532 (holding the belated reformation claim was time-barred and refusing to relate the claim back to the filing of the action).

[6] *See, e.g.*, *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702 (Ky. 2014); *see also In re Hensley*, 578 F. App'x 530, 531 (6th Cir. 2014); *Tecossl, Inc. v. Avid Labs, LLC*, 2024 WL 643222, at *2 (E.D. Ky. Feb. 15, 2024); *Al J. Schneider Co. v. Hartford Fire Ins. Co.*, 2021 WL 5702433, at *6 (W.D. Ky. Dec. 1, 2021); *Lyles v. RDP Co.*, 2016 WL 4083468, at *4 (W.D. Ky. Aug. 1, 2016), *aff'd*, 702 F. App'x 385 (6th Cir. 2017).

pleads "a reformation claim based on mutual mistake," and plaintiff "did not plead it here" and "specifically disavowed reformation." *See supra* p. 2. Facing this objection, Schnatter did not move to amend his complaint to allege reformation or mistake. Thus, Rule 15(b)(1) is inapplicable.

Second, under Rule 15(b)(2), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Here, reformation and mutual mistake were not tried by implied consent because (1) Schnatter disavowed a reformation claim in his summary judgment filings; (2) Laundry Service objected to the admission of parol evidence for all purposes, including reformation or mutual mistake; and (3) Laundry Service specifically objected under Rule 15 to trying a reformation claim by implied consent. But even had Laundry Service failed to object, the admission of evidence relevant to both a pleaded issue and unpleaded issue is not sufficient to establish implied consent. *See Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992). Schnatter asserts parol evidence is relevant to his breach of contract claim. Therefore, the admission of such evidence cannot supply the basis for implied consent regarding a separate claim for reformation. "Rule 15(b) does not permit a plaintiff to submit an assortment of evidence at trial and determine only afterwards which legal allegations fit the evidence; it is not designed to allow parties to change theories in mid-stream." *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 595-96 (6th Cir. 2015). "Nor may a court do the same thing on the plaintiff's behalf." *Id.*

Schnatter also could not have tried reformation and mutual mistake by implied consent because, under Kentucky law, all parties to the contract are necessary and must be joined. *See, e.g., Crawford v. Mills*, 2015 WL 5656244, at *3 (Ky. App. Sept. 25, 2015) (all parties "whose interests will be affected by the reformation of the instrument[] are necessary parties to the action"); *Swiss Oil Corp. v. Hupp*, 22 S.W.2d 1029, 1031-32 (Ky. 1928) ("[N]o reformation may

be had to the detriment of intervening rights of third parties."); *see also* 76 C.J.S. Reformation of Instruments § 87 ("Failure to join necessary parties in an action for reformation is a jurisdictional defect that makes the proceeding void."). Here, a claim for reformation requires Papa John's as a party because its interests would be affected, but Schnatter failed to join Papa John's.[7]

### 3. Schnatter Did Not Prove Reformation or Mutual Mistake

Schnatter's proof fell far short for a reformation claim, anyway. To reform a written contract based on mutual mistake, the party seeking reformation must prove three elements: "First, it must show that the mistake was mutual, not unilateral. Second, the mutual mistake must be proven beyond a reasonable controversy by *clear and convincing evidence*. Third, it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument." *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d at 703 (Ky. 2014) (emphasis in original) (internal quotation marks and alternations omitted). Schnatter did none of those things.

First, Schnatter did not prove by clear and convincing evidence there was a mutual mistake common to all parties (including Schnatter). *See Dulworth*, 246 S.W.2d at 995 (holding the mistake must be "common to both parties, or to all, if more than two."). Schnatter did not offer any evidence regarding his intent (or mistake) at the time of the Team Member NDA; there is no evidence he even knew about the agreement.[8] Indeed, he was out of Kentucky at the time of trial. This alone forecloses reformation based on mutual mistake.

Second, reformation requires a prior agreement between the parties, which, because of a mutual mistake, was not reflected in the written instrument. If there were no prior agreement,

---

[7] Laundry Service asserted failure to name a necessary party as an affirmative defense in its Answer. *See* DN 286, at PageID#: 8657. Trial established that the Team Member NDA imposes obligations on Papa John's, including paying for all arbitration costs.

