UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00003-BJB-CHL

**JOHN H. SCHNATTER,**  Plaintiff,

v.

**247 GROUP, LLC, et al.,**  Defendants.

## MEMORANDUM OPINION & ORDER

In a March 14, 2022 report and recommendation (DN 194), later adopted by District Judge Benjamin J. Beaton on September 21, 2022 (DN 219), the undersigned granted Defendants' motion for discovery sanctions (DN 151) and ordered Plaintiff John H. Schnatter to pay the reasonable costs and attorneys' fees incurred by Defendants in prosecuting the motion. (DN 194 at PageID # 391.) As directed, Defendants filed billing records and corresponding declarations requesting that Schnatter be ordered to pay $102,238.50 in attorneys' fees. (DN 195.) Schnatter filed a response. (DN 199.) Therefore, this matter is ripe for review.

**I.      BACKGROUND**

On October 25, 2021, Defendants moved for discovery sanctions against Schnatter for the destruction and spoliation of text messages and electronic devices. (*See* DN 151.) The Court found Schnatter's conduct to be sanctionable under Federal Rule of Civil Procedure 37 and awarded attorneys' fees and costs as necessary to cure the prejudice cause by the misconduct. (DN 194 at 3910-11.) Schnatter was ordered to pay reasonable Defendants' costs and attorneys' fees incurred in prosecuting their motion, including the costs associated with correspondences and conferences with Schnatter after the October 29, 2020 deficiency letter, the August 12, 2021 and August 17, 2021 status conferences, and briefing the motion. (*Id.* at 3913; *see also* DN 219.)

Defendants seek attorneys' fees in the amount of $102,238.50 for 198.3 hours of time billed across six attorneys from two law firms, California-based firm Kendall Brill & Kelly LLP ("KBK") and Louisville-based firm Kaplan Johnson Abate & Bird LLP ("Kaplan"). Defendants do not seek any additional costs. Schnatter opposes Defendants' proposed fee award, disputing both the reasonableness of the hourly rates and the number of hours reasonably expended.

## II.     LEGAL STANDARD

Defendants propose an award of attorneys' fees based on the "lodestar" method. (DN 195 at 3918-19.) Under the "lodestar" method, attorneys' fees are determined by multiplying the number of hours reasonably expended on this litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). In assessing whether a rate charged is reasonable, "courts use as a guideline the prevailing market rate … that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). "The party seeking attorneys' fees beard the burden of proving reasonableness of the hourly rates claimed." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F.App'x 496, 498 (6th Cir. 2011) (quoting *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)).

## III.    ANALYSIS

As a preliminary matter, the Court will note that Defendants' declaration contains mathematical and/or typographical errors. It is impossible to discern how Defendants' counsel arrived at their respective conclusions without a show of their work, but the accuracy of KBK's statements is in question. In its declaration, KBK asserts that its attached invoices were reviewed and that counsel "reduced total hours billed each month as to eliminate any charges for unnecessary

duplication of effort." (DN 195 at 3921.) The declaration then lists the total hours billed for each KBK attorney presumably after applying reductions—45.4 hours for Somers, 1.9 for Deixler, 26.3 for Cambeiro, and 49.9 for Srinivasan. (*Id.*) Note that these hours are what one might expect to see on the attached invoices. On the next page, KBK applies the lodestar method to propose the following as its reasonable attorneys' fees[1]:

| *Attorney* | *Total Fees* |
|---|---|
| Bert Deixler | $1,237.50 |
| Patrick Somers | $36,080.00 |
| Nicole Cambeiro | $17,347.00 |
| Priya Srinivasan | $25,287.00 |

(*Id.* at 3922.) Thus, the total of KBK fees sought is $79,951.50.

