UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00003-BJB-CHL

JOHN H. SCHNATTER,                                                                        Plaintiff,

v.

247 GROUP, LLC, et al.,                                                                   Defendants.

**MEMORANDUM OPINION & ORDER**

Before the Court is the Motion for Attorneys' Fees Pursuant to KRS 454.478 filed by Defendant Wasserman Media Group, LLC ("Wasserman"). (DN 292.) Plaintiff John H. Schnatter ("Schnatter") filed a response, to which Wasserman filed a reply. (DNs 300, 317.) Therefore, this matter is ripe for review.

For the reasons set forth below, the Wasserman's Motion (DN 292) is **DENIED.**

### I.     BACKGROUND

Defendant Wasserman moves for an award of attorneys' fees and costs pursuant to KRS 454.478, a provision of Kentucky's Uniform Public Expression Protection Act ("KUPEPA"), in connection with Defendants' joint Motion for Summary Judgment (the "Omnibus Motion") (DN 247). The Court's ruling on the Omnibus Motion resulted in the dismissal of all claims against Wasserman. (DN 292 at 8801; *see* DN 279.) The Omnibus Motion was intended to be a consolidation of Defendants' motions for summary judgment, motion to dismiss, and motion pursuant to KUPEPA and was filed in response to Schnatter's second amended complaint (the "SAC") (DN 229). (*See* DN 230.) The SAC asserted three causes of action against Wasserman: (1) breach of contract; (2) intrusion-upon-seclusion; and (3) false light. (DN 229-1 at 4526-31.)

In advance of the SAC's filing on November 18, 2022, the Court ordered that a telephonic status conference be scheduled to "discuss the remaining steps in this litigation necessary to set and reach a deadline for dispositive motions." (DN 228.) The Parties were directed to prepare "specific deadlines for summary judgment … given the need for efficient resolution of this long-running litigation" in anticipation of the conference. (*Id.*) Counsel for the Parties appeared telephonically before District Judge Benjamin J. Beaton on November 23, 2023. (DN 283.) Based on the discussion, Judge Beaton ordered consolidated briefing with respect to Defendants' response to Schnatter's SAC and set deadlines while leaving open the possibility of adjustments to the latter. (*Id.* at 8623-24.) The consolidated brief was limited to forty (40) pages at Defendants' suggestion and due on March 15, 2023. (DN 230.) Upon request, the Court extended the brief's deadline numerous times through April 28, 2023. In addition, on April 27, 2023, the Court granted Defendants' request to extend the brief's page limit to fifty (50). (DNs 243, 244.) On the next day, Wasserman and Laundry Service jointly filed the Omnibus Motion. (DN 247.) The Court also later granted Defendants' request to supplement the Omnibus Motion on a narrow issue unrelated to the instant motion. (DNs 270, 271, 277.)

On August 7, 2023, the Court held a hearing on the Omnibus Motion and granted summary judgment with respect to Schnatter's false light, intrusion-upon-seclusion and breach-of-contract claims against Wasserman. (DN 280 at 8588 ("[W]e're granting summary judgment for Laundry Service and Wasserman on the false light and intrusion upon seclusion claims, granting judgment as unopposed for Wasserman on the breach of contract claim[.]"); *see also* DN 279.) On September 25, 2023, Wasserman filed the instant motion for an award of attorneys' fees, expenses, and costs.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure (the "Federal Rules") govern the procedure in all civil actions and proceedings in the United States District Courts, including circumstances under which cases are dismissed before trial. Fed. R. Civ. P. 1.; *see Abbas v. Foreign Pol'y Group, LLC,* 783 F.3d 1328, 1333-34 (D.C. Cir. 2015). Federal courts sitting in diversity jurisdiction traditionally apply state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). But "[w]hen both a federal rule and a state law appear to govern a question before a federal court," the courts apply a "two-step framework" to determine which law controls. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 421 (2010). To decide which state and federal laws apply, the courts look first to whether there is a valid federal procedural rule on point with the state law. *Id.* A federal rule is on point "when, fairly construed," it is "'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Albright v. Christensen*, 24 F.4th 1039, 1044-45 (6th Cir. 2022) (quoting *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–750 & n.9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). A federal rule is valid if it does not violate the Rules Enabling Act. *Shady Grove*, 559 U.S. at 411.

