# EXHIBIT A

**FILED UNDER SEAL**

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHN H. SCHNATTER,                    ) Case No. 3:20-CV-3-BJB
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )
                                      )
247 GROUP, d/b/a                      )
LAUNDRY SERVICE, and                  )
WASSERMAN MEDIA GROUP, LLC,           )
                                      ) February 12, 2026
          Defendants.                 ) Louisville, Kentucky

*******************************************
TRANSCRIPT OF REMOTE HEARING
BEFORE HONORABLE BENJAMIN BEATON
UNITED STATES DISTRICT JUDGE
*******************************************

APPEARANCES:

For Plaintiff:          Jennifer M. Barbour
                        Elisabeth S. Gray
                        Augustus S. Herbert
                        Gray Ice Higdon, PLLC
                        3939 Shelbyville Road, Suite 201
                        Louisville, KY 40207

For Defendants:         Michael P. Abate
                        Kaplan Johnson Abate & Bird, LLP
                        710 West Main Street, Suite 400
                        Louisville, KY 40202




                        Terri L. Horton, RMR, CRR
                        Official Court Reporter
                        133 U.S. Courthouse
                        501 Broadway
                        Paducah, KY 42001

Proceedings recorded by mechanical stenography, transcript
produced by computer.

APPEARANCES (Continued):

For Defendants:          Bert H. Deixler
                         David Freenock
                         Patrick J. Somers
                         10100 Santa Monica Boulevard, Suite 2500
                         Los Angeles, CA 90067


(All participants present via Zoom teleconference.)

(Begin proceedings at 11:12 a.m.)

THE COURT:  Let's go on the record in Civil Case 3:20-3, Schnatter against 247 Group.

Who is here for the plaintiff?

MS. BARBOUR:  Jennifer Barbour, Elisabeth Gray, Gus Herbert, and then a representative of Mr. Schnatter on the phone, the 571 number.

THE COURT:  Okay.  And will you be taking the lead speaking role again, Ms. Barbour?

MS. BARBOUR:  Yes, Your Honor.

THE COURT:  All right.  And how about on the defense side?

MR. DEIXLER:  Good morning, Judge.  It's Bert Deixler, Patrick Somers, Michael Abate, and David Freenock.  And to the extent there's much discourse, I guess I'll be taking the lead.

THE COURT:  Okay.  I overheard a good anticipated report from you, Mr. Deixler, so maybe we'll start there.

MR. DEIXLER:  Sure.  We just finished a conversation with Ms. Barbour and team, and we are, I would say, working on a modus vivendi to address obtaining the relevant information pertaining to the medical records and the attendant confidential communications in a way, after we massage this a bit, that should be satisfactory to both sides.  But, you know, the devil is in the details.

Ms. Barbour is going to send us a written proposal today or

tomorrow.  We will react to it promptly.  And we're expecting that this is an issue that we can put behind us quickly.

I think that's fair, Ms. Barbour.

MS. BARBOUR:  Yeah.  I think we're making good progress, Judge, and we're going to send them a written proposal, like Mr. Deixler said, today or tomorrow that will try to find a path forward of how to deal with objective data being discoverable but perhaps protections for confidential communications and/or limiting those.

THE COURT:  Okay.  So what can we do productively while we're assembled here today?

MS. BARBOUR:  I think I would ask that we maybe have another status conference just to make sure that we're all working to get this resolved as quickly as we can.  I'm hopeful that we'll get it resolved.  There are a few sticking points.  It's like Mr. Deixler said, Judge.  The devils are going to be in the details here, so we may need your assistance.

I just don't know that today that -- we're working well together and seem to be on the path to a resolution, so I don't know that we need anything substantively from you today.

THE COURT:  Have you-all exchanged any documents since our last hearing?

MS. BARBOUR:  No, Your Honor .

The reason that we've had such movement in the last 24 hours is because last night was when I was able to actually see

documents and have an understanding of what, you know, the universe is of what's involved so that we could talk intelligently about finding a path forward.  And that's just by virtue of how long it takes for a medical facility like Caron to release records even when requested by a patient.

