UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*(Electronically Filed)*

| | | |
|---|---|---|
| JOHN H. SCHNATTER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No.:  3:20-cv-00003-BJB-CHL |
| | ) | Judge BENJAMIN BEATON |
| 247 GROUP, LLC d/b/a LAUNDRY | ) | Magistrate Judge COLIN H. LINDSAY |
| SERVICE | ) | |
| | ) | |
| Defendant | ) | |

**SCHNATTER'S MOTION IN LIMINE NO. 11 CONCERNING CERTAIN
CONFIDENTIAL HEALTH MATTERS [FILED UNDER SEAL]**

Plaintiff John H. Schnatter ("Schnatter") respectfully requests this Court exclude all hearsay evidence pertaining to Schnatter undergoing treatment for alcohol abuse.   All deposition testimony to date concerning the matter is premised on hearsay and should be excluded for that reason.   Moreover, the Court should exclude the use of the Caron Records at trial, or alternatively, significantly limit their admission.

### I.     Hearsay Evidence Related to Treatment Must Be Excluded

During discovery, Counsel for Laundry Service has repeatedly inquired with witnesses and into the witnesses' knowledge of whether Schnatter sought treatment for drug or alcohol use or abuse.   Every witness who has been questioned about the matter testified any knowledge he or she had of the treatment was reported to him or her from someone else.  *See e.g.,* Deposition of Deposition of Katie Wollrich, Vol 1, pp. 165:10 – 169:5 (DN 254, Exhibit 16).

Each of these witnesses' testimony is premised not on firsthand knowledge, but rather what they were told or understand from reports from co-workers or board members about Schnatter seeking treatment.  Such testimony is inadmissible hearsay under FRE 801 and 802. *See Colter v. Bowling Green-Warren County Regional Airport Board*, 2019 WL 2603332, *2 (W.D. Ky. June

25, 2019).

## II. Laundry Service Has Not Established "Good Cause" Permitting Use of Caron Records at Trial

Recognizing the important societal benefit of encouraging individuals to seek treatment for substance use and abuse, Congress enacted the Public Health Service Act, 42 U.S.C. § 290dd-2, *et seq.* The Act is designed to protect not only records of substance abuse treatment, but to prevent disclosure of any records which "[w]ould identify a patient as having or having had a substance use disorder either directly, by reference to publicly available information, or through verification of such identification by another person." 42 C.F.R. § 2.12. While Congress created narrow exceptions to the confidentiality of a person's decision to seek treatment, those exceptions are universally recognized as requiring strict adherence by the courts and courts must not lightly abrogate the protections when considering admission of evidence or testimony about treatment in civil matters. *See* H.R.Conf.Rep. No. 92–920, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N.2062, 2072.

The statute expressly states that "[s]uch record or testimony shall not be entered into evidence in any criminal prosecution or civil action before a Federal or State Court" except if authorized under the "good cause" standard. 42 U.S.C.A. § 290dd-2 (c). In order to find "good cause" exists, the court must find that: (1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services. 42 C.F.R. § 2.64(d).

Moreover, if the court finds good cause, the order itself must "[l]imit use or disclosure to only those parts of the patient's record, or testimony relaying those parts of the patient's record, which are essential to fulfill the objective of the order"; "[l]imit use or disclosure to those persons whose need for information is the basis of the order"; and include "such other measures as are

necessary to limit use or disclosure for the protection of the patient, the physician-patient relationship and the treatment services[.]" 42 C.F.R. § 2.64(e) (including safeguards such as "sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record, or testimony relating the contents of the record, has been ordered").

Laundry Service has identified three possible reasons for seeking admission of Caron Records at trial – (1) attacking the credibility of Schnatter; (2) offering an alternative theory for the source of the leak to Kirsch; and, (3) undermining damages premised on life expectancy. *See* Transcript of Hearing dated February 4, 2026, DN 429, PageID.11195-99. As will be discussed, none of these possible uses satisfies the good cause sufficient to warrant admission of the Caron Records at trial.

### A.    Credibility

Laundry Service has claimed it is entitled to utilize the Caron records to cross-examine Schnatter regarding his deposition testimony related to whether he ever sought treatment for substance abuse. *See id.,* PageID.11195. Laundry Service maintains that Schnatter was not truthful during his deposition concerning his history of alcohol abuse treatment or his admission to Caron Treatment center in Wernersville, Pennsylvania. *Id.,* PageID.11195-96. However, this argument fails for numerous reasons.