[8] Counsel represented that Schnatter lacked personal knowledge about the agreement. DN 373, at PageID#: 10187.

reformation is not available. *Nichols*, 423 S.W.3d at 703 (holding the parties must have "actually agreed upon terms different from those expressed"); *see also* 27 Williston on Contracts § 70:100 (4th ed.) ("Reformation is unavailable without evidence of a prior agreement to which the existing, mistaken, written contracts may be reformed."). Here, Laundry Service never discussed the terms of an NDA with Papa John's; the only agreement is the signed Team Member NDA. Wollrich Tr. Vol. 2 at 49:3-8; DN 373, at PageID#: 10175. Thus, Schnatter has not proven that the parties expressly agreed to execute the Vendor NDA but did something else by mistake.

Finally, because reformation is equitable, the party seeking reformation must prove it exercised reasonable diligence. *See Karrick v. Wells*, 307 S.W.2d 929, 932 (Ky. 1957) (holding equity "requires that the party who seeks relief on the ground of mutual mistake shall have exercised the degree of diligence which may be fairly expected from a reasonable person."). "Contract reformation is not available where the complaining party negligently failed to detect the fraud or mistake." *Gray v. First Nat. Mortg. Co., of Evansville*, 2003 WL 1343470, at *1 (Ky. App. Feb. 21, 2003).

There is no evidence that Schnatter (or Papa John's) exercised reasonable diligence in failing to discover that the wrong contract was sent. On the contrary, it seems Schnatter and Papa John's failed even to the read the Team Member NDA. Matter testified that if he would have seen the agreement, it would have raised questions for him. DN 373, at PageID#: 10160. This lack of diligence in discovering the mistake precludes reformation. *See Gray*, 2003 WL 1343470, at *1 (refusing to reform contract; "As a general rule, a literate party's failure to read a readily legible written contract amounts to such negligence and will preclude that party from later complaining that the writing did not say what she believed it did.").

**B.** **Schnatter Cannot Seek Reformation Under the Guise of Contract Interpretation**

Instead of pleading a claim for reformation, Schnatter asks this Court to "interpret" the Team Member NDA to bind Laundry Service and "interpret" the terms of the Team Member NDA to apply to Laundry Service. What Schnatter really asks is for this Court to transform the Team Member NDA into the Vendor NDA—under the guise of contract interpretation—to remedy Papa John's mistake. The Court is not permitted to do so. Parol evidence is not admissible to alter or vary the terms of a contract, unless there is a claim of fraud or mistake. *Goodin v. Page*, 29 S.W.2d 581, 582 (Ky. 1930) ("It is a well-settled rule that parol evidence to vary the terms of a written contract is inadmissible in the absence of an allegation of fraud or mutual mistake); *see also Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, 2013 WL 2242648, at *4 (W.D. Ky. May 21, 2013) ("[O]ne cannot use parol evidence or assert, after the fact, that [the contract] terms do not say what the party intended them to say to create ambiguity in an otherwise unambiguous document.").

Rather, this Court must interpret the Team Member NDA according to the plain meaning of the terms within its four corners. DN 345, at PageID#: 9536-9539; *see also Smith v. Crimson Ridge Dev., LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013) ("A contract is interpreted by looking solely to the four corners of the agreement."). Thus, the Court must answer two questions: (1) whether Team Member NDA binds Laundry Service; and (2) whether the provisions at issue apply to Laundry Service. As explained below, the answer to both questions is no.

### 1.   <u>The Team Member NDA Does Not Bind Laundry Service</u>

The terms of the Team Member NDA do not bind a corporation; they bind the individual "Team Member" who signs the agreement. The body of the Team Member NDA does not refer to Laundry Service (or any vendor). The signature block does not refer to Laundry Service (or any vendor) and does not have space for the individual signatory to include a corporate title.

Instead, the body of the NDA and signature block repeatedly refers to the "Team Member."

That term is defined in the Ethics Code— which is expressly incorporated into the NDA and is therefore part of the agreement, *Univ. of Ky. v. Regard*, 670 S.W.3d 903, 913 (Ky. 2023)—to mean "all officers, directors and employees of the Company, unless otherwise indicated." *See supra* pp. 1-2. Plainly, Laundry Service is not a Team Member.

The definition of "Team Member" also is consistent with the other terms included in the NDA and the Ethics Code. *Id.* For example, the NDA and the Ethics Code repeatedly refer to the "employment" of the Team Member, impose obligations on employees based on service to their employer, and distinguish Team Members from third-party vendors. *Id.* Thus, on its face, the Team Member NDA does not remotely suggest that Laundry Service is bound.