The sum of $79,951.50 is incorrect if intended to be the sum after reduction. For example, Cambeiro's fee of $17,347.00 would represent 34.7 hours at a rate of $500 per hour (including 0.3 hours billed at $490) and not 26.3 hours. Srinivasan's fee of $25,287 would represent 50.7 hours of work at a rate of $500 per hour (including 4.2 hours billed at $485) and not 49.9 hours. It reasonably appears that $79,951.50 as the full amount of KBK's fees is the result of KBK simply failing to account for its own reductions. This might have been a harmless error, easily corrected by multiplying the reduced hours by the attorneys' standard rates. But the error compounds with Deixler's and Somers's hours, which are higher *after* KBK's review. Specifically, the invoice reflects that Deixler billed 1.1 hours and that Somers billed 45.1 hours, but this is "reduced" to 1.9 and 45.4 according to KBK's declaration. (*Id.* at 3921-25)

While simple errors are typically not cause for concern, the outcome here is that a reduction ultimately did not occur, and the discrepancies do not allow for a mathematical correction by the

---

[1] Defendants' affidavit also proposes reasonable attorneys' fees for Kaplan attorneys Michael Abate and Chuck Stinson that are not shown here. (*See* DN 195 at 3922.)

Court. Schnatter further asserts that Defendants' proposal is unreliable as the attached invoices are not the same invoices submitted to Defendants, which would disclose exactly what was charged and what, if anything, Defendants paid. (DN 199 at 3944.) There is no requirement that Defendants submit additional records other than those already before the Court. However, due to the errors, the Court will refer to only the hours and rates reflected on the invoices for the lodestar calculation as there is sufficient detail in them to determine accuracy and therefore to determine reasonableness.

### a. Reasonable Rates

The Parties dispute the reasonable hourly rate for Defendants' counsel from KBK. The rates billed by KBK and Kaplan attorneys in this matter[2] are as follows:

| Attorney | Years of Practice | Hourly Rate |
|---|---|---|
| **Kendall Brill & Kelly LLP** | | |
| Bert Deixler | 45 | $1,125.00 |
| Patrick Somers | 13 | $800.00 |
| Nicole Cambeiro | 5 | $500.00 |
| Priya Srinivasan | 4 | $500.00 |
| **Kaplan Johnson Abate & Bird LLP** | | |
| Michael Abate | 16 | $425.00 |
| Burt Stinson | <1 | $210.00 |

(DN 195 at 3923-25, 195-1 at 3930-31.)

In assessing whether a rate charged is reasonable under the lodestar method, "courts use as a guideline the prevailing market rate ... that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter*, 510 F.3d at 618.

---

[2] Cambeiro and Srinivasan billed at hourly rates of $490 and $485 per hour respectively in 2020, during which Cambeiro billed 0.3 total hours and Srinivasan billed 4.2 hours. The remaining 34.9 hours billed by Cambeiro, and 46.5 hours billed by Srinivasan were in 2021 and at increased rate of $500 per hour commensurate to the increase in year of experience. Given that the majority of hours were billed in 2021, this table incorporates data from only 2021.

Schnatter argues that the requested rates are inconsistent with Kentucky's prevailing market rate. (DN 199 at 3938.) Defendants assert that courts have looked "to the actual hourly rate that an attorney billed and/or the rates that the attorney charges in general" and suggest that the usual rate be considered instead of prevailing market rates where, as here, the attorney bills a client by the hour as opposed to billing in the context of fee-shifting statutes. (DN 195 at 3920.) Defendants rely on *Kelley*, *Scales*, and *Gascho*, but each of these addresses application of the lodestar method solely in the context of fee-shifting statutes and none support accepting KBK's usual rates as reasonable outside of the fee-shifting context or at the exclusion of prevailing market rates. *See Kelley v. Metro. Cty. Bd. Of Educ.*, 773 F.2d 677, 683 (6th Cir. 1985); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901 (6th Cir. 1991); *Gascho v. Glob. Fitness Holdings, LLC*, 833 F.3d 269 (6th Cir. 2016). In *Kelley*, the Sixth Circuit utilized the prevailing market rate to set a "minimum point of departure" and determined a range from which a reasonable hourly rate could be derived. 773 F.2d at 683. The attorney's usual hourly rate was listed but not discussed otherwise, except to approve a reduction in the rate to compensate for the attorney's inexperience. *Id.* at 684. In *Scales*, the party seeking fees requested that the court award the greater prevailing market rate of $140 for its local attorneys instead of the attorney's *lesser* usual rate. 925 F.3d at 909. The court rejected this proposal and utilized the lesser rate. *Id.* When the opposing party challenged the court's failure to consider prevailing market rates, the Sixth Circuit explained that the district court "did not have to engage in this inquiry because [the court] had previously been given the actual billing rates of [the] attorneys" during the discovery phase. *Id.* This is distinguishable because utilizing the prevailing market would have increased the hourly rate, not decreased it as is the case here. In *Gascho*, the situation was reversed. 833 F.3d at 280. The lower court awarded fees at a higher rate than the prevailing market to incentivize class action litigation and "best ensure that Class