Kentucky's recently adopted "anti-SLAPP"[1] statute, KUPEPA, permits parties to file a special motion for expedited relief to dismiss causes of action with prejudice. KRS 454.464, 454.472. KUPEPA, like various other anti-SLAPP state statutes, is intended to "decrease the 'chilling effect' of certain kinds of libel litigation and other-speech restrictive litigation . . . by making it easier to dismiss defamation suits at an early stage of the litigation.'" *Peach v.*

---

[1] "SLAPP" is an acronym standing for "strategic lawsuits against public participation." *Peach*, 2024 WL 1748443, at fn. 1 (citing *Santoni v. Mueller,* No. 3:20-cv-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022)).

3

*Hagerman,* 4:22-cv-000133-RGJ, 2024 WL 1748443, at *5 (W.D. Ky. Apr. 23, 2024) (citing *La Liberte v. Reid*, 966 F.3d 79, 85 (2d. Cir. 2020); *see also Abbas,* 783 F.3d at 1332. Under KUPEPA, a party served with a complaint to which KRS 454.460 to 454.478 applies may file a special motion within sixty (60) days of service or "at a later time on a showing of good cause." KRS 454.464. The Court must dismiss the relevant cause of action in whole or in part if three requirements are met. KRS 454.472. First, the movant must establish that the cause of action is based on one or more of three classes of communication set forth in 454.462(1)(a)-(c), including actions based on the movant's exercise of First Amendment speech "on a matter of public concern." KRS 454.472(1)(a); *see also* KRS 454.462(1)(c). Second, the Court must find that the respondent failed to establish that the cause of action falls within one of ten (10) exclusions set forth in KRS 454.462(2)(a), including that the cause of action was asserted "against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication or lack of communication related to the person's sale or lease of the goods or services." KRS 454.472(1)(b); *see also* KRS 454.462(2)(a)(3). Third, one of the following must be met: (1) either the movant establishes that the respondent failed to state a cause of action upon which relief can be granted or that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law or (2) the respondent fails to establish a *prima facie* case as to each essential element of the cause of action. KRS 454.472(1)(c). If the movant prevails "on a motion under KRS 454.464," the movant is entitled to an award of court costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion. KRS 454.478(1).

### III.     ANALYSIS

Schnatter opposes Wasserman's motion on the grounds that Wasserman failed to comply with KUPEPA and that KUPEPA is inapplicable in federal courts. (DN 300.) Wasserman argues only for the applicability of KRS 454.478, *i.e.,* KUPEPA's fee provision, as the "lone provision of the anti-SLAPP law at issue." (DN 317 at 9168.) This Court will determine KUPEPA's applicability in this action as a threshold matter.

Wasserman urges the Court to follow the traditional choice-of-law analysis under the *Erie* doctrine. Wasserman argues that, under *Erie* and its progeny, this Court's application of KRS 454.478 is mandatory. (DN 292 at 8812-13.) In contrast, Schnatter argues that the Court must follow the Supreme Court's decision in *Shady Grove*. Schnatter contends that choice-of-law framework proposed in *Shady Grove* avoids the need to "wade into *Erie's* murky waters" altogether. *Id.* at 398; *see Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The result, Schnatter contends, is that KUPEPA, including KRS 454.478, is preempted by the Federal Rules and therefore inapplicable in this case.

Whether a state law should apply in federal court is surprisingly complex question. The *Shady Grove* decision is a "critical case" that provides much of the answer, but not without debate. *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 940, 947 (10th Cir. 2020). As Schnatter contends, the *Shady Grove* plurality opinion disrupted the "long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law[,]'" otherwise known as the "*Erie* doctrine." *Shady Grove.* 559 U.S. at 417 (J. Stevens, concurring.); *see, e.g., Degussa Admixtures, Inc. v. Burnett*, 277 F.App'x 530, 532 (6th Cir. 2008). *Shady Grove* requires federal courts to apply valid and on-point federal rules to the exclusion of competing state laws in federal diversity actions. *Id.* at 398-99, 407-11. This is accomplished using a two-step framework

5

that evaluates first whether a federal procedural rule controls the area of dispute and then whether that federal rule is valid under the Rules Enabling Act. *Id.* Ultimately, the *Shady Grove* framework looks to "not the substantive or procedural nature or purpose of the affected state law" but to the "substantive or procedural nature of the Federal Rule[,]" which "leaves no room for special exemptions based on the function or purpose of a particular state rule" *Id*. at 411-12.