THE COURT:  Okay.  So as of last night, you have not just de jure possession, custody, and control over the Caron Center records but you have de facto control over them now?

MS. BARBOUR:  Yes.

THE COURT:  Okay.  And are -- there was a distinction in the missives I read this morning about so-called objective information and other treatment records.  If I had to guess, I would infer something like records that demonstrated the objective fact of presence or not at a facility and then other records would be more associated with the, quote/unquote, confidential communications that I think you alluded to.

MS. BARBOUR:  Correct.

THE COURT:  And I think it was clear as day after our last hearing that category one would be disclosable under Judge Lindsay's order after I rejected the objection and that we would have -- that I would expect you-all to have a back-and-forth about what was, you know -- what's the term of the reg?

MR. DEIXLER:  Confidential communications?

THE COURT:  (e)(1), only those parts of the patient's record or testimony that are essential to fulfill the objective

of the order.

Is that the sticking point, or are you looking at some other reg that speaks to confidentiality?

MS. BARBOUR:  So, Judge, it's both, okay?

So one -- we are in agreement on the objective data.  The rub here is that some -- the way that Caron organizes its records, the confidential communications are peppered throughout the objective data.  And then to add to that, too, I think what we're working through is the scope of -- you know, and Mr. Deixler can correct me.  One of their big concerns is they don't want us to get to trial and be hamstrung in terms of -- if Mr. Schnatter were to take the stand and try to offer explanations about his prior testimony, them being hamstrung in their ability to have documents or things that would be able to say, no, those aren't credible excuses or valid excuses for the prior testimony.

And so that's where we get into the part you just read, Judge, of to accomplish the purposes that they want, which is to confirm that there was treatment and that a reasonable person, Mr. Schnatter included, would know that he was there for the purpose of some sort of treatment.  So it's a little bit of two things that we're working through --

THE COURT:  Is there a separate --

MS. BARBOUR:  -- trying to deal with that peppered confidential communications through there and then also giving

them sufficient information that they would not feel hamstrung at trial.

THE COURT:  Sure.  And is there -- I just called out the 2.64(e)(1).  Is there a separate provision you're looking to for confidential communications --

MS. BARBOUR:  Yeah.  I believe that's 2.63(a)(3), I believe.

One second.  I'm sorry, Judge.

THE COURT:  So (a)(3) is using confidential communications in a way that strikes me as different than what I inferred from what you just said, which is to refer to all the communications in connection -- made by the patient and the program that are, you know, ordinarily privileged from disclosure.  But if this exception is triggered, as it has been here, then they are disclosable.

So I guess maybe I'm misunderstanding this, but I looked at (a)(3) as scoping the disclosure and then at 2.64(e)(1) as then limiting it to only the essential parts of that disclosable information.

Are you thinking about this in a different way?

MS. BARBOUR:  No, Your Honor.  I think I view them as overlapping to some extent.

I guess now that I've seen the documents and know the contents of them and the confidential communications and some of the subject matters that are involved, that's where I see the

interplay.  I don't want to disclose too much about that, you know, since we're in open.  But as I'm sure you can expect, if someone is undergoing essentially a medical with psychological treatment that would accompany a substance use treatment program, there's going to be conversations about highly sensitive personal issues in that person's life either currently or historically.

And so that's the issue that we're working through is, is there really any reason or basis that those would ever have to be disclosed to the defendants in this case and concern about if they are disclosed or would be disclosed what protections would need to be put on them to make sure that they're not used in a way that would be more detrimental, especially given the underlying allegations in this case are, of course, that people leaked information to the press purposefully to harm Mr. Schnatter's reputation.

THE COURT:  Okay.

All right.  So there's obviously an issue about admissibility and then disclosure.  Those are separate.  It sounds like you acknowledge there's going to be a tranche of documents that ought to go over to Mr. Deixler, and it sounds like you're envisioning some withholding and/or redaction.

And presumably that would be done under a modified privilege log of sorts that you would give to him and show to the Court if and when we have a fight over this?