First, Laundry Service cannot show it has no other effective way to attack Schnatter's prior testimony on this issue. Specifically, the Court ordered Schnatter to respond to a series of discovery requests related to his alcohol treatment, including pointed Requests for Admission. In compliance with that order, Schnatter provided the following answer to Request for Admission No. 19:

**Request for Admission No. 19**:

Admit that You entered an in-patient, out-patient, and/or rehabilitation facility in or near Wernersville, Pennsylvania for treatment of abuse of and/or an addiction to alcohol.

**Response:  Admitted.  Subject to the ATTORNEYS' EYES ONLY designation and subject to the protections of the Supplemental Confidentiality Agreement, Plaintiff entered an in-patient rehabilitation facility in or near Wernersville, Pennsylvania for treatment of addiction to alcohol along with Kent Taylor from January 11, 2018, until January 29, 2018, but did not complete the full treatment protocol and was discharged early.**

This answer to the Request for Admission provides an effective method by which Laundry Service can cross-examine and challenge Schnatter's prior deposition testimony about his alcohol treatment.  No additional use of records from Caron is necessary to challenge the prior deposition testimony's veracity.

Moreover, courts have routinely recognized attacking a party's credibility is insufficient to establish the "good cause" necessary to permit disclosure of confidential treatment records in a public trial.  In *Perrot v. Kelly*, the plaintiff, George Perrot, sued for wrongful conviction after serving approximately 30 years in prison. 2024 WL 1719888 at *1 (D. Mass. April 22, 2024). During the case, his former girlfriend, Alissa Griffin, gave deposition testimony claiming Perrot repeatedly confessed to the crimes.  *Id*. at *2.  During her deposition, Griffin testified to a history of substance use and treatment, claiming she had successfully completed treatment and was doing well.  *Id*.  Perrot disputed Griffin's deposition testimony, and sought to obtain and introduce her medical records, including those of her substance use and treatment.  *Id*. Perrot argued the records were critical to attack her credibility and would show she lacked the ability to accurately remember the events.  *Id*.

The Court declined to encroach upon the confidentiality of Griffin's records, holding attacking a witness's credibility was not sufficient to meet the "good cause" standard required by

4

statute. *Id*. at \*4-5. Recognizing that "Griffin's testimony, if believed by a jury, would surely have a devastating impact on plaintiff's case, Ms. Griffin's substance use does not relate directly to the claims or defenses in this case, only to her credibility as a witness" and therefore concluded good cause did not exist. *Id*. at \*6.

Similarly, in *Soloff v. Lincoln National Life Insurance Company*, plaintiff Meghan Soloff sued Lincoln National Life Insurance Company after it refused to pay death benefits under a life insurance policy for her deceased husband, Jeremy Soloff. 2010 WL 11506952, at \*1 (M.D. Fla. Nov. 1, 2010). The insurance company's primary basis for denying payment of benefits was Jeremy made material misrepresentations on his insurance application regarding his history of alcohol and cocaine abuse. *Id*. In discovery, Meghan produced the treatment records. *Id*. In support of its summary judgment motion, the insurance company relied upon those records. Meghan sought to exclude the Court from considering the records with regard to the summary judgment motion. *Id*.

The court analyzed the dispute under 42 U.S.C. § 290dd-2 and its regulations, ultimately holding that while the law allows for use and disclosure of substance abuse treatment records in cases of "good cause"—such as averting a substantial risk of death or investigating an "extremely serious crime"— defending against an insurance misrepresentation claim does not meet this high standard. *Id*. at 2. The court recognized that the records were highly relevant to the insurance company's defense. *Id*. However, the court noted that "the defense of material misrepresentations on a life insurance application did not rise to the same level as a threat to life or investigation of an extremely serious crime." *Id*. As a result, based on the pleadings alone, the court stated it would not have permitted the disclosure. *Id*. Indeed, because Meghan had disclosed the records and referenced them in some pleadings, the court would consider them with regard to the summary judgment motions. *Id*. at \*3. Moreover, the court limited this ruling exclusively to the summary judgment phase, noting that the plaintiff could still file a motion *in*

*limine* to challenge the admission of the records if the case eventually proceeded to trial. *Id*.

*Soloff* is highly instructive – despite the treatment records being apparently the only manner to prove whether the decedent had made a materially false representation on his insurance application, the court would nevertheless uphold the privilege and indicated their admission at trial was unlikely. Proving the decedent had made a false representation on the application was the defense the insurer had to coverage – if the insurer could prove the decedent had lied, it would be contractually relieved from providing coverage. Despite the veracity of the decedent being key to the sole defense of the insurer, the Court nevertheless concluded the records were protected by the statute. *Soloff* stands for the proposition that even a materially false statement to induce insurance coverage (a matter of not only credibility, but indeed the entire defense to whether coverage needed to be extended under the policy) is not sufficient to overcome the privilege afforded records of alcohol use treatment.