Recognizing this problem, Schnatter invents ambiguity by resorting to extrinsic evidence. Schnatter asserts the Team Member NDA is ambiguous because it is "on a form generally used for employees of Papa John's but is signed by a non-employee of Papa John's." DN 346, at PageID#: 9573. But Kentucky law does not permit courts to "consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written" in determining whether a contract term is ambiguous. *See Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954). Rather, such parol evidence can only be considered after the court determines a contract term is ambiguous on the face of the contract. *Id.*

Schnatter also asks this Court to find ambiguity based on Laundry Service's intent to be bound. But as the Kentucky Supreme Court has explained, courts are not permitted to rely on direct evidence of intention to create an ambiguity. *See e.g.*, *Hensley v. Gadd*, 560 S.W.3d 516, 522 (Ky. 2018) ("In *O.P. Link* [*v. Wright*, 429 S.W.2d 842, 847 (Ky. 1958)], we admonished against giving a writing meaning which is not to be found in the instrument itself under the guise of interpretation based on direct evidence of intention."). Indeed, "[t]he fact that a party may have

intended different results is inadequate to construe a contract at variance with its plain and unambiguous terms." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 784 (Ky. 2017); *see also Cal. Union Ins. Co. v. Spade*, 642 S.W.2d 582, 583 (Ky. 1982) (a contract must "be construed by what it says, not by what the parties meant for it to say"). Nor are courts permitted to read an ambiguity into a contract to achieve a more palatable outcome. *See First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 836 (Ky. App. 2000).

Even were parol evidence admissible, the offered evidence does not establish that Papa John's (or Schnatter) intended for Laundry Service to execute the Team Member NDA. The parol evidence reveals that Papa John's sent Laundry Service the wrong contract. *See supra* pp. 2-3. John Matter testified that the Team Member NDA is only used to bind employees, not vendors. *Id.* He had no knowledge of why the Company sent the Team Member NDA. *Id.* Wollrich, who sent the Team Member NDA, could not say either. *Id.* The Court is not permitted to remedy Papa John's mistake by rewriting the Team Member NDA to look more like the Vendor NDA Papa John's meant to send. That requires a reformation claim, which Schnatter did plead or prove.[9]

## 2.    The NDA's Provisions Do Not Apply to Laundry Service

The arbitration and confidentiality provisions also do not apply to Laundry Service by their plain terms because they apply only to "Team Member[s]" and refer to their "employment." DX-20. Laundry Service is not among the "officers, directors and employees of the Company" and therefore is not covered by these specific provisions even if (somehow) bound by the agreement

---

[9] To the extent there is conflicting parol evidence, Kentucky strictly adheres to the rule of *contra proferentem*, i.e., any ambiguity in a contract is resolved against the party who drafted the contract. *See, e.g.*, *McMullin v. McMullin*, 338 S.W.3d 315, 322 (Ky. App. 2011); *Welch v. Bd. of Ed. of Magoffin Cnty.*, 247 S.W.2d 536, 538 (Ky. 1952). Because Schnatter and Papa John's drafted the agreement, Schnatter cannot take advantage of any ambiguity in the Team Member NDA. This rule applies with particular force where, as here, the agreement is a "standardized" or "adhesion" contract presented as "take it or leave it." *Kentucky Lottery Corp. v. Casey*, 862 S.W.2d 888, 889 (Ky. 1993); *Friction Materials Co. v. Stinson*, 833 S.W.2d 388, 391 (Ky. App. 1992).

generally. And "employment"—consistent with the term "Team Member"—applies to an employee, not a third-party vendor.

Even were these terms ambiguous, the uncontroverted parol evidence is that "Team Member" means employee of Papa John's. *See supra* pp. 2-3. There is no evidence that the term "Team Member" means Laundry Service.

To fit a square peg into a round hole, Schnatter argues that, because the parties intended to bind Laundry Service to *a* confidentiality agreement, the terms of the Team Member NDA should just be read to apply to it. That is, "Team Member" must mean "Laundry Service, "employment" must mean "engagement," and provisions in the NDA applying to employees (not vendors) must be read out of the NDA, and so on. But re-writing those plainly stated terms requires reformation—not interpretation.

## C.     The Team Member NDA and the Arbitration Provision Are Not Supported by Valid Consideration

The Team Member NDA also fails because there was not consideration to support the contract or its arbitration provision.