Counsel is fairly compensated … and fairly accounted for the risk to Class Counsel and the policy underlying the fee shifting statutes." *Id.* at 281. The Sixth Circuit agreed, stating that the lower court's decision to apply the lodestar method "was undoubtedly within [its] discretion[.]" *Id. Gascho* was the only decision supportive of an increased rate, but that increase was reasonable in light of policy considerations that are not applicable here. None of the above cases supported a direct reimbursement of the usual rate without inquiry as to the reasonableness of the rate against the prevailing market.

Defendants also point to four Los Angeles Superior Court decisions from 2015 and 2018 approving KBK's rates at a minimum of $479 to as much as $891 for partners. (*Id.*) However, "[t]he typical charge of a foreign counsel for work performed within the geographic area where he or she maintains his or her office or normally practices is *not* determinative" when determining the reasonableness of rates. *LaQuinta Corp. v. Heartland Properties, LLC*, No. 3:05CV-328-S, 2009 WL 10728149, at *6 (W.D. Ky. Apr. 30, 2009) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citations omitted)). Further, "[w]hile courts in this circuit may apply an out-of-town rate for work done by a non-local specialist, they must first 'determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation.'" *York v. Velox Express, Inc.*, No. 3:19-CV-00092-CHL, 2022 WL 20804127, at *11 (W.D. Ky. Mar. 25, 2022) (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). Although Defendants highlight the unique qualifications and experience of the attorneys that worked on this case, "[they] offer nothing showing that the case 'required specialized expertise that was unavailable in the [local] legal market' or that counsel local to the area lacked the resources or ability to handle the case." *Clark v. W. Iris Transp., Inc.*, No. CV 18-168-DLB-

6

CJS, 2020 WL 2781601, at *4 (E.D. Ky. Feb. 27, 2020), report and recommendation adopted, No. CV2018168WOBCJS, 2020 WL 2789910 (E.D. Ky. Mar. 19, 2020) (quoting *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018)). Therefore, out-of-town rates are not an appropriate starting place for the lodestar calculation. The Court will determine the local market rate that counsel can reasonably expect to command in this venue based on the Court's experience and judgment.

The prevailing market can be determined in part using the rates of co-counsel at Kaplan, who are "competent counsel" with rates "available locally at a lower charge" that the Court may apply "to the services provided by the out-of-town specialist." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citing *Hadix*, 65 F.3d at 535). Schnatter does not challenge Kaplan's rates but assumes the rates are reasonable within the market to protest against KBK's rates. Schnatter's assumption is not mistaken. In 2009, this Court noted that it was not aware of any published or unpublished federal opinion arising in this district that upheld an attorney's fee request based upon a billing rate of $305 an hour and, in doing so, set a $300 an hour rate for an attorney with some 20 years of successful experience in litigating franchise disputes. *La Quinta*, 2009 WL 10728149, at *12. Hourly rates have naturally increased since that time and, as of 2022, "federal courts in and around Kentucky recently have found that hourly rates between approximately $300 and $400 represented reasonable partner rates" in other types of federal actions, such as in employment disputes. *York*, 2022 WL 20804127, at *11 (quoting *Hendricks v. Quickway Transportation, Inc.*, No. 3:20-CV-710-BJB-CHL, 2021 WL 1235265, at *4 (W.D. Ky. Apr. 2, 2021) (collecting cases)). For example, this Court has awarded up to $525 per hour for the work of a senior partner in a trademark infringement action. *See Chimney Safety Institute of America v. First Call Chimney Service, LLC*, No. 3:19-CV-705-CRS, 2020 WL