This would be the end of the matter if not for the concurrence by Justice Stevens in *Shady Grove*. As noted by the plurality opinion, Justice Stevens's concurrence "accepts the framework we apply" but "departs from us only with respect to the second part of the test, *i.e.,* whether application of the Federal Rule violates [subsection (b) of the Rule Enabling Act]." *Id.* at 410-11. The second part of the plurality test is a broad standard, therefore any federal rule governing the judicial process is likely to be valid under the Rules Enabling Act, even if it impacts the parties' ability to recover under a state substantive law. *Id.* at 406-410. Justice Stevens argued for a narrower Rules Enabling Act standard that took the competing state law into consideration. *Id.* at 418-428 (Stevens, J., concurring opinion). In his view, a federal rule could not displace a state law if the state law "actually is part of a [s]tate's framework of substantive rights or remedies" pursuant to subsection (b) of Rules Enabling Act, which prohibits the promulgation of federal rules that "abridge, enlarge, or modify substantive rights." *Id.* at 419 (Stevens, J., concurring opinion). State law need not "take[] the *form* of what is traditionally described as substantive or procedural." Even "[w]hen a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Id.* Under this approach, only state rules that are truly procedural may be displaced by a federal rule.

Wasserman argues that Justice Stevens's concurrence brings us full circle back to the *Erie* doctrine. Schnatter argues that Justice Stevens's concurrence has no impact because it does not

6

control. Fortunately, the Sixth Circuit has interpreted the question for us. In *Albright*, the Sixth Circuit referred to Justice Stevens's concurrence as "controlling" and outlined a multi-step test incorporating *Shady Grove*: First, the court must decide if the state law at issue conflicts with a federal rule of procedure. *Albright*, 24 F.4th at 1044-45. If there is a conflict, the court must then ask whether "the federal rule is a 'general rule [] of practice and procedure" that does "not abridge, enlarge or modify any substantive right" and is "procedural in the ordinary use of the term.'" *Id.* at 1045 (citing *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring opinion). However, in the absence of a conflict between the state law and federal rule, the court must assess whether the twin aims of *Erie* are implicated, namely "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.*; *see Hanna*, 380 U.S. at 468. "If both *Erie* prongs are met, we would then consider whether an overriding federal interest justifies the application of federal law." *Id.*; *see Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 537–38 (1958); *cf. Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 438 (1996).

Wasserman misunderstands the order of operations here. It concludes that KRS 454.478 is "substantive" under *Erie* first and proceeds to assert that "there is no conflict" under the first prong of *Shady Grove* where, as here, only "the substantive provisions" are at issue. But by predetermining the "substantive" nature of KRS 474.478, Wasserman forecloses any possibility of conflict between it and the Federal Rules. A "substantive" law can be defined in the simplest of terms as a law that is not procedural. Thus, any state statute deemed "substantive" as a preliminary matter would fail the first step of *Shady Grove* by its definition. Not only is it logically necessary to apply *Shady Grove* first, but *Albright* makes clear that the *Erie* analysis is only applicable where the court finds an absence of conflict between the federal rule and the affected state law.

7

Before we continue with the *Shady Grove* discussion, it is worth pausing to take stock of Wasserman's approach to *Erie*. Even if the Court were to engage in an *Erie* analysis in lieu of *Shady Grove* and *Albright*, Wasserman's position would remain unpersuasive. Wasserman contends that state rules governing attorney fee awards, such as KRS 474.478, are generally considered to be state "substantive" law under the *Erie* doctrine. Wasserman offers no further explanation, other than to signal that KRS 454.478 is substantive because it "entitles the prevailing party to a remedy." Although it fails to say so, Wasserman is referring to one of two types of attorney's fee awards that courts have recognized under the *Erie* dichotomy. *Cook v. Greenleaf Twp., Michigan*, 861 F. App'x 31, 34 (6th Cir. 2021) (citing *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279–80 (10th Cir. 2011). "When a state legislature allows a party to seek attorney's fees as part of the recovery on a successful state-law claim, federal courts view this legislative 'policy' choice as substantive and so applicable in federal court." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)); *see Degussa*, 277 F.App'x at 532. Conversely, "courts treat an award of attorney's fees for bad-faith litigating conduct as 'procedural' and so governed by federal standards." *Id.* (citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002); *see Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 127 F. App'x 157, 159 (6th Cir. 2005). And, digging deeper, "a state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed" only where the "*state law does not run counter to a valid federal statute* or rule of court[.]" *Barnes v. Sun Chemical Corporation*, 164 F. Supp.3d 994, 998 (W.D. Mich. 2016) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975) (emphasis added); *see Degussa,* 277 Fed. Appx. at 532.