MS. BARBOUR:  Yes.  That was actually one of the things that we began discussing this morning was a log and what that would look like, what information would we potentially be comfortable putting on it versus what they would need to feel like they were intelligently understanding why we would either want not to produce something, to redact it, or to put it under communications.  And so that is an issue we are working through, Judge.

THE COURT:  All right.  Well, when you do that, why don't you do it, A, as quickly as you can; B, with a very realistic take on what's inevitably going to be handed over so that you can save your ammunition for what really matters and what is, you know, most plausibly not essential to fulfill the objective of the order.

And then remember when you're making that privilege log that you're doing so for a district judge who is not as sophisticated in these matters and familiar with magistrate judge -- there's at least a chance I'll be looking at it, and I would just say please don't make it so occluded that, you know, Mr. Deixler and I can't make heads or tails of it, okay?

MS. BARBOUR:  Understood, Your Honor.

THE COURT:  Mr. Deixler, what would you care to add or object to?

MR. DEIXLER:  I have no objections.

I agree with the Court that we should probably set a

follow-on status conference perhaps as early as next week if the Court had the time.  We might have a small disagreement about scope, because we do see the use of the documents to be not merely for impeachment but rather going to substantive issues about why the board member wanted to be rid of Mr. Schnatter, who is, according to the testimony, drunk dialing at the board meetings and the like.

So we'll work those things out, I'm cautiously optimistic, but if the Court did want to schedule another status conference, that, I think, might hold our feet to the fire.

THE COURT:  Certainly "want" is not the verb that I would have chosen, and I believe it was Ms. Barbour who proposed a follow-up.  But I do want to ensure things keep moving forward.

So surely you guys can get through, you know, a first round of this without hand-holding, but if you wanted to propose something slightly further out, that might make some sense.

MS. BARBOUR:  Yeah.  Maybe -- I don't know -- three to four weeks.  And I propose that timeline just because I think there's some discussion about getting disclosure of documents with additional information that will -- it'll take multiple attempts at making sure that everyone's comfortable, particularly, I think, the defendants are comfortable that they've gotten what they would need from us.

THE COURT:  What if we split the difference and said

Friday, February 27th?

MR. DEIXLER:  That's acceptable, of course, to us if that is acceptable to the Court and to plaintiff's counsel.

MS. BARBOUR:  So that day is actually conflicted for all of us on this side, unfortunately, all the attorneys that could potentially intelligently argue that.

THE COURT:  All right.  Then why don't you -- how about the 26th?

MS. BARBOUR:  We could do the morning of the 26th.

MR. DEIXLER:  We're happy to do it as well, Your Honor.

THE COURT:  All right.  How about 11:30 a.m. Eastern on Thursday, February 26th?

MS. BARBOUR:  That works.

MR. DEIXLER:  Yes, that's fine for us as well.  Thank you, Your Honor.

THE COURT:  All right.  I have a dentist appointment that morning, so there's a chance that I'll be even less eloquent than normal.  So I will hope and trust and pray that you have more good news and more progress to deliver and we can make short work of it, okay?

MS. BARBOUR:  Yes, Judge.

MR. DEIXLER:  We wish you great success at the dentist.

THE COURT:  Thank you.  Thank you.  As you know, once

you hit a certain point, it is just a holding action.  So that's the best I can hope for.

If you need to update me on anything with a written notice along the lines of what you did yesterday, that's fine, and I'll try to take a look and come prepared to chat, okay?

MR. DEIXLER:  Very well.

MS. BARBOUR:  Thank you.

THE COURT:  All right.  I'm heartened by the progress, and I'm very, very confident that you guys can move this forward.  I think at some point there will be a line to draw, but you guys, I'm sure, have a good sense of where that will fall.  And as close as you can get without my intervention will be to the benefit of everyone.

MR. DEIXLER:  Hope springs eternal.

THE COURT:  Yep.

All right.  Thanks very much.

MS. BARBOUR:  Thank you.

(Proceedings concluded at 11:30 a.m.)


                    C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


___s/Terri L. Horton_____          _February 12, 2026____
Terri L. Horton, RMR, CRR              Date
Official Court Reporter