Here, Schnatter's alcohol use treatment is a collateral issue in this case. Unlike *Soloff* where the veracity of the plaintiff's representations about substance use were a key element of the defense, whether Schnatter received alcohol treatment does not directly support any claim or defense in this case. Indeed, Laundry Service has consistently led its push to discovery the contents of the Caron Records by focusing largely on the ability to attack Schnatter's credibility. However, as *Perrot* and *Soloff* indicate, the need to attack witness credibility (even when directly related to the claims asserted) is not sufficient to establish good cause warranting admission and use of substance abuse treatment records.

### B.    Alternative Leak

Perhaps recognizing that credibility is not a sufficient basis to permit admission of the records, Laundry Service has also attempted to argue the Caron records are necessary to prove an alternative theory as to the source of the leak to Kirsch. Laundry Service has tenuously explained this theory as follows: because executives or board members at Papa John's were

6

concerned about Schnatter's alcohol use, they leaked the contents of the May call to Kirsch to force Schnatter to separate from Papa John's.  Beyond Laundry Service's speculation, however, it has no evidence to suggest someone at Papa John's was concerned about Schnatter's alcohol use and used the May call to force his separation.

Laundry Service has attempted to tie allegations of alcohol use to Schnatter's performance at Papa John's and the termination of the Chairman's and Founder's Agreements with the company no avail.  *See* Deposition of Simon Smith, relevant pages attached as **Exhibit A** ("Smith Depo") pp. 166:14-17 ("Q: Are you aware that Mr. Schnatter would call into board meetings for Papa John's while intoxicated with alcohol? … A: Never heard that. Never believe that."); *see* Deposition of Kevin Cosby, relevant pages attached as **Exhibit B** ("Cosby Depo."),  pp. 84:19-85:5 ("Q: Are you aware that Mr. Schnatter used to call into Papa John's board meetings while intoxicated?" …A: Yes. I'd be happy to respond. Based on what you're telling me, I have never heard that John Schnatter was a philanderer or that he had a problem with alcohol. Never heard of it."). The reality is that the actual evidence of record and basic timeline of events makes these theories an impossibility and given the highly prejudicial effect that introducing the Caron Records would have against the absence of any probative value, this evidence should be excluded.  Laundry Service has not developed any proof that Schnatter's alleged alcohol abuse was a factor in the termination of Papa John's relationship with him.  Without any evidence that the alleged alcohol abuse had an impact on the decision to terminate that relationship, any evidence or argument pertaining to Schnatter's alleged alcohol abuse should be excluded.  *See also Lee v. Small*, 829 F.Supp.2d 728, 755-756 (N.D. Iowa 2011) (excluding evidence of alcohol abuse because there was "no probative evidence that alcohol use had an impact on the accident").

Not a single witness in this case has testified that the termination of the Founder's Agreement with Papa John's was the result of anything but the *Forbes* article. Papa John's own corporate representative testified that, prior to the article, the Board of Directors had never

contemplated terminating the company's relationship with Schnatter. *See* Deposition of Papa John's Corporate Representative, relevant pages attached as **Exhibit C** ("PJ 3(b)(6) Depo."), pp. 320:10-321:5. Steve Ritchie, the former CEO of Papa John's, similarly testified that Papa John's was not considering taking any adverse action against Schnatter in relation to any alleged issues with alcohol. *See* Deposition of Steve Ritchie, relevant pages attached as **Exhibit D** ("Richie Depo") pp. 107:8-108:1; 109:2-8. Board Member Sonya Medina testified that, prior to the publication of the *Forbes* article, none of the Board members could envision Papa John's ever terminating its relationship with Schnatter.  See Deposition of Sonia Medina, relevant pages attached as **Exhibit E** ("Medina Depo."), pp. 61:20-25; 184:12-186:7.  *See also* Deposition of Christy Johnson, relevant pages attached as **Exhibit F** ("Johnson Depo."), p. 78:8-15. Indeed, just two months prior to the article's publication Schnatter was reelected to the Board by 99.77 percent of the shareholders and unanimously reelected as Chairman by the Board members. The notion that the Caron Records could somehow substantiate Laundry Service's theory that Schnatter's alleged alcohol use played any role, much less a determinative one, in the relevant events outlined above is simply untrue, and to permit Laundry Service to distract the jury with a sideshow would work an injustice on Schnatter and the jury.