Schnatter suggests the purported recitals of consideration in the Team Member NDA are themselves sufficient to establish adequate consideration. That is not the law. In Kentucky, "[t]he consideration of any writing, with or without seal, may be impeached or denied by pleading." Ky. Rev. Stat. § 371.030. Thus, "the true consideration of any instrument may be shown by parol, even without a charge of fraud or mistake." *Com., Dep't of Highways v. Schmehr*, 388 S.W.2d 131, 133 (Ky. 1965); *see also Fineman v. McCullough*, 2008 WL 612352, at *3 (Ky. App. Mar. 7, 2008) (holding "extrinsic evidence is permissible to demonstrate a lack of consideration"). The evidence introduced at trial establishes that the Team Member NDA and its arbitration provision are not supported by adequate consideration.

Schnatter asserts that "continued employment" is adequate consideration. Not so. Laundry Service was not an employee and thus did not receive "continued employment" as consideration. Rather, its engagement was governed by the pre-existing MSA. Under Kentucky law, that means there must be new consideration to support new obligations. *See Martin v. Pack's Inc*., 358 S.W.3d 481, 484 (Ky. App. 2011) ("[A] material alteration in the terms of an existing agreement cannot be enforced unless a consideration for the change enures to the party whom the new agreement is being enforced against."). Continued employment is also not new consideration under Kentucky law. *See Cnty. Ties of Am., Inc. v. NDT Care Servs., LLC*, 2015 WL 520960, at *20 (W.D. Ky. Feb. 9, 2015) ("As early as 1981, Kentucky law has required that an employment agreements [sic] signed by employees *after the date of his or her initial employment* must be supported by *more* than just continued employment to be enforceable. (emphasis in original)).

Schnatter additionally asserts Laundry Service gained access to confidential information about Schnatter through the Team Member NDA. But Laundry Service already had such access under the confidentiality provision in the MSA. The evidence showed that Laundry Service was privy to confidential information regarding Papa John's and Schnatter long before the Team Member NDA was executed on April 9, 2018. Schnatter has repeatedly admitted that the MSA's confidentiality provision allowed Laundry Service access to confidential and proprietary information about him that was necessary for Laundry Service to do its job. *See supra* pp. 3-4. These repeated assertions are fatal admissions and defeat his argument that the Team Member NDA provided new access to confidential information as consideration.

Moreover, as explained in the opening trial brief, the arbitration provision is not sufficient consideration to support the contract as a whole. *See* DN 345, at PageID#: 9542-9544.

Finally, even treating the arbitration provision as separable, the provision is not supported

by adequate consideration in this unusual case.  In the usual case, the party asserting the arbitration provision is invalid cannot assert that the provision lacks consideration, because the party moving to compel arbitration both promised to arbitrate and delivered on that promise.  The situation here is different; Laundry Service asserts the arbitration provision is invalid and lacks consideration because Schnatter continues to refuse to arbitrate his claim.  This refusal constitutes a substantial failure of consideration, warranting recission.  *See, e.g.*, *O.P. Link*, 429 S.W.2d at 845.

D.    <u>**Laundry Service Did Not Waive Its Right to Arbitration**</u>

Laundry Service did not waive a right to arbitration.  *See* DN 289, 299.  Rather than repeat all its arguments here, Laundry Service refers the Court to its previous submissions.

The bench trial itself confirms there was no waiver.  Because the purported right to arbitrate is uncertain, the Court ordered a bench trial to determine whether the Team Member NDA and its arbitration provision bound or applied to Laundry Service.  Even now, Laundry Service continues to dispute a right to arbitrate under the Team Member NDA because it is the wrong contract.

Nor could Laundry Service have raised its arguments attacking the Team Member NDA by filing a claim in arbitration in the first instance.  As a matter of law, if it had done so, Laundry Service could have been found to have abandoned its right to challenge the issue of contract formation.  *See PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697-98 (6th Cir. 2019) (collecting cases holding "a party waives its ability to challenge an arbitration agreement when it demands arbitration"); *see also* DN 346, at PageID#: 9574.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, judgment should be entered in favor of Laundry Service.

Dated: June 5, 2024

Respectfully submitted,


*/s/ Michael P. Abate*

Bert H. Deixler (*pro hac vice*)
 Email:  bdeixler@kbkfirm.com
Patrick J. Somers (*pro hac vice)*
  Email: psomers@kbkbfirm.com
David T. Freenock (*pro hac vice*)
Email: dfreenock@kbkfirm.com
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone:  310.556.2700
Facsimile:   310.556.2705

Michael P. Abate (*pro hac vice*)
 Email:  mabate@kaplanjohnsonlaw.com
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, Kentucky 40202
Telephone:   502.416.1630




*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2024, I filed the foregoing with the Court and served it on all parties by filing it through the Court's CM/ECF system.

/s/ Michael P. Abate
Counsel for Defendant