3065624 at *2 (W.D. Ky. June 9, 2020). Given this range and that local co-counsel's rate falls within it, the Court finds Kaplan's rates to be reasonable and that Defendants have not met their burden to establish the reasonableness of billing a rate 61% to 90% higher than local co-counsel. Somers in 2021 had just under 15 years of experience in complex business litigation with an emphasis on media and entertainment litigation. (*Id.* at 3916-17.) Abate had just over 15 years of experience in the same or more areas, including media litigation, with a standard rate of $425 per hour. (DN 195-1 at 3927.) While Deixler's accomplishments and experience of over 45 years are impressive, Defendants fail to establish whether this case required his specialized expertise or that it was unavailable in the local market. Therefore, the hourly rates for Somers and Deixler will be reduced from $800 and $1,125 respectively to $425. The hourly rates for Cambeiro and Srinivasan will be reduced from $500 to $250 to align more closely with Stinson's associate rate of $210 but taking into consideration that Cambeiro and Srinivasan's practice experience exceeded Stinson's by four and five years.

### b. Reasonable Hours

Defendants' counsel billed 198.3 hours in total in prosecuting the motion. Schnatter moves the Court to apply a reduction of 102 hours for time unreasonably spent in doing so. (DN 199 at 3942.) The Court agrees that a reduction is warranted. Although "multiple representation can be productive[,]" there is also "the danger of duplication, a waste of resources which is difficult to measure." *Howe v. City of Akron*, No. 5:06-CV-2779, 2016 WL 916701, at *10 (N.D. Ohio Mar. 10, 2016) (quoting *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986)). Here, considering the lengths of the Motion and Reply, it appears that Defendants' counsel billed approximately three hours per page writing the two documents. Not only is this amount excessive for the task at hand, but the overlaps in time expended by multiple attorneys is indicative of inefficient or

duplicative work. Abate spent six hours drafting the Motion between October 11 and 14, 2021. (DN 195-1 at 3930.) A few days later, on October 18, 2021, Abate and Stinson spent another 15.6 hours drafting the same, although they worked on different sections. (*Id.*) The time was not unreasonable at this point. In *Nichols*, the court awarded fees for 20 hours spent researching and briefing a motion for sanctions. *Nichols v. Dwyer*, No. 18-14041, 2021 WL 3260941, at *2 (E.D. Mich. July 30, 2021) (explaining that 20 hours were not unreasonable because "sanctions principles are not as easily researched, analyzed, and briefed" and cover "more nuanced principles and application regarding more debatable propositions like the reasonableness of hours and rates"); *see also Bisig v. Time Warner Cable, Inc.*, No. 3:14-CV-36-DJH, 2018 WL 11474559, at *3 (W.D. Ky. Jan. 30, 2018) (awarding fees for 16.8 hours spent on motion for sanctions and 17.3 hours to draft reply in support of motion); *Marshall v. Rawlings Co., LLC*, No. 3:14-CV-359-TBR, 2018 WL 3028574, at *9 (W.D. Ky. June 18, 2018) (awarding fees for 3.9 hours on a motion for sanctions). Twenty hours is a reasonable starting point where, as here, there are 21 attachments, a complicated factual background, and a motion for leave to seal to file simultaneously. However, we cross into the excessive on October 19, 2021, when at least five attorneys worked on the Motion: Somers (3.00), Cambeiro (1.00), Srinivasan (4.00), Stinson (1.9), and Abate (2.50). (*Id.* at 3930-31; 195 at 3923-25.) Only Srinivasan drafted the motion. (*Id.*) Somers, Cambeiro, and Abate revised while Stinson researched applicable sanctions. (*Id.*) Abate drafted the factual background and Stinson was researching case law, which is sufficient detail to justify the time. (*Id.*) But there is no indication what Srinivasan, Cambeiro, and Somers were drafting or revising to determine whether that time was reasonably spent. On the following day, three attorneys worked on the Motion: Somers (3.5), Srinivasan (2.00) and Stinson (0.6). (*Id.*) Srinivasan drafted, Somers revised, and Stinson prepared the exhibits from his end that would be later merged with

9

those from KBK on date of filing. (*Id.*) A trend starts to develop across the invoices where an associate drafts and then a partner revises for almost as much time as the associate spent writing. As explained in *Nichols*, an associate can be expected to perform the full amount of research and 75% of the drafting whereas a partner would be expected to perform 25% of the writing. *Id.*; *see also Servpro Intell. Prop., Inc. v. Blanton*, No. 3:18-CV-121-RGJ-CHL, 2020 WL 13548024, at *3 (W.D. Ky. Feb. 24, 2020) (awarding 43.6 hours to an associate and 11.2 hours to a partner as reasonable time spent on a motion for sanctions). Although the 75%/25% rubric is at most a rule of thumb, the ratio of associate time to partner time is unquestionably out of balance in the subject invoices.