8

There are multiple deficiencies in Wasserman's analysis under *Erie*. First, Wasserman fails to substantiate why KRS 454.478 falls within the substantive category of prevailing party fee statutes. The only explanation offered is that KRS 454.478 is necessary to KUPEPA's purpose "to protect against *meritless* lawsuits," and therefore KRs 454.478 should be "broadly construed as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating himself or herself from a *baseless* lawsuit." (DN 292 at 8809 (quoting *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 448 (2002) (emphasis added)). "Meritless" and "baseless" lawsuits are examples of the bad-faith conduct proposed in the second category of fees, which are deemed "procedural" under *Erie* and so governed by federal rules. By its own statements, Wasserman slides the scale almost entirely towards a finding that KRS 454.478 is preempted. Next, Wasserman fails to resolve the conflict between KRS 454.478 and Federal Rule 11, which already allows courts to award attorneys' fees as a sanction on bad-faith conduct. Here, Wasserman states that "Rule 11 is not a prevailing party statute" like KRS 454.478. (DN 317 at 9171.) This is an answer to the wrong question. Rule 11 is not at issue here. And under Wasserman's analysis, KRS 454.478 would be rendered procedural.

Similarly, there is no mention by Wasserman of the reality that anti-SLAPP statutes do not always fare well under *Erie*. Although federal circuit courts overwhelmingly follow the *Shady Grove* framework to evaluate anti-SLAPP statutes, there is one that follows the *Erie* doctrine and illustrates KUPEPA's precarious position. The Tenth Circuit set the stage for New Mexico's anti-SLAPP statute by explaining that an *Erie* analysis is triggered "[w]here the line between procedure and substance is unclear[.]" *Los Lobos Renewable Power, LLC v. Americulture, Inc,* 885 F.3d 659, 668 (10th Cir. 2018); *see generally* Erwin Chemerinsky, *Federal Jurisdiction* § 5.3, at 351–365 (7th ed. 2016). It finds, however, that there is "no need to rely on any complex *Erie* analysis"

9

with respect to the anti-SLAPP statute "because, assuming one is able to read, drawing the line between procedure and substance in this case is hardly a 'challenging endeavor.'" *Id.* Specifically, "the plain language of the [statute] reveals the law is nothing more than a *procedural* mechanism designed to expedite the disposal *of frivolous* lawsuits aimed at threatening free speech rights." *Id.* (emphasis added). Like the Tenth Circuit, this Court can see that KUPEPA is a procedural mechanism for expedited dismissal. Schnatter and Wasserman can see this as well, and do not dispute it. And, although anti-SLAPP laws like KUPEPA and its New Mexico equivalent "[do] not expressly refer to frivolous or retaliatory lawsuits… the entire statute is aimed at a type of 'baseless' lawsuit." *Id.* Therefore, we can conclude that KRS 454.478 is a procedural provision of a procedural statute. These are the relevant considerations Wasserman fails to answer or even discuss. Without more, it appears that the traditional choice-of-law analysis under *Erie* serves to weaken—rather than bolster—Wasserman's position.

Returning to the discussion regarding *Shady Grove* and *Albright,* the Court finds that Wasserman's attempt to sever KRS 454.478 from KUPEPA also fails at this juncture. Without *Erie*, there is no basis to hold KRS 454.478 apart from KUPEPA at the outset of the Court's analysis. Even with *Erie*, it is likely that KRS 454.478 would be deemed procedural, warranting an evaluation of KUPEPA in its entirety. Further, the plain language of KRS 454.478 indicates that the fee award is inseparable from KUPEPA's dismissal procedures. *See* KRS 454.478 ("On *a motion under KRS 454.464*… the court shall award court costs, reasonable attorney's fees and reasonable litigation expenses related to the motion"); *see Klocke v. Watson*, 936 F.3d 240, 247 at fn. 6 (5th Cir. 2019) ("[attorney's fees] provisions are not applicable apart from the burden-shifting early dismissal framework" of anti-SLAPP statute"). Having concluded that KRS 454.478 cannot function alone, we turn at last to KUPEPA's viability under the *Shady Grove* and *Albright* test.