### C.    Damages

Finally, Laundry Service has asserted the Caron Records are admissible to challenge Schnatter's damages because they support a conclusion that Schnatter's life expectancy is reduced by virtue of his past use of alcohol.  However, Laundry Service has offered no expert proof to connect substance abuse to any impact on Schnatter's life expectancy.   Without such proof, the evidence is inadmissible to suggest a lower life expectancy.  *See Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir. 1994) ("With no expert to lay a foundation and tie the substance abuse to an impact on [plaintiff's] life expectancy and ability to earn an income, such evidence was not admissible….Under these circumstances, any probative value of that substance abuse was

substantially outweighed by the danger of unfair prejudice.") (citations omitted). *See also Meller v. Heil Co.*, 745 F.2d 1297, 1303 (10th Cir. 1984) (excluding evidence of plaintiff's drug use offered to show diminished life expectancy because defendant had failed to provide a medical foundation).

Moreover, it is unclear how records from a two-week period in 2018 would contain evidence that could credibly be used to establish a reduction in life expectancy. Laundry Service has no other medical records detailing how, if any, Schnatter's alcohol use impacted his health – no records from any other medical provider confirming alcohol use has caused any damage to Schnatter's organ systems, overall health or wellbeing. Simply put, without actual proof that Schnatter's alcohol use caused health problems impacting his life expectancy, Laundry Service has failed to satisfy the good cause necessary to overcome the protections created by Congress.

## III.     The Risk of Prejudice Outweighs Any Probative Value

Even if the Court believes there is some relevance to the Caron Records, any probative value is substantially outweighed by the prejudice that would result to Schnatter. In *Hays v. Continental Assurance Co.*, the Sixth Circuit affirmed a district court's exclusion of evidence that the plaintiff's alleged drinking problem was the cause of his termination in his age discrimination suit. 831 F.2d 1063 at *1 (6th Cir. 1987). The district court excluded under FRE 403 testimony of several instances where the plaintiff had used alcohol excessively. *Id*. The defendant sought to introduce the testimony, and the trial court excluded it because there was no connection between the plaintiff's termination and the testimony of excessive alcohol consumption. *Id*. The trial court reasoned that permitting testimony of any alcohol use would be extremely prejudicial to the plaintiff given there was no connection between the termination and the alcohol use. *Id*. The Sixth Circuit affirmed, concluding that the trial court had engaged in a proper balancing test under FRE 403. *Id*.

9

As discussed above, Laundry Service has no proof that the termination of the Founder's Agreement was the result of anything except the Forbes article dated July 11, 2018. During the course of discovery, Laundry Service was granted broad leeway to develop facts pertaining to its (irrelevant) theory that Schnatter allegedly abused alcohol and that this abuse was ultimately responsible for his claimed damages in this case. Laundry Service deposed dozens of witnesses and was granted access to confidential records from Caron Treatment Centers. *See* DN 336. In short, Laundry Service has had ample opportunity to plow this field in the hopes that it could someday lead to the discovery of relevant evidence. At this point in the litigation, it is clear Laundry Service's harvest has not borne fruit. Applying the more exacting standard for admissibility than discoverability, the evidence outlined above should be excluded.

## CONCLUSION

For these reasons, Schnatter requests any this Court exclude all evidence, reference, testimony or argument to Schnatter allegedly seeking treatment for substance use and abuse.

Respectfully submitted,

*s/ Dennis D. Murrell*

Dennis D. Murrell
Elisabeth S. Gray
Jennifer M. Barbour
Augustus S. Herbert
M. Katherine Ison
**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, KY 40207
(502) 677-4729
dmurrell@grayice.com
egray@grayice.com
jbarbour@grayice.com
aherbert@grayice.com
kison@grayice.com

*Counsel for Plaintiff*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was e-filed on this the __*16th*__ day of April, 2026, via the Court's CM/ECF system, which will give electronic notice to counsel listed below who are registered to receive notifications:

Michael P. Abate
**KAPLAN JOHNSON ABATE & BIRD, LLP**
710 W. Main St., 4th Fl.
Louisville, KY  40202
mabate@kaplanjohnsonlaw.com

and

Bert H. Deixler (pro hac vice)
Patrick J. Somers (pro hac vice)
David T. Freenock (pro hac vice)
**KENDALL BRILL & KELLY LLP**
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA  90067
bdeixler@kbkfirm.com
psomers@kbkfirm.com
dfreenock@kbkfirm.com
***Counsel for Defendant***
***247 Group, LLC d/b/a Laundry Service***

 *s/ Dennis D. Murrell*
*Counsel for Plaintiff*

11