This trend continues with the Reply filed on December 8, 2021. (*See* DN 171.) On the day before filing, Srinivasan spent five hours researching the Reply at the eleventh hour while Somers spent 10.9 hours revising it for a total of 16.9 hours in a single day. (DN 195 at 3924.) Cambeiro also billed one hour for a meeting between herself, Somers, and Srinivasan, which is mentioned vaguely in the latter's block billing. (*Id.* at 3923-25.) The resulting total is an unreasonable amount of time for a fifteen-page Reply to a Motion that was already extensively researched. On the next day, Srinivasan followed with another 5.3 hours drafting the Reply while Cambeiro spent 2.2 revising. (*Id.*) Srinivasan's hours on these two days are especially notable because she had already spent 15.2 hours researching and drafting the Reply in the week prior. (*Id.*) Somers then billed 6.4 hours alongside Srinivasan's 5.3 and Cambeiro's 2.2 to finalize what he, Srinivasan, and Cambeiro had already spent 45 hours researching, drafting and discussing between November 29, 2021 and December 7, 2021. (*Id.* at 3924.) Their work was then reviewed and revised by both Deixler (0.3) and Abate (1.1), coming out to 15.3 hours spent on the same day the Reply was filed. (*Id.*; 195-1 at 3931.)

KBK records are distinguishable from Kaplan's in that they lack meaningful specificity of the task performed. Multiple attorneys describe billing for an identical task, *e.g.*, revising and drafting, at the same time without differentiation while also referencing communications related to those tasks without specifying with whom the communication is taking place or for how long. The Sixth Circuit has not forbidden the practice of block billing, but attorneys who engage in block billing do so at their own risk. *Howe*, 592 F.App'x at 371. In contrast, Kaplan's records largely avoid the risk of excessive hours by detailing each task with enough specificity to demonstrate the necessity of the time spent. Further, while it appears KBK attempted a good faith effort to exclude unnecessary hours, a reduction in Srinivasan's and Cambeiro's time by 10 hours would have hardly put a dent in the more than a hundred hours spent on a motion for discovery sanctions, especially given that KBK's billing descriptions generally are inadequate to justify such an expenditure. Likewise, although Kaplan's billing is more detailed, it was not reasonable for a partner to spend as much time writing a motion as an associate spent writing it and bill the entirety with no reduction at all under the circumstances. "In the private sector, 'billing judgment' is an important component in fee setting[,]" and "[h]ours that are not properly billed to one's client are also not properly billed to one's adversary[.]" *Id.* Therefore, the Court finds that 198.3 hours was not reasonably spent and, as such, KBK's fees will be reduced by 33% and Kaplan's fees will be reduced by 10%. *Hisel v. City of Clarksville,* No. 3:04-0924, 2007 WL 2822031, at *4 (M.D. Tenn. Sept. 26, 2007) ("A percentage reduction is appropriate where the record suggests that counsel did not write off time that was excessive or unproductive"); *see also Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997) (where the trial court determines that hours are excessive or duplicative, it may make a simple across-the-board reduction by a certain percentage).

      **c. Fee Calculation**

Applying the reasonable hourly rates determined previously, the fees per attorney are as follows: $467.50 for Deixler, $19,167.50 for Somers, $12,675 for Srinivasan, and $8,675 for Cambeiro after accounting for the 0.5 hours billed to zero on April 28, 2021. (*Id.* at 3923.) Because Abate and Stinson's hourly rates were not reduced, the fees amount to $40,985 to KBK and $22,287 to Kaplan for a combined total of 198.3 hours. An additional 33% reduction to KBK and an additional 10% reduction to Kaplan for excessive and duplicative billing results in final awards of $27,459.95 to KBK and $20,058.30 to Kaplan.

**IV.   ORDER**

For the reasons stated above,

IT IS HEREBY ORDERED that Defendants shall be awarded **$47,518.25** in attorneys' fees incurred in pursuing this matter.

Colin H Lindsay, Magistrate Judge
United States District Court

June 24, 2024

cc: Counsel of Record