Most anti-SLAPP statutes do not survive the first prong of the *Shady Grove* and *Albright* test. KUPEPA is no exception. The Second, Fifth, Eleventh and District of Columbia Circuits rejected the application of anti-SLAPP statutes in federal courts due to their conflict with Federal Rules 12 and 56. *La Liberte,*, 966 F.3d 79, 86-88 & n.1 (California's anti-SLAPP statute); *Klocke*, 936 F.3d at 246-48 (Texas's anti-SLAPP Statute); *Carbone v. Cable News Network, Inc*., 910 F.3d 1345, 1349-57 (11th Cir. 2018) (Georgia's anti-SLAPP Statute); *Abbas*, 783 F.3d at 1333-37 (D.C.'s anti-SLAPP Statute). As Wasserman correctly recognized, KUPEPA's dismissal framework "impose[s] certain procedural requirements … that could not be applied in federal court" like the anti-SLAPP statutes considered by the above federal circuit courts. (DN 292 at 8812, fn. 4.) After the instant motion was filed, this Court considered in another case KUPEPA's applicability and similarly rejected its application in federal courts. The Court found that dismissal pursuant to KUPEPA posed a conflict with dismissal pursuant to Federal Rule 12, explaining that under KUPEPA:

> "[The movant prevails] if the Defendants fail *any* of three tests (fails to establish *prima facie* case as to each element, *or* fails to state a claim, *or* fails to show a genuine issue as to any material fact)—all while applying the evidentiary standard of a motion for summary judgment. If KUPEPA applied in federal court, the responding party would, in effect, be forced to defend every motion filed under the KUPEPA as if it were a motion for summary judgment. In applying the procedure outlined in the KUPEPA, the Court therefore 'would be adjudicating those claims in a manner not contemplated or authorized by the Federal Rules.' As a result, the first prong of the test supports preemption."

*Peach,* 2024 WL 1748443, at *6. (*Peach* is the only decision to-date of this Court on the applicability of KUPEPA in federal court.) Here, the Court need address only what *Peach* did not, *i.e*., the question of whether KUPEPA also conflicts with Rule 56. A state law conflicts with a federal rule where "the scope of the federal rule is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room

11

for the operation of that law." *Albright,* 24 F.4th at 1044 (quoting *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–750 & n.9 (1980)); *see also Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) ("In other words, do the Federal Rules answer 'the same question' as the state rule?"). The test of conflict is not "whether it is logically possible for a court to comply with the requirements of both" the Federal Rules and the competing state law. *Carbone,* 910 F.3d at 1355. Rule 54 provides that "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Similarly, KRS 454.472(1)(c) provides that a court deciding a special motion under KUPEPA shall dismiss if "[t]here is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the action." Both KUPEPA and Rule 56 purport to answer the same question—the applicable standard for granting summary judgment in federal court. The purpose of Rule 56 is the same as KUPEPA in that summary judgment "should be relied upon to weed out frivolous lawsuits and avoid wasteful trials." 38 § 2712 Purpose, Scope, and Construction of Rule 56, 10A Fed. Prac. & Proc. Civ. § 2712 (4th ed.). The Sixth Circuit held that "[b]ecause summary judgment is a procedural rule, the federal rules would govern summary-judgment standards…even though those issues were governed by [foreign] law." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783 (6th Cir. 2007). The requirements of both Rules 12 and 56 are "comprehensive, not minimum, requirements." *Klocke,* 936 F.3d 240, 247. Rules 8, 12 and 56 together "'contemplate that a claim will be assessed on the pleadings alone or under the summary judgment standard; there is no room for any other device for determining whether a valid claim supported by sufficient evidence [will] avoid pretrial dismissal." *Id.* (citing *Carbone,* 910 F.3d at 1351.) Therefore Rule 56 controls without room for KUPEPA to

operate and must apply to the exclusion of KUPEPA. *See Shady Grove,* 559 U.S. at 398 ("We must first determine whether [the Federal Rule] answers the question in dispute… if it does, it governs—[state] law notwithstanding").

Next, the Court must determine, "although there is really no doubt," whether Rule 56 is valid under the Rules Enabling Act. *Klocke,* 936 F.3d at 247-48. The Supreme Court has "rejected every statutory challenge to a Federal Rule" that has come before it. *Id.* at 407. Likewise, the decisions identified above, including *Peach*, confirmed the validity of both Rules 12 and 56 under the Rules Enabling Act. The Court is not aware of any decision that resulted in a successful challenge to the validity of Rule 56. Because Rules 12 and 56 are valid under the Rules Enabling Act and together govern the same basic question as KUPEPA, KUPEPA cannot apply in this action.

In addition, although Wasserman was a prevailing party in the Omnibus motion, it was not a prevailing party under KRS 454.478 as a matter of fact as well as law. Wasserman asserts that it "filed the Omnibus Motion seeking application" of KRS 454.478. (DN 317 at 9168-70.) Wasserman specifically "did not ask the Court to apply KRS 454.472(c)(1)," meaning that Wasserman did not request expedited dismissal under KUPEPA, and thus any "references to … KRS 454.472(c)(1) are irrelevant." (*Id.* at 9170.) Put differently, Wasserman's Omnibus Motion, or at least the alleged anti-SLAPP aspect of it, was made pursuant to KRS 454.478 and to the exclusion of KUPEPA's other provisions, which is why Wasserman's instant motion "relies solely" on KRS 454.478. (*Id.*) Wasserman further asserts that to avail itself of remedies under KRS 454.478, Wasserman needed only establish that "there is 'no genuine issue as to any material fact,' which is what this Court concluded.'" (*Id.*) As discussed previously, the plain language of KRS 454.478 conditions the award on a motion brought successfully under KRS 454.464. A

motion under KRS 454.464 is "a special motion for expedited relief to dismiss the cause of action in whole or in part," which is not to be confused with a motion for an award of fees under KRS 454.478.  Expedited dismissal is the primary benefit of KUPEPA.  KRS 454.472(c)(1), in conjunction with KRS 454.464, provides the rule of procedure by which to achieve KUPEPA's primary benefit and obligates the court dismiss actions when certain requirements are met, *i.e.,* the movant makes a *prima facie* showing that the relevant claims are within KUPEPA's scope, the responding party fails to establish that an exception applies, and, in relevant part, that the movant has met the summary judgment standard.  That is not what happened here.

Despite Wasserman's arguments to the contrary, the Court's notice of Wasserman's "anti-SLAPP motion" and subsequent ruling on summary judgment was not sufficient to establish compliance with KUPEPA.  (*Id.* at 9172-73.)  Wasserman's anticipated anti-SLAPP motion was discussed at a hearing before District Judge Benjamin J. Beaton on November 23, 2022 after KUPEPA was effectuated in July 2022.  (DN 283 at 8621.)  Wasserman's counsel explained to Judge Beaton that "to take advantage of the benefits of the [KUPEPA] statute, [Wasserman had] to file something within 60 days" in reference to the sixty-day deadline set forth in KRS 454.464.  When questioned, Wasserman counsel expressed concern that a "substantive" and "prevailing party to be" provision would be waived if not raised within KUPEPA's sixty-day limitation.  (*Id.* at 8623.)  Judge Beaton responded:

> THE COURT:  Okay.  Well, it sounds to me like you just made your motion and avoided any question of waiver or forfeiture.  So, I think we can put your mind at ease on that, unless there's some rule that I'm totally missing that says *you not only have to raise the issue, but you actually have to brief the issue within 60 days.*  That's not the world we live in, is it?

(*Id.*) (emphasis added).  It is, according to KUPEPA.  The exchange between the Court and counsel for Wasserman continued as follows:

> COUNSEL: To be fair, Judge, the Kentucky anti-SLAPP statute is brand new. Just enacted and went into effect this summer. The text of the statute -- you know, acknowledging Patrick's *point that there's some division of authority on how these things apply in federal court*, but the text says the motion has to be filed within 60 days, which is part of the reason we flagged it. I don't think there's any case law interpreting that one way or the other yet because it is so new.
>
> THE COURT: Okay. Well, my strong suspicion is that the general assembly's authority [indiscernible] when I set a briefing schedule. And so, as I understand it, you've made your motion, *and it'll be briefed at an appropriate time.*

(*Id.* at 8623-24) (emphasis added). Accordingly, Wasserman and co-Defendant Laundry Service were ordered "to file a consolidated briefing, including any motion-to-dismiss, summary-judgment, *and anti-SLAPP arguments*" by March 15, 2023. (*See* DN 230) (emphasis added). Wasserman suggested, and the Court later adopted, a forty-page limit on the briefing. (DN 238 at 8624; DN 230.) Judge Beaton concluded the hearing by expressing a willingness to amend the briefing schedule, expressing that "if you want me to move those deadlines back a couple of weeks [], I will if you think that's actually necessary, but I'm not inclined to just leave it hanging open." (*Id.* at 8632.) Indeed, the Court proceeded to extend the filing deadline by over a month through April 28, 2023 and increased the page limit to fifty (50) pages upon Defendants' request. Despite these allowances and despite Judge Beaton's unambiguous and clearly-stated expectation that Defendants were to "brief" the anti-SLAPP motion and make anti-SLAPP "arguments," Defendants filed the Omnibus Motion with only a passing mention of the anti-SLAPP statute in a short footnote on page 28. (DN 247 at 5491.)

Schnatter correctly describes Wasserman's Omnibus Motion as being "devoid of any argument" addressing the anti-SLAPP statute and "failing to fully develop its arguments… and failing to cite any authority whatsoever[.]" (DN 300 at 9052-53.) Wasserman insists that the footnote was sufficient, relying partly on "the Court's "express[] notice of [Wasserman]'s anti-

15

SLAPP motion" at the November 22, 2023 hearing as justification for the Omnibus Motion's alleged deficiencies. (DN 317 at 9172.) Wasserman's position does not survive scrutiny. The Court's notice concerned KUPEPA's sixty-day *filing deadline*, not the *merits* of Wasserman's yet-to-be-made arguments; it was abundantly clear that Wasserman was not off the hook for properly briefing the motion with arguments and authority but would not be constrained to the sixty-day limitation. Likewise, Wasserman describes the footnote as being a citation "to the substantive provision of the [anti-SLAPP] law it was seeking to apply in its Omnibus Motion," but this is a serious exaggeration. (*Id.*) The entire footnote reads as follow:

> Pursuant to the Court's order, *see* Doc. 230, Defendants' consolidated brief is for summary judgment, motion to dismiss, and anti-SLAPP. Plaintiff's claims fail under each standard. For ease of reference, Defendants have cited only the summary judgment standard but are entitled to all remedies available, under any of these standards, including Kentucky's anti-SLAPP statute. *See* KRS 454.460 *et seq*.

(DN 247 at 5491.) The footnote cites no "substantive" provision, *e.g.*, KRS 454.478. It cites generally to the entire statute. Further, the entirety of the footnote's discussion of the merits consists of two short clauses: "and anti-SLAPP;" and "including Kentucky's anti-SLAPP statute." (*Id.*) This eight word effort cannot seriously be seen as a substantive analysis of the statute and its application to the claims made herein. If it were a sufficient substitute, most of the analysis in Wasserman's instant motion would not have been necessary at all. For example, Wasserman's reference to a "division of authority on how things apply in federal court" suggests that Wasserman was aware of at least one open-ended question requiring judicial resolution. In Schnatter's words, these statements from the hearing show that "Wasserman knew precisely what arguments it needed to make" to obtain KUPEPA's benefits. (DN 317 at 9052.) Yet, Wasserman did not make any such argument—not at the hearing, not in the Omnibus Motion, or at any other time—until after it

16

succeeded on summary judgment. Then, it proceeded to file a motion with the central premise that, under Wasserman's unsupported interpretation of KUPEPA, the award of fees pursuant to KRS 454.478 only requires the movant to establish that it met the summary judgment standard. It is difficult to ignore that the premise of Wasserman's motion would fail if the Court's ruling on the Omnibus had been decided on a basis other than summary judgment. Wasserman cannot provide any authority that would establish the propriety of this sequence of events, so the Court need not pursue it. Further, due to Wasserman's veritable silence on anti-SLAPP, the Court's ruling on the Omnibus Motion makes no reference to KUPEPA or anti-SLAPP dismissal. Therefore Wasserman neither prevailed on a KUPEPA motion nor even meaningfully made a KUPEPA motion. Accordingly, in addition to the Court's finding t that KUPEPA is inapplicable in this action, the Court finds that Wasserman did not sufficiently avail itself of KUPEPA as to constitute a "prevailing party" under the statute and is not entitled to an award of costs and fees pursuant to KRS 454.478.

### IV.   CONCLUSION & ORDER

For the reasons set forth above,

IT IS HEREBY ORDERED that Wasserman's Motion for Attorneys' Fees (DN 292) is **DENIED**.

*Colin Lindsay*

Colin H Lindsay, Magistrate Judge
United States District Court

August 23, 2024

cc:   Counsel of Record